A. Brooks Gresham (SBN 155954)
Laura Coombe (SBN 260663)
**McGuireWoods LLP**
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210
bgresham@mcguirewoods.com
lcoombe@mcguirewoods.com

Joan S. Dinsmore (SBN 245629)
**McGuireWoods LLP**
434 Fayetteville Street, Suite 2600
Raleigh, NC 27601
Telephone: 919.755.6693
Facsimile: 919.755.6592
jdinsmore@mcguirewoods.com

Attorneys for Defendant ConAgra Foods, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIN ALLEN, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>CONAGRA FOODS, INC., a Delaware Corporation<br><br>Defendant. | No. 3:13-CV-01279-VC<br><br>**CONAGRA FOODS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:      December 4, 2014<br>Time:      1:30 p.m.<br>Place:     Courtroom 4, 17th Floor<br><br>Hon. Vince Chhabria |

# TABLE OF CONTENTS

I.      STATEMENT OF ISSUES TO BE DECIDED.................................................... 1

II.     INTRODUCTION............................................................................................. 1

III.    BACKGROUND ............................................................................................. 4

        A.      Parkay Spray .................................................................................... 4

        B.      Plaintiff Erin Allen........................................................................... 7

        C.      Plaintiff's Expert Colin Weir ........................................................... 8

IV.     DISCUSSION ................................................................................................. 8

        A.      Legal Standard ................................................................................. 8

        B.      Plaintiff Fails Threshold Certification Requirements ...................... 9

                1.      Plaintiff Lacks Standing ........................................................ 9

                2.      The Proposed Class Is Not Ascertainable............................ 10

        C.      Plaintiff's Claims Are Not Typical ................................................ 12

        D.      Plaintiff Has Not Satisfied the Requirements of Rule 23(b)(3)...................... 14

                1.      Individual Issues of Materiality, Reliance, and
                        Causation Predominate Over Common Issues..................................... 14

                2.      Individual Issues Concerning Damages and
                        Restitution Predominate Over Common Issues ................................... 18

        E.      Class Adjudication of This Case Is Neither Manageable Nor Superior ........ 23

        F.      Plaintiff's Proposed Class Should Not Be Certified Under Rule 23(b)(2). .... 24

V.      CONCLUSION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Algarin v. Maybelline*,
 300 F.R.D. 444 (S.D. Cal. 2014) ............................................................... ……3, 12, 22, 25

*Allen v. Hyland's Inc.*,
 No. CV 12-01150 DMG, 2014 U.S. Dist. LEXIS 107187 (C.D. Cal. Aug. 1, 2014).............. 3

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997)........................................................................................................ 14

*Astiana v. Ben & Jerry's Homemade, Inc.*,
 No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014)........................... 4

*Binder v. Gillespie*,
 184 F.3d 1059 (9th Cir. 1999) ........................................................................................ 19

*Brazil v. Dole Food Co.*,
 No. 12-cv-01831-LHK, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) ............ 17

*Brazil v. Dole Packaged Foods, LLC*,
 No. 12-cv-01831-LHK, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014)  ................ 4

*In re Bridgestone/Firestone, Inc.*,
 288 F.3d 1012 (7th Cir. 2002) ........................................................................................ 18

*Bruton v. Gerber Products Co.*,
 No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 86581 (N.D. Cal. June 23, 2014) .............. 4

*Caldera v. J.M. Smucker Co.*,
 2014 U.S. Dist. LEXIS 53912 (C.D. Cal. Apr. 15, 2014) ........................................................ 4

*Castano v. Am. Tobacco Co.*,
 84 F.3d 734 (5th Cir. 1996) ............................................................................................ 18

*Chow v. Neutrogena Corp.*,
 No. CV 12004624 R, 2013 U.S. Dist. LEXIS 17670 (C.D. Cal. Jan. 22, 2013) ................... 16

*Clancy v. Bromley Tea Co.*,
 No.12-cv-03003-JST, 2014 U.S. Dist. LEXIS 102917 (N.D. Cal. July 28. 2014)............. 4, 10

*In re Clorox Consumer Litig.*,
 No. 12-00280 SC, 2014, 2014 U.S. Dist. LEXIS 104183 (N.D. Cal. July 28, 2014)....... 11, 12

*Comcast Corp. v. Behrend*,
 133 S.Ct. 1426 (2013) ............................................................................................. *passim*

ii

*In re ConAgra Foods, Inc.*,
  No. CV 11-05379 MMM, 2014 U.S. Dist. LEXIS 116103 (C.D. Cal. Aug. 1, 2014) ............ 3

*Ellis v. Costco Wholesale Corp.*,
  657 F. 3d 970 (9th Cir. 2011) ........................................................................................ 12

*Faulk v. Sears Roebuck & Co.*,
  No. C 22-2159 SI, 2013 U.S. Dist. LEXIS 131792 (N.D. Cal. Apr. 19, 2013)................16

*In re Flash Memory Antitrust Litig.*,
  No. C 07-0086, 2011 WL 1301527 (N.D. Cal. Mar. 31, 2011)......................................... 22

*Georgine v. Amchem Prods., Inc.*,
  83 F.3d 610 (3d Cir. 1996)............................................................................................. 18

*Granfield v. NVIDIA Corp.*,
  No. C. 11 05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)..................................... 10

*Guido v. L'Oreal*,
  No. CV-11-1067, 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. Jul. 1, 2013)............................ 13

*Hairston v. S. Beach Bev. Co.*,
  No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012)............................. 9, 15

*Hanlon v. Chrysler Corp.*,
  150 F. 3d 1011 (9th Cir. 1998) ........................................................................................ 14

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................................ 13

*Hodes v. Van's Int'l Foods*,
  No. CV 09-01530 RGK, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009.)............. 12

*Hodgers–Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999) ........................................................................................ 25

*Jones v. ConAgra Foods*,
  No. C 12-01633 CRB, 2014 U.S. Dis. LEXIS 81292 (N.D. Cal. Jun. 13, 2014) ........... *passim*

*Kandel v. Brother Int'l Corp.*,
  264 F.R.D. 630 (C.D. Cal. 2010) ..................................................................................... 14

*Kane v. Chobani, Inc.*,
  No. 12-CV-02425, 2013 U.S. Dist. LEXIS 98752 (N.D. Cal. Jul. 12, 2013)........................ 13

*Karhu v. Vital Pharmaceuticals Inc.*,
  2014 WL 815253 (S.D. Fla. Mar. 3, 2014) .......................................................................... 4

*Kottaras v. Whole Foods Mkt., Inc.*,
  281 F.R.D. 16 (D.D.C. 2012)........................................................................................... 23

*Lanovaz v. Twinings N.A. Inc.*,
    No. 12-02646, 2014 U.S. Dist. Lexis 57535 (N.D. Cal. Apr. 24, 2014) ................................. 4

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ........................................................................................... 9

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................................... 10, 16

*Menagerie Prods. v. Citysearch*,
    No. CV 08-4263 CAS (FMO), 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ....................... 24

*Moheb v. Nutramax Labs, Inc.*,
    No. CV-12-3633-JFW, 2012 U.S. Dist. LEXIS 2023 (C.D. Cal. Sept. 1, 2012) ............. 17, 18

*O'Shea v. Epson America*,
    No. CV 09-8063 PSG, 2011 U.S. Dist. LEXIS 105504 (C.D. Cal. Sept. 19, 2011) ............. 17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .......................................................................................................... 10

*Pardini v. Unilever United States, Inc.*,
    No. 13-1675, 2014 U.S. Dist. LEXIS 7900 (N.D. Cal. Jan. 22, 2014) .............................. 5, 16

*Pardini v.* Unilever United States, Inc., 961 F. Supp. 2d 1048 (N.D. Cal.
    2013)………………………………………………………………………………..………10

*Pfizer Inc. v. Superior Court*,
    182 Cal. App. 4th 622 (2010) ............................................................................................ 16

*Picus v. Wal-Mart Stores, Inc.*,
    256 F.R.D. 651 (D. Nev. 2009) ......................................................................................... 23

*In re POM Wonderful LLC Mktg. & Sales Litig.*,
    No. ML 10-02199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ............................. 3, 11, 19

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.D.C. 2013) ............................................................................................. 19

*Red v. Kraft Foods, Inc.*,
    No. CV 10-1028-GW, 2012 U.S. Dist. LEXIS 186948 (C.D. Cal. Apr. 12, 2012).... 11, 12, 22

*Ries v. Ariz. Beverages USA LLC*,
    No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ............................................. 21

*Rosen v. Unilever U.S., Inc.*,
    No. C 09-02563 JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ...................................... 9

*Schlesinger v. Reservists Comm. To Stop the War*,
    418 U.S. 208 (1974) ........................................................................................................... 9

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Sethavanish v. Zoneperfect Nutrition, Co.*,
    No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014)
    .................................................................................................................................3, 11

*Simpson v. Kroger Corp.*,
    No. BC475665, 2013 WL 5347881 (Cal. Ct. App. Sept. 25, 2013) .................................. 9, 15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ............................................................... 12, 13, 16

*Stewart v. Beam Global Spirits & Wine, Inc.*,
    Case No. 11-cv-05149 (D. N.J. June 27, 2014) ...................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011).................................................................. 9, 18, 24

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ........................................................... 16

*Weiner v. Snapple Bev. Corp.*,
    No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)............................... 23

*Weiss v. The Kroger Co.*,
    Case No. 2:14-cv-03780, slip op. (C.D. Cal. Aug. 8, 2014) ………………………..…… 9

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-cv-2724, 2014 WL 2191901 (N.D. Cal. May 23, 2014)............................. 4

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11-CV-03548-LHK, 2012 U.S. Dist. LEXIS 58639 (N.D. Cal. Apr. 25, 2012) ......... 13

*Wolin v. Jaguar Land Rover North Am.*,
    LLC, 617 F.3d 1168 (9th Cir. 2010) ........................................................ 12

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011)........................................................... 10

*Xavier v. Philip Morris USA, Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................. 10, 11

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................... 24

**Statutes**

CAL. BUS. & PROF. CODE § 17208 ............................................................ 15

CAL. U. COM. CODE § 2725 ................................................................. 15

**Other Authorities**

21 C.F.R. § 101.9(c)(1), (2) ............................................................. 5, 6

v

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

1  | **I.**  **STATEMENT OF ISSUES TO BE DECIDED**[1]

2  |     Plaintiff claims that the label of Parkay Spray that states "0g Fat [and] Zero Calories Per

3  | Serving" is deceptive and misleading because the serving size specified on the Parkay Spray bottle

4  | is incorrect.  Has Plaintiff satisfied the requirements for class certification (ascertainability;

5  | standing; typicality; adequacy; predominance; manageability; superiority; and Rules 23(a),

6  | 23(b)(3), and 23(b)(2)) for the alleged class period of March 21, 2009 to present?

7  | **II.**  **INTRODUCTION**

8  |     In an effort to evade the fundamental problems that preclude certification of Plaintiff's

9  | proposed class, Plaintiff's motion states in its very first sentence that her case is based upon the

10 | allegation that "[t]he labeling of 'Parkay Spray' represents that the product has zero fat and zero

11 | calories *per serving*, when in fact *the product* does have fat and calories." (Mot. at 1 (emphasis

12 | added).)  In alleging that the Parkay Spray label contained a misrepresentation regarding the

13 | *product*'s fat and calorie content, Plaintiff ignores the critical fact that the label states that the

14 | product contains zero fat and zero calories "*per serving*."  (*Id.*)  This represents an about-face from

15 | the First Amended Complaint ("FAC"), in which Plaintiff alleged that the recommended serving

16 | size of Parkay Spread is set artificially low in order to permit ConAgra to label Parkay Spread as

17 | containing zero fat and zero calories "per serving" under FDA regulations.  (*See* FAC ¶ 20.)  As

18 | discussed herein, however, Plaintiff's proposed class is not certifiable under either theory.

19 |     Indeed, Plaintiff's characterization of her claim in the first sentence of her Motion

20 | exemplifies one of the key problems with her proposed class – a fundamental disconnect between

21 | her allegations, her class certification motion, her deposition testimony under oath, and the

24 | [1]  ConAgra's opposition to Plaintiff's Motion for Class Certification is based on this

25 | Memorandum in Opposition, as well as the Declaration of Steve Asnes ("Asnes Decl."), the Declaration of Andy Enneking ("Enneking Decl."), the Declaration of Patrick Fitzgerald

26 | ("Fitzgerald Decl."), the Declaration of Kris Mueller ("Mueller Decl."), the Declaration of Keith Ugone ("Ugone Decl."), and the Declaration of Laura Coombe ("Coombe Decl.").

27 | Unless otherwise indicated, all "Ex." Citations in this brief refer to exhibits to the Coombe Declaration.

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

language of the actual Parkay Spray label at issue.  This in turn leads to a fundamental disconnect between Plaintiff's claim and the claims for which she wishes to certify a class.

First, Plaintiff lacks standing because she was not deceived by, and did not rely on, the "per serving" language on the Parkay Spray label.  While she alleges in the FAC that consumers are likely to be deceived by a recommended serving size set too low (*see* FAC ¶ 20), Plaintiff testified at her deposition that she personally was not deceived, because she did not notice the "per serving" language on the Parkay Spray label until a couple of months before her deposition and instead believed that ConAgra was claiming on the label that *the entire bottle of Parkay Spray* had 0 grams of fat and zero calories.  (Ex. 1, Allen Dep. 85:19-86:8, 88:4:12.)

Second, Plaintiff is not typical of any proposed class members.  Plaintiff seeks to certify a class based on her own individual misunderstanding of the Parkay Spray label, without any evidence that other class members did not read the Parkay Spray label correctly or in full. Plaintiff's personal mistake in being unable to accurately read the label cannot form the basis of a statewide class, much less one covering consumers in thirty-one (31) states.

Third, the proposed class is not ascertainable, regardless of the theory under which Plaintiff seeks certification.  Plaintiff did not keep receipts documenting her alleged purchases. Even if she had, Plaintiff fails to explain, much less carry her burden of proving, how the Court can ascertain the members of her proposed class of purchasers going back to 2009.  Like Plaintiff, it is unlikely that consumers have retained proof of such a minor retail purchase. Moreover, there were different Parkay Spray labels during the class period with different labeling language.

Fourth, common issues of law and fact virtually do not exist, much less predominate. Numerous individualized issues would need to be resolved including, but not limited to:  (1) which of the different Parkay Spray labels was on the bottle of Parkay Spray the class member purchased; (2) the class member's reason(s) for purchasing Parkay Spray; (3) whether the class member even saw, much less relied upon, the "per serving" language; (4) how much Parkay Spray each class member uses at a time (including whether the class member uses Parkay Spray for "cooking" or "topping," because different serving sizes apply to each); and (5) how much each

1   class member paid for Parkay Spray, given widespread price variability, availability of coupons,

2   and other promotions.

3       Fifth, Plaintiff fails to meet the *Comcast* requirement of advancing an admissible damages

4   model capable of determining the alleged price premium the class paid for Parkay attributable to

5   the allegedly deceptive "per serving" language.

6       Finally, Plaintiff's proposed class action is neither manageable nor superior.  Even if

7   Plaintiff had standing to bring claims on behalf of consumers in other states under other states'

8   consumer protection laws – which she does not – Plaintiffs have offered no trial plan, and no

9   suggestion of how the Court would manage such a multi-state action.  There are conflicting

10  elements in the proof of the claims among the states, and available remedies vary among state.

11  There are also conflicts within the class regarding materiality of the "per serving" label, as

12  evidenced by Plaintiff's own testimony.  Plaintiff's motion can and should be denied on this

13  ground alone.

14      Plaintiff's proposed remedy is for this Court to order ConAgra to change the serving size

15  for Parkay Spray from the current size of 1 spray for cooking and 5 sprays for topping to one

16  tablespoon, which is ███████████. (Enneking Decl. ¶ 3.)  Plaintiff provides no evidence,

17  however, that her proposal reflects actual use by consumers.  Moreover, the proposed change

18  would provide no helpful nutrition information at all on the label.  This cannot be the correct result

19  here, and this Court should not permit Plaintiff to unilaterally change the serving size for Parkay

20  Spray to such an unrealistic amount.

21      For the reasons outlined above, courts in the vast majority of food labeling cases –

22  including cases strikingly similar to the case here – have declined to certify proposed statewide

23  and nationwide classes.[2,3]   The result should be no different here:  Plaintiff's motion for class

24  certification should be denied.

25  _____

26  [2]  *See Sethavanish v. Zoneperfect Nutrition, Co.*, No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600
    (N.D. Cal. Feb. 13, 2014); *Algarin v. Maybelline*, 300 F.R.D. 444 (S.D. Cal. 2014); *In re POM*

27  *Wonderful LLC Mktg. & Sales Litig.*, No. ML 10-02199, 2014 WL 1225184 (C.D. Cal. Mar.
    25, 2014); *In re ConAgra Foods, Inc.*, No. CV 11-05379 MMM, 2014 U.S. Dist. LEXIS

28  116103 (C.D. Cal. Aug. 1, 2014); *Allen v. Hyland's Inc.*, No. CV 12-01150 DMG, 2014 U.S.

1   III.    **BACKGROUND**

2       A.      **Parkay Spray**

3       ***The Labels and Label Changes.***   Parkay Spray has been on the market since 1997.

4   (Fitzgerald Decl. ¶ 3.)  ConAgra acquired the brand from Nabisco in 1998, (*id.*), and at the time,

5   Parkay Spray included a label claim that stated "Fat Free" and "zero calories."[4] ██████████

6   ████████████████████████████████████████████████████████████████████████████████

7   ████████████████████.[5]  (*See* Mot. at 3, n.2; Ex. 2, Watkins Dep. 52:8 – 55: 7; Ex. 3, 2009

8   Label Approval.)  In 2011, another label change was approved.  (Mot. at 3, n.2.)  However, when a

9   label change occurs for any ConAgra product, there is a period of time, generally consisting of

10  several months, where the product with the prior label and the product with the new label co-exist

11

12      Dist. LEXIS 107187 (C.D. Cal. Aug. 1, 2014); *Jones v. ConAgra Foods*, No. C 12-01633

13      CRB, 2014 U.S. Dis. LEXIS 81292 (N.D. Cal. Jun. 13, 2014); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014);

14      *Clancy v. Bromley Tea Co.*, No.12-cv-03003-JST, 2014 U.S. Dist. LEXIS 102917, at *6-7 (N.D. Cal. July 28. 2014); *Stewart v. Beam Global Spirits & Wine, Inc.*, Case No. 11-cv-05149

15      (D. N.J. June 27, 2014); *Karhu v. Vital Pharmaceuticals Inc.*, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014); *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2014 U.S. Dist.

16      LEXIS 86581, at *20 (N.D. Cal. June 23, 2014); *Caldera v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 53912 (C.D. Cal. Apr. 15, 2014).

17  [3]  Those courts that have granted class certification generally have trimmed the proposed class

18      members and slashed the remedies available to those class members.  *See, e.g., Lanovaz v. Twinings N.A. Inc.*, No. 12-02646, 2014 U.S. Dist. Lexis 57535 (N.D. Cal. Apr. 24, 2014)

19      (Whyte, J.) (denying certification of California monetary class but certifying California injunctive class); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724, 2014 WL 2191901

20      (N.D. Cal. May 23, 2014) (Koh, J.) (denying certification of nationwide class but granting California monetary class); *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK,

21      2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014) (Koh, J.) (denying certification of nationwide monetary class but granting certification of nationwide injunctive class and

22      California monetary class).

23  [4]  ConAgra contends that this label complied with all applicable regulations.

    [5]  Plaintiff also alleges that ConAgra misled consumers by failing to include a notation in the

24      ingredient list that soybean oil and buttermilk contain a trivial amount of fat.  (FAC ¶¶ 32-35.)  However, because Plaintiff never looked at the ingredient list on the back panel (Ex. 1,

25      Allen Dep. 54:25-56:20), many of the same arguments regarding Plaintiff's "serving size" claim apply equally to this claim. In addition, Plaintiff devotes virtually no space in her

26      Motion attempting to establish that class certification is appropriate for this claim, and for this reason alone, Plaintiff has failed to satisfy her burden to demonstrate that certification is

27      appropriate.

28

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

in the distribution channels.  (Asnes Decl. ¶ 4.)  Parkay Spray has a shelf life of up to seven months because its sell-by date is 210 days from the date of manufacture. (*Id*.)  Thus, during the alleged class period, there were two different Parkay Spray labels in the distribution channels, and available for purchase by consumers, at the same time for up to a seven-month period. (*Id.* at ¶¶ 4-5.)

*The FDA's "Rounding Down" Regulations.*  FDA regulations specify when the fat and calories per serving in a food's Nutrition Facts Panel may be listed as 0 grams per serving. Specifically, fat per serving of less than 0.5 grams must be listed as zero grams per serving, and calories per serving of less than five calories may be listed as zero calories in the product's Nutrition Facts Panel. 21 C.F.R. § 101.9(c)(1), (2).

It is undisputed that each spray of Parkay Spray contains .08 grams of fat and 0.8 calories. (Mot. at 4.)  The serving size of Parkay Spray is one spray for cooking and five sprays for topping. Even for five sprays of the product, the amount of fat (0.4 grams) and the number of calories (4 calories) fall well below the FDA's threshold where rounding down to zero is required for fat and permitted for calories.

*Serving Size.*[6]  As Plaintiff notes in her Motion, the serving size for Parkay Spray was the same at all times during the class period – one spray for cooking, and five sprays for topping. (Mot. at 6.)    Yet, Plaintiff argues that the appropriate serving size is one tablespoon.  (Mot. at 5-6.)  ConAgra tested Plaintiff's theory and found that ███████████████████████████████████████ ████████████████████████████████  (Enneking Decl. ¶ 3.)  Plaintiff offers no evidence, however, that any consumer ever uses such a large quantity of Parkay Spray at one time, much less the typical consumer.

---

[6]  As a preliminary matter, ConAgra respectfully disagrees with the Court's prior conclusion that Plaintiff plausibly alleges that ConAgra used the wrong serving size for Parkay Spray.  (*See* Dkt. No. 41.)  Another Court in this district on an identical issue involving one of Parkay Spray's direct competitors reached the exact opposite conclusion, holding that the challenged label was not misleading as a matter of law.  *Pardini v. Unilever United States, Inc.*, No. 13-1675, 2014 U.S. Dist. LEXIS 7900, at *13, 16, 18 (N.D. Cal. Jan. 22, 2014).  For this reason, ConAgra hereby incorporates by reference the arguments set forth in its Motion to Dismiss. (*See* Dkt. No. 17.)

***Pricing.***   Neither ConAgra nor Plaintiff can identify purchasers of Parkay Spray through pricing data.  (Fitzgerald Decl. ¶ 4.)  ConAgra does not sell Parkay Spray directly to consumers, nor does it control the prices that retailers charge for the product.  (*Id.*)[7]  Although ConAgra does purchase certain retail pricing information from IRI, a third party, that pricing and sales information is based on samples within particular geographic regions and does not show prices charged at particular stores, to individual customers, or to specific groups of consumers.  (*Id.*)  There is also no way to determine the identities of Parkay Spray purchasers, whether through the pricing data or otherwise.  (*Id.*)  Critically, ConAgra does not charge a premium based on whether the challenged label statements appear on the label (*id.* at ¶ 5), and Plaintiff has presented no evidence that ConAgra does so.[8]

***Consumers' Purchase and Use of Parkay Spray***.  Consumers purchase Parkay Spray for a variety of reasons, including ██████████████████████.[9]  (Fitzgerald Decl. ¶ 6; Ex. 4,

---

[7]   Retailers determine the price to the consumer, and prices vary among retailers.  (Ex. 5, Sears Dep. 53:3-4, 16-17.)

[8]   Plaintiff's Motion includes a mere two sentences attempting to establish that "[c]onsumers pay more for Parkay Spray due to the purported health benefits." (Mot. at 4.)  First, Plaintiff quotes from a ConAgra Tablespreads Price and Promotion Study that describes Parkay Spray as "premium priced (on a per oz. basis)" to consumers.  (*Id.*)  But, the premium mentioned does not refer to a price premium based on the product being labeled zero fat or zero calories per serving, and merely notes that Parkay Spray ████████████████ (Fitzgerald Decl.  ¶ 5.) ████████ ██████████████████████ (*See* Ex. 6, Table Spreads Price and Promotion Study, IRI Presentation dated Jan. 6, 2010, CAGAL__00956-992 at 987.)  Plaintiff also notes that Parkay Spray is not price sensitive, (Mot. at 4), but offers no evidence whatsoever suggesting that consumers actually pay more for Parkay Spray due to claims of zero fat and zero calories per serving.

[9]   At several points in her Motion, Plaintiff incorrectly asserts that "[s]ignificantly, in deciding whether to make a label change, ConAgra studied one thing – would consumers continue to believe the "zero calories and 0 grams of fat" claims on Parkay Spray's label?" (Mot. at 3, 17.)  Plaintiff cites to a Parkay Concept Study for this point.  (Ex. 6 to Mot.)  But Plaintiff is fully aware that this study ████████████████████████ (Mueller Decl. ¶ 7.)  One of the questions posed in this study to consumers was whether ████ ██████████████████ (*Id.*)  However ██████████████████ (*Id.*)  Thus, this question was ████████████ (*Id.*)  This was explained to Plaintiff's

6

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   Fitzgerald Dep. 103:7-23, 104:12 – 105:9; Ugone Decl. ¶ 8.a.)[10]   Those reasons also include

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████[11]   Additionally, some consumers,

4   including Plaintiff, ██████████████████████.  (Ex. 1, Allen Dep. 18:10-16; Fitzgerald

5   Decl. ¶ 7.)

6       **B.     Plaintiff Erin Allen**

7       ***Plaintiff Did Not Rely On the Challenged Label Statements.***  During the time period in

8   which Plaintiff claims to have used Parkay Spray, she never noticed the terms "per serving"

9   conspicuously displayed directly under the "0 grams fat, zero calories" language."  (Ex. 1, Allen

10  Dep. 85:19-86:8.)[12]  Moreover, she never looked at the serving size on the product or the list of

11  ingredients on the back panel.  (*Id.* at 54:25 – 56:20.)  Instead, she simply decided how many

12  sprays to use based on how much it would take to cover a particular food and not on the applicable

13  serving size.  (*See, e.g, id.* at 10:20 – 11:12, 32:24- 33:13.)  Curiously, for someone purportedly

14  interested in lowering her calorie and fat intake, Ms. Allen also concedes that she never looked for

15  a reference to zero calories on any other product.  (*Id.* at 59:20-23.)  By way of example, even

16  after she decided to use Parkay Spray, Plaintiff also continued to use butter as a food topping, yet

17  claims not to know whether butter or Parkay Spray contain more fat and calories.  (*Id.* at 33:15-

18  34:8.)

19

20

---

21   counsel at the corporate representative deposition of Katie Bartholomew, but Plaintiff still
22   chooses to mischaracterize this study in her Motion on several occasions. (Ex. 10,
     Bartholomew Dep. 279:2-280:1.)

23  [10]   (*See also* Ex. 11, "Table Spreads: Category Overview," ConAgra presentation dated April
     2010 (████████████████████████████████████).)

24  [11]   (*See* Exs. 7, 8, and 9, Parkay Spray Labels.)  In fact, according to a study cited by Plaintiff's
25   damages expert, "zero cholesterol" claims contribute more than "total fat" claims to
     consumers' overall judgment of food as healthful. (*See* Weir Decl., Ex. H, "Testing Consumer
26   Perception of Nutrient Content Claims Using Conjoint Analysis," Drewnowski, Adam *et al.*,
     Public Health Nutrition: 13(5), 688-94 at 692.)

27  [12]   (*See also* Ex. 12, Photograph of Parkay Spray label provided by Ms. Allen to her attorneys;
     Ex. 1, Allen Dep. 79:18-80:12.)

28

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    In fact, Plaintiff admitted at her deposition that she does not even have a ballpark estimate

2    as to how much fat or calories are in a serving of Parkay Spray.  (*Id.* at 9:2-10:8.)[13]  Tellingly,

3    after she stopped using Parkay Spray, Plaintiff used Land O'Lakes as a replacement based solely

4    on price, and did not look at the nutritional information when deciding to purchase this product.

5    (*Id.* at 43:2 – 44:9.)  Highlighting the disconnect between her claims and the class she seeks to

6    represent, Plaintiff maintains that she will not purchase Parkay Spray in the future as it is currently

7    formulated – regardless of whether the label is changed, as she requests – and would only

8    purchase it in the future if the entire bottle was fat-free and calorie-free. (*Id.* at 88:4-12.)

9        ***Plaintiff Cannot Quantify Any Injury or Damage***.  Plaintiff estimates that she purchased

10   between 50-60 bottles of Parkay Spray, but does not recall when she made her first purchase or

11   how much she paid for the product at any point in time.  (*Id.* at 7:10-22; 24:2-4, 54:1-7, 77:10-12.)

12   Plaintiff has no receipts or other records that would otherwise establish when she bought the

13   product, how many bottles she bought, or how much she paid for them.  (*Id.* at 27:23 – 28:17.)

14   **C.    Plaintiff's Expert Colin Weir**

15       Plaintiff cannot solve the problems presented by the foregoing facts by offering opinions

16   from her proffered expert on damages, Colin Weir.  Mr. Weir's declaration is conclusory,

17   unsupported, and ultimately inadmissible.  Mr. Weir has not taken steps to perform any actual

18   analysis or otherwise show that any calculations are actually possible, a failing that recently led

19   multiple courts to reject similar testimony.[14]  As discussed below, Mr. Weir's testimony also rests

20   on demonstrably false premises, and ConAgra's economic expert, Dr. Keith Ugone, has

21   determined that neither of the approaches Weir offers is reliable or relevant.  (Ugone Decl.).

22   **IV.    DISCUSSION**

23       **A.    Legal Standard**

24

25

26   [13]   At the time of her deposition, she did have an estimate as to how much fat and calories were in
         the ***entire bottle***, but not in each serving.  (Ex. 1, Allen Dep. 95:20 – 96:10.)

27   [14]   *See* cases cited in Section IV.D.2. *infra*.

28

1   "The class action is 'an exception to the usual rule that litigation is conducted by and on

2   behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541,

3   2550 (2011).   Departure from the usual rule requires that a putative class representative

4   "affirmatively demonstrate" that he or she has met all of the requirements of Rule 23 and is

5   entitled to carry on litigation on a representative basis.   *Comcast Corp. v. Behrend*, 133 S.Ct.

6   1426, 1432 (2013).   Plaintiffs must satisfy these requirements through evidentiary proof.   This

7   requires plaintiff to do more than generate common **questions**; plaintiffs must also show that

8   litigation will produce a classwide **answer** to the common question.   *Wal-Mart*, 131 S.Ct. at 2551.

9   Plaintiff has not met this burden.

10      **B.      Plaintiff Fails Threshold Certification Requirements**

11          **1.      Plaintiff Lacks Standing**

12          Even though the Parkay Spray bottle expressly stated that **each serving** of the product

13   contained zero fat and calories, Plaintiff claims to have mistakenly believed that the **entire bottle**

14   contained zero calories and zero grams of fat because she did not read the label in its entirety.

15   (FAC ¶¶ 3-4; Mot. at 1.)   Plaintiff lacks standing to bring claims on behalf of the proposed class

16   because she was not deceived by the "per serving" Parkay Spray label statement, and thus may not

17   represent the proposed class.   *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 216

18   (1974); *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).   Where a

19   plaintiff makes an incorrect assumption or ignores important words on a label, she has no valid

20   claim for alleged deception.[15]   Here, Plaintiff concedes that she did not actually notice the "per

21   serving" language on the label of Parkay Spray and did not look at the nutrition panel on the back

22

---

23   [15]   *See, e.g.*, *Weiss v. The Kroger Co.*, Case No. 2:14-cv-03780, slip op. at 3-4 (C.D. Cal. Aug. 8,
     2014) (attached as Ex. 13) (Plaintiff "alleges that he was misled because he believes that the

24   sodium content listed on the label included the sodium found on the shells and the seed.   This
     is an untenable allegation because the presence of the words 'edible portion' on the label

25   means that the label obviously contemplated and communicated that there was an inedible
     portion of the product."); *Simpson v. Kroger Corp.*, No. BC475665, 2013 WL 5347881 (Cal.

26   Ct. App. Sept. 25, 2013)(dismissing plaintiff's claim that she did not realize "spreadable
     butter" contained olive oil when olive oil was included on the label); *Hairston v. S. Beach Bev.*

27   *Co.*, No. CV 12-1429-JFW, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (similar);
     *Rosen v. Unilever U.S., Inc.*, No. C 09-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3,

28   2010) (similar).

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    to determine what the serving size was.  (Ex. 1, Allen Dep. 54:25-56:20; 85:19-86:8.)  Because

2    she ignored the actual statements on the label itself, Plaintiff cannot claim to have relied on the

3    allegedly deceptive or misleading label statements regarding the serving size.  A putative class

4    cannot have Article III standing where, as here, the named plaintiff lacks standing.  *O'Shea v.*

5    *Littleton*, 414 U.S. 488, 494 (1974).

6           Moreover, and at a minimum, Plaintiff does not have standing to assert a claim under the

7    consumer protection laws of any state other than California.  The Ninth Circuit has held that

8    "[e]ach class member's consumer protection claim should be governed by the consumer protection

9    laws of the jurisdiction in which the transaction took place."  *Mazza v. Am. Honda Motor Co.,*

10   *Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).  "Where . . . a representative plaintiff is lacking for a

11   particular state, all claims based on that state's law are subject to dismissal."  *Granfield v. NVIDIA*

12   *Corp.*, No. C. 11 05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012).  Because Plaintiff

13   did not purchase Parkay Spray outside of California, she has no standing to represent a class of

14   non-California consumers.  *See Pardini*, 961 F. Supp. 2d at 1061.

15                    **2.      The Proposed Class Is Not Ascertainable**

16          "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

17   seeking class certification must [also] demonstrate that an identifiable and ascertainable class

18   exists."  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011).  Where "no good way to

19   identify [the] individuals" in the class exists, the class is not ascertainable.  *Xavier v. Philip Morris*

20   *USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

21          ***There are no objective and verifiable criteria to identify absent class members.***  Plaintiff

22   seeks to define the proposed class "in terms of whether a consumer purchased Parkay Spray after a

23   particular date."  (*See* Mot. at 11.)  However, in her Motion, Plaintiff has not set forth ***any method***

24   to actually ascertain absent class members' identities.  In fact, another court in this district recently

25   denied certification for this reason.  *See Clancy v. Bromley Tea Co.*, No. 12-cv-03003-JST, 2014

26   U.S. Dist. LEXIS 102917, at *6-7 (N.D. Cal. Jul. 28, 2014)(denying class certification in part

27   because plaintiff failed to provide a method to ascertain absent class members' identities).

28   Moreover, Plaintiff's cursory treatment of ascertainability relies on outdated cases, mostly from

1    other districts, while ignoring the very recent and relevant authorities from this district that have

2    denied class certification on this basis.

3    In her Complaint, Plaintiff blithely asserts that "[t]he Class is readily ascertainable through

4    Defendant's business records."  (FAC ¶ 55.)  Tellingly, Plaintiff does not present this as a feasible

5    approach in her Motion, nor has she presented any evidence that such information is available in

6    ConAgra's business records.  Indeed, ConAgra has no business records that can determine class

7    members' identities.  (*See* Fitzgerald Decl. ¶ 4.)  Moreover, consumers are unlikely to have

8    retained receipts reflecting their purchases from the class period in light of Parkay Spray's low

9    price.  Thus, the only way to identify potential members is through self-identification.

10   Relying on self-identification is inappropriate here because "the court would have

11   absolutely no way to verify that self-identified class members in fact suffered the alleged injury

12   (or more to the point, that consumers themselves might not be able to honestly identify themselves

13   even with proper notice)."[16]   In fact, this Court concluded in two recent cases that classes relying

14   on such self-identification were not ascertainable.  *See Sethavanish*, 2014 U.S. Dist. LEXIS

15   18600, at *13-18; *In re Clorox Consumer Litig.*, No. 12-00280 SC, 2014, 2014 U.S. Dist. LEXIS

16   104183, at *8-14 (N.D. Cal. July 28, 2014).  In these cases, the defendants only sold the products

17   to retailers, and the class members lacked consumer purchase records.  *See id.*; *In re Clorox*

18   *Consumer Litig.*, 2014 U.S. Dist. LEXIS 104183 at *9-10.

19   Here, Plaintiff herself could only ***guess*** that she started buying Parkay Spray

20   ***approximately in 2009***. (Ex. 1, Allen Dep. 24:2-13.)  Plaintiff relies on her guesses because she

21   has no receipts or records reflecting her purchases.  (*Id.* at 27:23- 28:12.)  Such equivocal

22

23

24   [16]   *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW, 2012 U.S. Dist. LEXIS 186948, at *16-17
       (C.D. Cal. Apr. 12, 2012); *see also Xavier*, 787 F. Supp. 2d at 1090 (finding class
25     unascertainable because using claimant affidavits would be both unreliable due to subjective
       memory problems and unfair because the defendant would not have the opportunity to cross-
       examine the plaintiffs with regard to their alleged purchases and product usage); *In Re POM*
26     *Wonderful LLC*, 2014 U.S. Dist. LEXIS 40415, at *23 ("[W]here purported class members
       purchase an inexpensive product for a variety of reasons, and are unlikely to retain receipts or
27     other transaction records, class actions may present such daunting administrative challenges
       that class treatment is not feasible.").

28

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    testimony "is precisely why affidavits from consumers are insufficient to identify the class."[17]  *In*

2    *re Clorox Consumer Litig.,* 2014 U.S. Dist. LEXIS 104183 at *11.

3         ***The proposed class includes uninjured class members.***  Plaintiff's proposed class also is

4    not ascertainable, because it includes many members who have not been injured, such as those

5    Parkay Spray customers – like Plaintiff – who never read or noticed the challenged representation.

6    Where a class includes injured and uninjured consumers, the Ninth Circuit has held that class

7    certification should be denied.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011)

8    (certification permissible only if class definition objectively screens out consumers who were not

9    deceived).

10        Plaintiff's proposed class presents the same defects as those in the *Stearns* case.  The

11   proposed class includes those who were not deceived by the challenged label statements, such as

12   individuals who purchased Parkay Spray for reasons other than reliance on the "0 grams fat, 0

13   calories per serving" claim, those who would have purchased the product irrespective of that

14   claim, and those who never read or saw the claim.  Thus, Plaintiff's proposed class fails on

15   ascertainability grounds.

16        **C.      Plaintiff's Claims Are Not Typical**

17        Plaintiff's claims are not typical of the proposed class under Rule 23(a)(3) as is required

18   for class certification.  "The purpose of the typicality requirement is to assure that the interest of

19   the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover*

20   *North Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The test of typicality 'is whether other

21   members have the same or similar injury, whether the action is based on conduct which is not

22   unique to the named plaintiffs, and whether other class members have been injured by the same

23   course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 984 (9th Cir. 2011).  Thus,

24   "[s]everal courts have held that class certification is inappropriate where a putative class

25

26   [17]   These ascertainability problems are also obstacles to manageability and superiority.  *E.g.,*
     *Algarin*, 300 F.R.D. at 455; *Red*, 2012 U.S. Dist. LEXIS 186948, at *17-18; *Hodes v. Van's*
27   *Int'l Foods*, No. CV 09-01530 RGK, 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23,
     2009.)

28

1 representative is subject to unique defenses which threaten to become the focus of the litigation."

2 *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

3       While Plaintiff seeks to represent a class of consumers who saw and relied upon the

4 alleged misrepresentations contained on the Parkay Spray product bottle, she herself did not.  (Ex.

5 1, Allen Dep. 54:25-56:20, 85:19 -86:8.)  It is axiomatic that reliance is a necessary element of

6 plaintiff's claims.[18]  Because Plaintiff never read or even saw the "per serving" fat and calorie

7 representations on the Parkay Spray product label, Plaintiff could not have relied upon the

8 allegedly understated serving sizes.  *See Stearns*, 655 F. 3d at 1019-20; *Kane v. Chobani, Inc.*, No.

9 12-CV-02425, 2013 U.S. Dist. LEXIS 98752, at *23 (N.D. Cal. Jul. 12, 2013) ("Plaintiffs are

10 typically required to establish reliance by alleging facts showing they viewed [the allegedly

11 deceptive or misleading statements]").[19]  Without such reliance, Plaintiff has no basis for her

12 claims.  Thus, Plaintiff's claims cannot be typical of the proposed class, and certification should

13 be denied.

14       Importantly, while Plaintiff testified that she believed that ConAgra represented that the

15 entire bottle of Parkay Spray had no calories or fat (Ex. 1, Allen Dep. 88:4-18; *see also* FAC ¶¶ 3-

16 5), she has offered ***no evidence whatsoever that any other consumers***, much less the objectively

17 reasonable consumer, misunderstood the fat and calorie statements to apply to the entire bottle.[20]

18

19 [18]   To establish standing under the CLRA, "a plaintiff must show he personally lost money or
      property because of his own actual and reasonable reliance on the allegedly untrue or

20    misleading statements." *Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK,
      2012 U.S. Dist. LEXIS 58639, at * 21-22 (N.D. Cal. Apr. 25, 2012).  Likewise, to establish

21    standing under the UCL, "a plaintiff must show he personally lost money or property because
      of his own actual and reasonable reliance on the allegedly unlawful business practices." *Id.* at

22    *29.  Therefore, actual reliance is required to have standing to sue under either of these
      statutes.  Reliance is also required for common law fraud and breach of express warranty

23    claims.  *Id.* at * 37.

24 [19]   Although Plaintiff relies heavily on the case of *Guido v. L'Oreal*, No. CV-11-1067, 2013 U.S.
      Dist. LEXIS 94031 (C.D. Cal. Jul. 1, 2013), Plaintiff fails to acknowledge the fact that the

25    *Guido* court concluded that the named plaintiff was not an adequate representative for the class
      under circumstances very similar to the instant case.  *Id.* at *15-16 (concluding that the named

26    plaintiff was not an appropriate class representative because she had not noticed a warning on
      a pre-2007 bottle, subjecting her to a non-reliance defense as to the post-2007 bottle even if it
      contained such a warning).

27 [20]   Similarly, Plaintiff has offered no evidence that the typical consumer ███████ – the
      number of sprays required to meet the serving size of one tablespoon that Plaintiff seeks here.

28

13

1    Plaintiff's inability to produce even a single other person who claims to have been deceived is not

2    surprising, considering that Plaintiff's alleged belief directly contradicts the clear and

3    unambiguous label statement that Parkay Spray contains 0 grams of fat and zero calories "per

4    serving." (*See* Mot. at 3, n.2.)  Thus, unless every reasonable consumer would have also ignored

5    the "per serving" language on the front label of Parkay Spray, directly underneath the fat and

6    calorie statement (which is not plausible), then Plaintiff and her claims necessarily are atypical.[21]

7        **D.      Plaintiff Has Not Satisfied the Requirements of Rule 23(b)(3)**

8            **1.      Individual Issues of Materiality, Reliance, and Causation Predominate
             Over Common Issues**

9

10       Certification pursuant to Rule 23(b)(3) is proper only when "the actual interests of the

11   parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler

12   Corp.*, 150 F. 3d 1011, 1022 (9th Cir. 1998).  Simply establishing that common questions of law

13   or fact exist, much like the showing required under the commonality requirement, is insufficient

14   under Rule 23(b)(3).  *Id.*  Rather, the predominance inquiry under Rule 23(b) is more rigorous as it

15   "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

16   representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623-24 (1997).  Rule 23(b)(3) calls for

17   two separate inquiries: (1) do issues common to the class predominate over issues unique to

18   individual class members, and (2) is the proposed class action superior to other methods available

19   for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

20       ***Materiality***.  Plaintiff's arguments that common liability issues predominate over

21   individualized issues lack merit.  Plaintiff relies on *Ortega v. Natural Balance*, Inc., No. CV 13-

22   5942 ABC, 2014 U.S. Dist. LEXIS 84391 (C.D. Cal. 2014), but this reliance is misplaced.  The

23

24       Accordingly, for this reason as well, typicality is not met.
         [21] For many of the same reasons Plaintiff fails Rule 23(a)(3)'s typicality requirement, she is not
25       an adequate representative under Rule 23(a)(4).  *See, e.g., Kandel v. Brother Int'l Corp.*, 264
         F.R.D. 630, 634 (C.D. Cal. 2010) (noting that typicality and adequacy overlap).  It simply
26       cannot be the case that a Plaintiff who was not even aware that the challenged label statement
         included the words "per serving" can be an adequate representative for a class whose recovery
27       hinges entirely on the finder of fact determining that the recommended serving size was set
         artificially low.
28

                                        14

1     *Ortega* court concluded that certification was only permissible where a defendant's "packaging

2     was uniform over the entire class period" and where materiality was determined based on "the

3     objective reasonable consumer standard."  *Id.* at *15.

4        Here, the Class Period is from March 2009 to present.[22]  ███████████

5     ████████████████████████████████████████████████  (*See* Mot.

6     at 3, n.2; Ex. 2, Watkins Dep. 52:8 – 55: 7; Ex. 3, 2009 Label Approval.)  The two different labels

7     invoke two subsets of fundamentally different inquiries.  Consequently, individual inquiries will

8     have to be made to determine whether each class member was exposed to the earlier label, the

9     later label, or both labels – a difficult analysis given that there was up to a seven (7) month period

10     when both labels would have been on Parkay Spray products on store shelves.  (*See* Asnes Decl. ¶

11     3.)  This inquiry is necessary to determine whether a reasonable person would likely be deceived

12     by either or both labels.  This is fatal to materiality in this case.

13        Additionally, an individual inquiry would be necessary as to whether the class member

14     actually read the nutrition facts panel containing the serving size information.  *See, e.g., Simpson*,

15     2013 WL 5347881 (dismissing plaintiff's claim that she did not realize "spreadable butter"

16     contained olive oil when olive oil was included on the label); *Hairston*, 2012 WL 1893818, at *13.

17     Indeed, in this case, even if the Parkay Spray labels were uniform throughout the class period

18     (which they were not), consumers' understanding of the challenged statement would not

19     necessarily be, especially depending upon whether or not they looked at the serving size on the

20     back label.  *See Jones*, 2014 U.S. Dist. LEXIS 81292, at *54.  Common questions also do not

21     predominate because the way in which the spray is used differs across consumers, (Fitzgerald

22     Decl. ¶ 7), as evidenced by the very fact that there are different serving sizes for cooking versus

23     spraying on food.  It therefore follows that in order to determine whether the challenged

24

25 [22]    Plaintiff attempts to argue that the class period dates back to Jan. 1, 2008.  But this is incorrect.
26       It is well-established that class claims can only date back four years from the time the original
      class action complaint was filed, which would be March, 21, 2013 here.  *See, e.g.*, Cal. Bus.
27       & Prof. Code § 17208 (four-year statute of limitation for UCL claims); Cal. U. Com. Code §
      2725 (four-year statute of limitation for breach of warranty claims).

28

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    statements were material to a consumer, an individual inquiry regarding product use would have to

2    be made.  Thus, materiality cannot be inferred on a classwide basis.[23]

3         *Reliance*.  Because there is no common evidence as to what consumers perceived or what

4    they found material, a presumption of reliance is inappropriate.  *See Mazza*, 666 F.3d at 595.  "If

5    the misrepresentation or omission is not material as to all class members, the issue of reliance

6    "'would vary from consumer to consumer' and the class should not be certified."  *Stearns*, 655

7    F.3d at 1022-23; *see also Webb v. Carter's Inc*., 272 F.R.D. 489, 502-03 (C.D. Cal. 2011) (class

8    treatment inappropriate where evidence showed that consumers "would not be expected to respond

9    uniformly" to the product information); *Faulk v. Sears Roebuck & Co*., No. C 22-2159 SI, 2013

10   U.S. Dist. LEXIS 131792, at *29 (N.D. Cal. Apr. 19, 2013) ("conclusory statement" that

11   materiality can be established on a class-wide basis insufficient); *Pfizer Inc. v. Superior Court*,

12   182 Cal. App. 4th 622, 631-32 (2010) (if consumers "did not purchase the [product at issue]

13   *because of* [the deceptive practice,]" there can be no presumption of reliance) (emphasis added).

14   Here, as explained above, Plaintiff fails to demonstrate that the alleged misrepresentations were

15   material to all proposed class members, and therefore cannot invoke the presumption of reliance

16   (even in those states permitting such a presumption).

17        A similar situation was addressed in *Chow v. Neutrogena Corp.*, No. CV 12004624 R,

18   2013 U.S. Dist. LEXIS 17670 (C.D. Cal. Jan. 22, 2013).  The court held that in order to satisfy the

19   Rule 23(b)(3) predominance requirement "for [p]laintiff's CLRA and express warranty claims, she

20   must demonstrate that class members relied upon the representations in the advertisements."  *Id.* at

21   *4.  The plaintiff argued that the material misrepresentation doctrine applied, which would create a

22   presumption of reliance.  *Id.*  The *Chow* court rejected this argument, concluding that "a

23   ────────────────

24   [23]   In addition, the serving size is only material in this context if a consumer uses more than the
         serving size.  Otherwise, all of the statements are true (pursuant to FDA regulations), and there
25       is no misrepresentation.  Whether the serving size that appears on the label of Parkay Spray is
         correct is at heart a complicated regulatory question that even courts in this district disagree
26       on.  (*Compare* Dkt. No. 41 *with Pardini*, 2014 U.S. Dist. LEXIS 7900, at *10-18.)  Either way,
         it is clear that the serving size was not material to Plaintiff, (Ex. 1, Allen Dep. 54:25-56:20),
27       and Plaintiff has not produced a scintilla of evidence that it was material to other consumers'
         purchases of Parkay Spray.

28

1  significant portion of consumers who purchased the product were repeat purchasers" and "Plaintiff

2  has not provided significant proof to distinguish between mere favorability toward products

3  bearing the Neutrogena brand name, for example, and reliance upon specific advertised benefits of

4  the products in this case." *Id.* at *4-5.  Thus, the court denied certification.  The same result is

5  warranted here, especially since a significant portion of consumers who purchase Parkay Spray are

6  also repeat purchasers.  (*See* Fitzgerald Decl. ¶ 9.)

7         ***Causation/ Injury***.   Even if reliance or causation could be presumed or inferred here,

8  Plaintiff cannot dispense with Article III's requirement that each plaintiff makes some showing of

9  injury and causation to recover.  *O'Shea v. Epson America*, No. CV 09-8063 PSG, 2011 U.S. Dist.

10  LEXIS 105504, at *29 -30 (C.D. Cal.  Sept. 19, 2011).  In the Rule 23(b)(3) context, "questions of

11  Article III standing amount to an inquiry as to whether individual issues of injury-in-fact and

12  causation predominate over common issues." *Id.* at *23.  The *O'Shea* court aptly stated the issue:

13  "[A]bsent a showing that [the putative class members'] injury was caused by the allegedly

14  deceptive advertising, they lack standing to proceed in federal court." *Id.* at *37.

15         Because absent class members must satisfy the requirements of Article III, "the Court

16  [must be] concerned with the absence of class-wide proof of a 'causal connection between the

17  injury and the conduct complained of, such that the injury is fairly traceable to the action

18  challenged.'" *Id.* at *29, 33-34.  In this way, Article III standing cannot be established simply

19  based on the fact that the alleged misrepresentation was on every product (even if that were true

20  here).  *See id.* at *36.  This remains true even if the challenged label statement itself renders the

21  product misbranded.  *See Brazil v. Dole Food Co.*, No. 12-cv-01831-LHK, 2013 U.S. Dist. LEXIS

22  136921, at *28-29 (N.D. Cal. Sept. 23, 2013).  Indeed, a purchaser could have bought the product

23  based solely on the fact that his or her family used it regularly over the years and not because of

24  the alleged misrepresentation.  Thus, individual inquiries would be required, and where

25  individualized issues of causation (i.e. reliance) predominate, no class may be certified.  *See*

26  *Moheb v. Nutramax Labs, Inc.*, No. CV-12-3633-JFW, 2012 U.S. Dist. LEXIS 2023, at * 20-23

27  (C.D. Cal. Sept. 1, 2012)(plaintiffs cannot demonstrate that common issues predominate where

28  issues of reliance and injury require individualized inquiry).  Furthermore, consumers who were

1    aware of or used the appropriate serving size did not suffer any injury, because they received the

2    advertised benefit —no fat or calories per serving.  In such cases, no causation or injury would be

3    present.  Thus, the proposed class is "not sufficiently cohesive to warrant adjudication by

4    representation." *Id.* at *37.

5         ***Variations in State Law Mean That None of Plaintiff's Legal Issues Are Common.***  As

6    discussed in Section IV.B.1., *supra*, Plaintiff lacks standing to bring any claims on behalf of any

7    class members outside of California. Even if this were not the case, Rule 23(a)(2)'s commonality

8    requirements places the burden on Plaintiff to "demonstrate" that the Court can resolve "each of

9    the claims in one strike." *Walmart*, 131 S.Ct. at 2551.  It is axiomatic that "the law on

10   predominance requires the district court to consider variations in state law when a class action

11   involves multiple jurisdictions."  *Lozano v. AT&T Wireless Servs.*, Inc., 504 F.3d 718, 728 (9th

12   Cir. 2007).  Here, Plaintiff has not met her burden of providing evidence that there is a "common"

13   question that can resolve in "one stroke" all of the Plaintiff's claims under each of the laws of the

14   31 separate states that Plaintiff seeks to represent, and therefore fails to show that common

15   questions, such as state law treatment of reliance and causation requirements, predominate.[24]  (*See*

16   Ex. 14, Chart of Examples of Variations in State Laws.)

17                    **2.     Individual Issues Concerning Damages and Restitution Predominate
18                             Over Common Issues**

19        Rule 23(b)(3) certification is improper unless a plaintiff  presents a damages model that

20   correlates with the theory of liability and establishes that damages are "capable of measurement on

21   a classwide basis." *Comcast Corp.*, 133 S.Ct. at 1433-34 (2013).  In *Comcast*, the Court held that

22

23   _____

24   [24]   Because of page limitations, ConAgra will not fully address the many state law variations in
          this brief, but attaches as Ex. 14, a chart demonstrating some of the many variations.  ConAgra
25        notes, however, that numerous courts have found that material variations in consumer
          protection statutes and warranty laws among the states militate against certification of multi-
26        state actions.  *See, e.g., In re Bridgestone/Firestone, Inc.* 288 F.3d 1012, 1015, 1018 (7th Cir.
          2002); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *Georgine v. Amchem
27        Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd sub nom.*, *Amchem*, 521 U.S. 591.

28

                                              18

1   it is not enough to propose just any "method to measure and quantify damages on a classwide

2   basis[;]" such logic would mean that any proposed method could suffice, rendering Rule

3   23(b)(3)'s predominance requirement a "nullity." *Id.* at 1433.  "No damages model, no

4   predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d

5   244, 252-53 (D.D.C. 2013).  Plaintiff relies exclusively on Mr. Weir's opinion in an attempt to

6   show that damages can be proven on a classwide basis.  However, as discussed below, the claimed

7   damages measures proposed by Mr. Weir would not yield a reliable or relevant measure of

8   economic harm.

9   **Weir's fraud-on-the market theory is impermissible here.**  As an initial matter, Mr.

10   Weir's proposed damages methods fail because they rely on a fraud-on-the-market theory.  Mr.

11   Weir opines that a price premium resulting from the product claim can be determined by using

12   conjoint analysis and/or contingent valuation, because the price premium is established by the

13   marketplace and is unaffected by "[i]ndividual reasons consumers may have for purchasing the

14   Product."  (Weir Decl. ¶¶ 9-10.)  However, the law precludes reliance on such a theory in this

15   case.  Consistent with virtually every court in the country to consider the issue, the Ninth Circuit

16   has limited the fraud-on-the-market doctrine to "a security that is actively traded in an 'efficient

17   market.'"  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).

18   Judge Pregerson of this District recently rejected a similar "fraud on the market" price-

19   premium theory in a case about health claims on juice labels.  *See In re POM Wonderful*, 2014

20   WL 1225184, at *4 ("Absent [] traceable market-wide influence, and where, as here, consumers

21   buy a product for myriad reasons, damages resulting from the alleged misrepresentations will not

22   possibly be uniform or amenable to class proof.").  Mr. Weir's price premium models depend on

23   the same misapplied theories and unsupported assumptions about market-wide influences that

24   were rejected in *POM Wonderful*, and cannot serve as a basis for awarding monetary relief on a

25   classwide basis. *See Comcast,* 133 S. Ct. at 1433.

26   **Mr. Weir's proposed methods fail to satisfy the requirements of Comcast.**  Mr. Weir

27   proposes to use representative survey techniques, either conjoint analysis or contingent valuation,

28   to calculate a classwide price premium attributable to the challenged label statements.  (Weir Decl.

¶¶ 9-12.)  However, Mr. Weir's methodology is unreliable and would still require individualized inquiries.  Moreover, he has only provided a skeletal framework of his damages analysis, which is insufficient to withstand the rigorous scrutiny required under *Comcast*.

**Mr. Weir's proposed methods are unreliable and are unconnected to Plaintiff's theory of liability.**  Notably, Weir's damages model does not even purport to measure any price premium related to "0g Fat, Zero calories per serving" but merely "0g Fat, Zero Calories."  (*See* Weir Decl. ¶¶ 31, 54, 55; *see also* Ugone Decl. ¶ 39 n.57.)  In fact, the term "per serving" appears nowhere in Weir's declaration at all.  (*See generally* Weir's Decl.)  Consequently, Weir's proposed damages model fails to isolate a price premium directly attributable to the alleged inaccurate label statement regarding the fat and calorie content per serving. Therefore, the damages model does not comport with *Comcast's* requirement that class-wide damages be tied to Plaintiff's theory of liability.  *Comcast*, 133 S.Ct. at 1433.  Courts have recently denied certification on this exact basis.  *See Jones*, 2014 U.S. Dist. LEXIS 81292, at *72-84.

Moreover, Weir's proposed approach fails to account for significant pricing variation by assuming that all putative Class members were impacted by the same dollar or percentage amount despite the fact that they paid very different prices for Parkay Spray.  (Ugone Decl. ¶ 10. a.iii.)  ConAgra's expert, Dr. Ugone, has examined the available pricing data and has concluded that there is ████████████████████.  (*Id.* at ¶¶ 6, 17.)  In other words, Weir's methodology fails to evaluate the alleged "price premiums when Parkay Spray is purchased in different sales channels, geographic areas, retailers, or at promotional prices."  (*Id.* at ¶ 10. a.iii.)  This alone is fatal to Plaintiff's certification bid.

Retail purchase prices ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.  (*See id.* at ¶¶ 8b.i., 24, 25, 29.)  Consequently, Weir's approach could result in an award of damages to putative class members who actually suffered no injury.  For example, consumers who purchased Parkay Spray for reasons unrelated to the challenged label statements and consumers who purchased it at a discount exceeding the claimed price premium Mr. Weir proposes to calculate would gain a windfall.  (*See*

20

1   *id.* at ¶ 10.a.ii., 34.)  This would result in a method of proving damages unconnected to Plaintiff's

2   theory of liability, which is expressly prohibited by *Comcast*.

3        At best, Weir's proposed conjoint analysis and contingent valuation would provide an

4   average "willingness to pay" associated with the challenged label statements as opposed to an

5   actual price premium.  (Ugone Decl. ¶ 10.a.iv.)  Weir offers nothing that would permit him to

6   convert this "willingness to pay" figure into an alleged price premium that actually occurred in the

7   market place during the applicable class period.  (*Id.* at ¶¶ 10.a.iv., 47)  Indeed, the proposed

8   representative surveys "would be based upon tastes and preferences that exist at the time [the]

9   proposed survey is performed (*i.e.*, at some time in the future)."  (*Id.* at ¶ 56.)  Weir has provided

10  "no assurances that the average willingness to pay [he] proposes to calculate at some point in the

11  future would be representative of (or correlated) with putative Class Members' willingness to pay

12  associated with the Challenged Claims (let alone an actual price premium, if any existed) nearly

13  seven years prior to Mr. Weir's proposed survey."  (*Id.*)

14       ***Weir cannot calculate disgorgement measures on a classwide basis using common***

15  ***evidence.***  Mr. Weir contends that he would be able calculate damages based on disgorgement of

16  full retail purchase price paid, wholesale revenues, or ConAgra's profits from the sale of the

17  product using common evidence.  (Weir Decl. ¶ 8.)  This contention lacks merit as any such

18  calculation would necessarily involve individual inquiries.  Under the UCL, monetary recovery is

19  limited to restitution.  *Vioxx*, 180 Cal. App. 4th at 135.  Restitution must be measurable to be

20  awarded, and where a challenged product is alleged to be worth less than what consumers paid,

21  restitution is measured by the difference between the amount paid and the product's true worth.

22  *Id.* at 131; *Ries v. Ariz. Beverages USA LLC*, No. 10-1139, 2013 WL 1287416, at *7 (N.D. Cal.

23  Mar. 28, 2013).  To calculate restitution damages in any other manner in this context is incorrect.

24  *See Jones*, 2014 U.S. Dist. LEXIS 81292, at * 73.  Yet, the "disgorgement measures specified by

25  Mr. Weir ignore the value received by putative Class members from their purchase and use of

26  Parkay Spray." (Ugone Decl. ¶ 10.b.i.)  The product was never without any value or worth.

27  California courts have rejected Plaintiff's theory that a product is without any value or worth

28  merely because it is mislabeled – thus rendering Plaintiff's disgorgement theory inapplicable.  *See,*

*e.g., Jones*, 2014 U.S. Dist. LEXIS 81292, at *73 n.36.  Hence, neither of Weir's proposed

measures accurately represents the claimed economic harm.  (Ugone Decl. ¶ 10.b.i.)

       ***Weir's methodology necessarily requires individualized inquiries.***  As a practical matter,

Weir's proposed approach would require individualized inquiries regarding both the quantity of

the product purchased by each putative Class member as well as the retail price.  (*See* Ugone Decl.

¶ 8.b., 37.)  As Dr. Ugone explains, "[a]nalysis of aggregate pricing data (which still masks

significant variations in the retail prices paid by putative Class members) shows that the price paid

by one consumer in one place at one time for Parkay Spray is not indicative of the price paid by

another consumer in a different location at a different time." (*Id.* at ¶ 8 b.)  Simply put, "there are

many individual variables affecting prices … and significant variation in individual actual prices

paid…[all of which] negate[] the ability of a Class-wide damages approach to yield a reliable and

accurate estimate of claimed damages."  (*Id.* at ¶ 8 b. i. – ii.)  Under these circumstances, to

determine the actual price paid by any specific putative class member would require consideration

of circumstances of that particular transaction.[25] (*Id.* at ¶ 25.)  Courts routinely deny class

certification when such individualized determinations are required for damages.  *See Red,* 2012

U.S. Dist. LEXIS 186948, at *39 ("While the amount of [a] premium might be established on a

class-wide basis, Plaintiffs cannot get around the fact that individual class members, to recover,

would need to show, at minimum, proof [of facts regarding their purchases].");  *accord Algarin,*

300 F.R.D. at 459; *In re Flash Memory Antitrust Litig.,* No. C 07-0086, 2011 WL 1301527, at *7

(N.D. Cal. Mar. 31, 2011).

       Individual inquiries also would be required to determine putative class members' reason(s)

for purchasing Parkay Spray.  The record evidence in this case demonstrates that consumers

purchase Parkay Spray for a variety of reasons other than the challenged label statements, such as

---

[25]  Plaintiff's expert has done nothing to assure the Court that accurate information is available. In fact, the information is most likely unavailable as putative class members will likely not have retained receipts or other proofs of purchase; neither will they recall when they purchased the product, where they purchased the product, how much they purchased, or what they paid for it.  (Ugone Decl. ¶¶ 37-38.)

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1 ████████████████████. (Fitzgerald Decl. ¶ 6; Mueller Decl. ¶ 5; Ugone Decl. ¶ 8 a.)

2 Consumers who purchased the product for any reason other than the challenged statements have

3 no injury. (Ugone Decl. ¶ 8.a.i.) Without such an individualized analysis into these reasons,

4 Weir's approach is not reliable. (*Id.* at ¶ 9.)

5       ***Weir has not presented an adequate damages model.*** The "rigorous" analysis required by

6 Rule 23 cannot be satisfied where a damages expert "has done nothing to confirm that his

7 proposed approaches would be workable in [a given case]." *Weiner v. Snapple Bev. Corp.*, No. 07

8 Civ. 8742 (DLC), 2010 WL 3119452, at *8 (S.D.N.Y. Aug. 5, 2010). For example, in *Jones*,

9 another court in this district denied certification after concluding that Plaintiffs had not presented

10 an adequate damages model as to one of the products where the Plaintiffs' expert "[did] not

11 provide a clearly defined list of variables,…[had] not determined whether the data related to any

12 or all of his proposed control variables exist, and [had] not determined, or shown how he would

13 determine which competing and complementary products he would use." *Jones,* 2014 U.S. Dist.

14 LEXIS 81292, at *78.

15       Here, Mr. Weir has not conducted pilot surveys or any pretesting relating to his proposed

16 surveys, or provided any fully developed economic models for evaluation. (Ugone Decl. ¶ 51.)

17 Nor has he collected data or stated how he would describe Parkay Spray attributes to the survey

18 respondents. In short, he has done nothing more than hypothesize about potential models, while

19 doing very little to assure the Court that his proposed approaches could be reasonably undertaken,

20 that he is capable of carrying them out, or that they would provide relevant or reliable results in

21 any event. *See, e.g., Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 25-26 (D.D.C.

22 2012)(where no regression had even been performed, methodology "too vague for the Court to

23 even evaluate").

24       **E.**    **Class Adjudication of This Case Is Neither Manageable Nor Superior**

25       Federal Rule of Civil Procedure 23(b)(3) requires that to certify a class action, a plaintiff

26 must show that "a class action is superior to other available methods for fairly and efficiently

27 adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3); *Picus v. Wal-Mart Stores, Inc.*, 256

28 F.R.D. 651, 660 (D. Nev. 2009). In considering whether a class action is the superior remedy

1    under Rule 23(b)(3), the Court should consider "the difficulties likely to be encountered in the

2    management of a class action."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th

3    Cir. 2001).  With regard to this factor, the Ninth Circuit has previously held that "[i]f each class

4    member has to litigate numerous and substantial separate issues to establish his or her right to

5    recover individually, a class action is not 'superior.'"  *Id.*

6           Plaintiff failed to prove that such difficulties do not exist with regard to her proposed class

7    and subclasses, which encompasses claims to be governed by the materially different laws of

8    thirty-one states and require individualized proof for each claimant at issue.  In addition, each

9    claimant will need to show individualized proof of materiality, reliance, and causation.  Because

10   such individualized issues predominate, the proposed class will be too difficult to efficiently

11   administer, and the class action remedy is not superior under Rule 23(b)(3).[26]

12           **F.      Plaintiff's Proposed Class Should Not Be Certified Under Rule 23(b)(2).**

13          Plaintiff's bid for certification under Rule 23(b)(2) also fails for many of the same reasons

14   explained above.  In addition, no class may be certified under Rule 23(b)(2) where a plaintiff seeks

15   monetary relief, except possibly in cases where such relief is purely incidental to injunctive relief.

16   *Wal-Mart*, 131 S.Ct. at 2557.  That is not the case here, and Plaintiff does not so contend.

17          In addition, Plaintiff's proposed class should not be certified under Rule 23(b)(2) because

18   Plaintiff lacks standing to seek injunctive relief.  Plaintiff herself no longer buys Parkay Spray.[27]

19   (Ex. 1, Allen Dep. at 25:5-6, 95:6-9.)  Moreover, Plaintiff now has knowledge of the fat content of

20   Parkay Spray, and thus cannot be "deceived" by any statement on the product label in the future.

21

22   [26]  Plaintiff relies solely on *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009
     WL 3770668, at *19 (C.D. Cal. Nov. 9, 2009) to support her argument that litigating the
23   claims of residents from multiple states is desirable in this forum.  Plaintiff fails to mention
     that while the *Menagerie Prods.* class included non-California residents, the claims at issue in
24   that case were governed exclusively by California law, in sharp contrast to the situation in this
     case.

25   [27]  Plaintiff's testimony that she would only consider purchasing Parkay Spray in the future if it
     contained no fat or calories at all in the bottle does not cure this problem.  (*See* Ex. 1, Allen
26   Dep. 88:4-12.)  No such product exists.  The issue is whether Plaintiff would purchase Parkay
     Spray – as currently produced – if it were not labeled with "0g Fat and zero calories per
27   serving."   The issue is **not** whether Plaintiff would purchase some hypothetical substitute
     product in the future. *Jones*, 2014 WL 2702726, at *12.

28

                                                 24

(*Id.* at 95:20-96:10; FAC ¶¶ 3-4.)  Because there is thus no "likelihood of future injury" for Plaintiff, she should be barred from seeking injunctive relief.  *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1044-45 (9th Cir. 1999); *Algarin*, 300 F.R.D. at 458 (certification not proper where plaintiff knows the "truth," cannot be further deceived, and will not incur future damages as a result of the alleged conduct).  Proceeding under Rule 23(b)(2) cannot fix the multiple problems besetting Plaintiff's bid for class certification, and the Court should deny Plaintiff's motion.

**V.      CONCLUSION**

Plaintiff has not satisfied the requirements for class certification.  It is therefore proper to deny her Motion for Class Certification.

Respectfully submitted,

MCGUIREWOODS LLP


By:     /s/ Laura Coombe
        A. Brooks Gresham
        Laura Coombe
        Attorneys for ConAgra Foods, Inc.

CONAGRA FOODS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION