UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN ALLEN, et al., | Case No. 3:13-cv-01279-WHO |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| CONAGRA FOODS, INC., | |
| Defendant. | Re: Dkt. No. 222 |

## INTRODUCTION

Despite its long road, in some ways this case is only just beginning. On March 21, 2013, Plaintiff Erin Allen filed a complaint proposing a nationwide putative class of people who purchased Parkay Spray believing it to be a fat- and calorie-free alternative to butter. The class argues that defendant ConAgra Brands, Inc. ("ConAgra") deceptively labels and markets Parkay Spray by using artificially small serving sizes. Instead of being zero calorie and zero fat, each bottle contains 832 calories and 93 grams of fat. After a denied motion to dismiss, a denied motion for class certification, a stay, the addition of seven named plaintiffs, and multiple changes to the legal landscape, this case returns to the motion to dismiss stage. For the reasons set forth below, I will grant in part and deny in part ConAgra's motion.

## BACKGROUND

Allen's initial complaint included causes of action for: (1) Unjust Enrichment, (2) Fraud by Concealment, (3) Breach of Express Warranty, (4) Intentional Misrepresentation, (5) Violations of the Consumer Legal Remedies Acts (Cal. Civ. Code § 1750, *et seq.*), (6) Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*), and (7) Violation of the Consumer Protection Acts of numerous states. Compl. [Dkt. No. 1] Compl. ¶¶ 85–159. On

September 3, 2013, the Honorable Jon S. Tigar denied ConAgra's motion to dismiss and, alternatively, to transfer. Order on Motion to Dismiss ("MTD Order") [Dkt. No. 41]. He found that Allen's claims were not preempted because she had adequately alleged that Parkay Spray is subject to the labeling requirements for liquid butter substitutes rather than spray type fats and oils. *Id.* 6–8, 14. He dismissed with prejudice Allen's unjust enrichment claim because "there [wa]s no standalone cause of action for unjust enrichment." *Id.* 19–20.

Allen filed a first amended complaint, and the parties proceeded to class discovery. *See* Dkt. Nos. 46, 72. On August 8, 2014, Allen moved for class certification, seeking to represent a multi-state class, two multi-state subclasses, and a California only sub-class. By this time the case had been reassigned to the Honorable Vince Chhabria, who denied Allen's motion for class certification without prejudice. Dkt. No. 150. That order briefly addressed whether the court should certify a multi-state class for purposes of injunctive relief under Rule 23(b)(2). *Id.* 3. The court noted,

> Allen stated in her deposition that she has no interest in buying Parkay Spray as it is currently constituted, regardless of whether its label is accurate. Coombe Decl., Ex. 1, p. 33.
> Therefore, Allen cannot possibly be subject to a likelihood of future injury. As a result, even if the Court ultimately denied a renewed motion to certify a Rule 23(b)(3) class with prejudice, it would not certify a Rule 23(b)(2) class.

*Id.* 4.

The case was then reassigned to the Honorable Haywood S. Gilliam, who stayed it pending the outcome of other cases pending before the Ninth Circuit. Dkt. No. 152. Soon thereafter Judge Gilliam recused himself, and the case was reassigned to me. Dkt. No. 153. The stay was lifted on November 29, 2017. Dkt. No. 171.

On March 28, 2018, Allen requested leave to file a motion for reconsideration of the order denying injunctive relief in light of a recent Ninth Circuit decision. Dkt. No. 172. I granted her leave. Dkt. No. 174. Allen then changed counsel, Dkt. No. 177, filed the motion for reconsideration, and sought leave to amend her complaint to add seven additional named

United States District Court
Northern District of California

2

plaintiffs.[1]  Dkt. No. 183.  The seven plaintiffs separately filed a motion to intervene.[2]  Dkt. No. 182.

On September 7, 2018, I granted the motions to amend and intervene because of the changes in the legal landscape that had occurred during the course of the stay and the need to address the issues on the merits.  Dkt. No. 213.  The plaintiffs filed their consolidated second amended complaint on September 12, 2018.  Second Amended Complaint ("SAC") [Dkt. No. 214].  ConAgra moved to dismiss for lack of jurisdiction on October 12, 2018, and I heard argument on November 28, 2018.  Motion to Dismiss ("MTD") [Dkt. No. 222]; Minute Entry [Dkt. No. 230].

## LEGAL STANDARD

### I. MOTION TO DISMISS UNDER 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the authority to grant the relief requested.  *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392

---

[1] She filed a renewed motion for class certification the same day.  Dkt. No. 184.  That motion is scheduled to be argued on May 15, 2019.  *See* 9/25/18 Minute Entry [Dkt. No. 219].

[2] The seven additional plaintiffs are Tyoka Brumfield (New York and Connecticut), Ofelia Frechette (Indiana), Shelley Harder (Indiana), Deana Marr (Georgia), Tammie Shawley (Ohio), Brian Smith (Michigan), and Betty Vazquez (Illinois and Wisconsin).

F.3d at 362.

## II. MOTION TO DISMISS UNDER 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**DISCUSSION**

## I. PERSONAL JURISDICTION

ConAgra argues that the recently decided *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), requires dismissal for lack of personal jurisdiction over all claims by the nonresident named plaintiffs' claims and the absent class members' claims. MTD 7–10. It asserts that California lacks personal jurisdiction over those claims because they do not arise out of or relate to ConAgra's contacts with the forum. *Id.*

California's long-arm statute permits the exercise of personal jurisdiction to the maximum

extent permitted under the Due Process Clause of the Constitution. CAL. CIV. PROC. CODE §

410.10. The Due Process Clause requires that the defendant have "minimum contacts with [the

forum state] such that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. &

Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Those contacts may give

rise to either general or specific jurisdiction. A court has general jurisdiction over a party when its

"affiliations with the State are so continuous and systematic as to render it essentially at home in

the forum State," meaning any claims against the party can be brought there. *Daimler AG v.

Bauman*, 571 U.S. 117, 127 (2014) (internal quotations, citation, and formatting omitted). Except

in an "exceptional case," general jurisdiction is limited to the place of incorporation and the

principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal

quotation marks omitted).

     A court has specific jurisdiction over a nonresident defendant when it has "purposefully

avail[ed] itself of the privilege of conducting activities within the forum State," *Burger King Corp.

v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the suit "arises out of or relates to" those contacts.

*Daimler*, 571 U.S. at 127. The "primary concern" of the personal jurisdiction analysis is the

burden it might pose on the defendant to litigate in the plaintiff's chosen forum. *Bristol–Myers*,

137 S. Ct. at 1780.

     The Ninth Circuit applies a three-prong test to determine whether a defendant has

minimum contacts with the forum such that it is subject to personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities
> or consummate some transaction with the forum or resident thereof;
> or perform some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). The

plaintiffs have the burden of establishing the first two prongs, at which point "the

burden then shifts to [ConAgra] to 'present a compelling case' that the exercise of jurisdiction

1  would not be reasonable." *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th

2  Cir. 2004).

3  ConAgra argues that *Bristol–Myers* applies and requires me to conclude that there is no

4  personal jurisdiction over the claims by non-California plaintiffs. MTD 7–10. In response to

5  ConAgra's arguments, plaintiffs argue that ConAgra waived its ability to challenge personal

6  jurisdiction by failing to do so earlier. Opposition ("Oppo.") [Dkt. No. 224] 15–17.[3] In addition,

7  they assert that there is specific jurisdiction[4] over the nonresident named plaintiffs and the

8  nonresident absent class members. I will consider ConAgra's personal jurisdiction arguments

9  because I do not find them waived. I also conclude that *Bristol–Myers* does not apply to this case

10 because it is a federal class action and not a state mass action.

**1. Whether ConAgra Waived Its Personal Jurisdiction Arguments**

12 Parties may challenge personal jurisdiction under Rule 12 of the Federal Rules of Civil

13 Procedure. Fed. R. Civ. P. 12(b)(2). "A party waives" the defense by "failing to either . . . (i)

14 make it by motion under [Rule 12]; or (ii) include it in a responsive pleading or in an amendment

15 allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1).

16 Allen argues that ConAgra waived its personal jurisdiction defense by failing to object to

17 personal jurisdiction in the face of her original complaint, which pleaded a nationwide class.

18 Oppo. 15–16. ConAgra counters that this motion is its first opportunity to challenge the court's

19 personal jurisdiction over the nonresident plaintiffs, who did not seek leave to intervene in this

20 case until July 9, 2018, more than five years after it was filed. MTD 7; *see* Motion to Intervene

21 [Dkt. No. 182].

22 I agree with ConAgra that it has not waived its personal jurisdiction challenge. In *Sloan*,

23 the Honorable Edward M. Chen considered a similar challenge on the merits after concluding that

24 it was the defendant's "first opportunity to challenge personal jurisdiction with respect to the

---

[3] This Order uses ECF page numbers when citing to plaintiffs' opposition to the motion to dismiss because the internal page numbers are not visible in the document filed with the court.

[4] Allen does not argue that there is general jurisdiction over ConAgra in California, which is incorporated in Delaware and has its principal place of business is Illinois. *See* SAC ¶ 21.

plaintiffs *newly* named in the SAC." *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 856 (N.D. Cal. 2018) (emphasis in original), *order clarified,* No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018). I will consider on the merits ConAgra's challenge to jurisdiction over claims by named plaintiffs Brumfield (New York and Connecticut), Frechette (Indiana), Harder (Indiana), Marr (Georgia), Shawley (Ohio), Smith (Michigan), and Vazquez (Illinois and Wisconsin).

### 2. Whether *Bristol–Myers* Applies to this Case

ConAgra argues that under the Supreme Court's recent decision in *Bristol–Myers*, there is no personal jurisdiction over the claims by the nonresident named plaintiffs and the nonresident absent class members. Instead, a class action case can appropriately be brought only in the states where there is general jurisdiction over ConAgra. MTD 7–10. Allen counters that *Bristol–Myers* does not apply because this case is in federal as opposed to state court and because it is a class action as opposed to a mass action. Oppo. 13–15. I withhold judgment on the question of whether, on the same facts as those presented in *Bristol–Myers*, that case would apply to a federal court sitting in diversity. In any event, it does not apply to this case because the Supreme Court could not have intended to severely narrow the forum choices available to *class* action plaintiffs when it decided a case involving a *mass* action. Instead, I conclude that there is personal jurisdiction over the claims brought by nonresidents under the doctrine of pendant jurisdiction.

### a. The Supreme Court's Decision

In *Bristol–Myers*, the Supreme Court concluded that a California state court lacked personal jurisdiction over the defendant when it came to claims by nonresidents in a mass action tort suit. *Bristol–Myers*, 137 S. Ct. at 1781–82. More than 600 plaintiffs—including 86 from California—filed claims in California state court over injuries allegedly caused by the prescription drug Plavix. *Id.* at 1777–78. The California court lacked general jurisdiction over defendant Bristol–Myers Squibb Company ("BMS"), which was incorporated in Delaware and had its principal place of business in New York. *See id.* at 1777–78. BMS argued that the court also lacked specific jurisdiction over the nonresidents' claims because while it had employees and did business in California, none of the nonresidents had purchased Plavix or been injured by it within

7

the state of California. *Id.* at 1777–78, 1782. The trial court, court of appeal, and California Supreme Court rejected BMS's arguments and found that there was specific jurisdiction over the nonresidents' claims. *Id.* at 1778.

The United States Supreme Court granted certiorari and reversed. *Id.* at 1778–79. The Court noted the variety of interests involved in a personal jurisdiction analysis, including those of the forum state in hearing the case, the plaintiff in getting his or her choice of forum, and, of "primary concern," the burden on the defendant of litigating in the forum. *Id.* at 1780. The burden on the defendant includes considerations of convenience along with "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* The Court also noted that when it comes to personal jurisdiction in state court, federalism can play a "decisive" role because "[t]he sovereignty of each State implies a limitation on the sovereignty of all its sister States." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980) (internal quotation marks and formatting omitted). The Court wrote, "[W]e leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784.

Relying on "settled principles regarding specific jurisdiction," the Court concluded that the nonresidents' claims were not sufficiently connected with the forum to create specific jurisdiction. *Id.* at 1781. Specific jurisdiction over a claim requires "an affiliation between the forum and the underlying controversy." *Id.* (quoting *Goodyear*, 564 U.S. at 919). Yet none of the nonresidents had suffered harm in California, and none of the conduct giving rise to their claims had occurred in California. *Id.* at 1782. The Court rejected the idea that the similarity of the claims between residents and nonresidents could allow California to assert jurisdiction. *Id.* at 1781. The plaintiffs could, however, bring a similar mass action in the states with general jurisdiction over BMS. *Id.* at 1783.

### b. The State v. Federal Court Distinction

Plaintiffs argue that *Bristol–Myers* is distinguishable from this case because the Supreme Court's decision was animated by the federalism concerns associated with personal jurisdiction in state court, which are absent in federal court. Plaintiffs point out that the Supreme Court expressly

left open the question of whether the Fifth Amendment would impose the same restrictions on personal jurisdiction in federal courts as it concluded the Fourteenth Amendment does on state courts. ConAgra counters that federal courts apply state law in diversity cases such as the one here, and the same sovereignty and federalism concerns are present.

I see merit in the distinction between personal jurisdiction in federal versus state court when it comes to federal question jurisdiction. The Honorable Edward M. Chen of this district wrote, "In contrast to *Bristol–Myers*, the due process right does not obtain here in the same manner because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government." *Sloan*, 287 F. Supp. 3d at 858–59 (concluding that *Bristol–Myers* does not apply in federal courts when jurisdiction is based on a federal question but expressly declining to consider the question in the context of diversity jurisdiction).

But when it comes to a federal court sitting in diversity, Allen's argument toes the line of becoming a distinction without a difference. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) (Cousins, J.) (applying *Bristol–Myers* in federal court where all the claims presented were state law claims). If due process were to allow a federal court to assert personal jurisdiction over a purely state law cause of action when a state court could not do the same, problematic dis-uniformity could result. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) ("The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a nonresident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result."). On the other hand, as plaintiffs point out, the Supreme Court expressly left this question open. And while the answer was unnecessary to resolve that case, it could be telling that the Court dedicated no dicta to the topic. *But see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004) ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.").

I decline to resolve this close question because there are other grounds on which I conclude

that *Bristol–Myers* does not apply.

### c. The Mass v. Class Action Distinction

Allen next argues that *Bristol–Myers* does not apply to this case because it is a class action as opposed to a mass action. "Whether *Bristol–Myers* extends to class actions is a question that has divided courts across the country." *Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018).

Some courts have concluded that *Bristol–Myers* does not apply to class actions. As one wrote, the Supreme Court could not have "sought to bar certification of nationwide or multistate *class* actions on due process grounds in all but the one or two States where the defendant is subject to general jurisdiction." *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 WL 3707561, at *2 (N.D. Ill. Aug. 3, 2018). In *Bristol–Myers*, the Supreme Court "characterized its holding as a 'straightforward application . . . of settled principles of personal jurisdiction.'" *Id.*; *see Sloan*, 287 F. Supp. 3d at 854 ("[T]he Supreme Court expressly stated that its decision did not inaugurate a change in law."). The court wrote,

> [The defendant] does not cite, and the court has no knowledge of, any pre-*Bristol–Myers* decision holding that, in a class action where the defendant is not subject to general jurisdiction, specific jurisdiction must be established not only as to the named plaintiff(s), but also as to the absent class members. The pre-*Bristol–Myers* consensus, rather, was that due process neither precluded nationwide or multistate class actions nor required the absent-class-member-by-absent-class-member jurisdictional inquiry urged by [the defendant].

*Al Haj*, 2018 WL 3707561, at *1. If the Court had intended an "extraordinary sea change in class action practice," surely it would have effected such a change through a case involving a class action, rather than a mass action. *Id.* at *2; *see also In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *16 (E.D. La. Nov. 30, 2017) ([*Bristol–Myers*] does not speak to or alter class action jurisprudence.").

A court in this district declined to apply *Bristol–Myers* to a putative nationwide class based on a distinction between the personal jurisdiction requirements for named and unnamed class members. *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017). The court noted that *Bristol-Myers* dealt with a mass

10

tort action in which each named plaintiff was a real party in interest. *Id.* By contrast, in a class

action, "one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs." *Id.*

Given that all named plaintiffs were California residents and yet 88% of the class was not, the

court acknowledged that the "numbers [were] decidedly lopsided" in an apparent attempt to set the

case apart from *Bristol–Myers*. *Id.* The court nonetheless found the recent Supreme Court

decision "meaningfully distinguishable." *Id.*

Other courts have relied on the absence of limiting language in *Bristol–Myers* to conclude

that it applies to class actions as well as mass actions. *See Chavez v. Church & Dwight Co.*, No.

17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018) ("Nothing in *Bristol-*

*Myers* suggests that its basic holding is inapplicable to class actions."). One court wrote, "it is

more likely than not based on the Supreme Court's comments about federalism that the courts will

apply *Bristol–Myers Squibb* to outlaw nationwide class actions . . . where there is no general

jurisdiction over the [a defendant]." *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL

461228, at *2 (N.D. Ill. Jan. 18, 2018). A court in this district determined that there was no

personal jurisdiction over claims by Maryland named plaintiff seeking to represent a class of

Maryland individuals bringing claims under Maryland law because no relevant action had

occurred in California. *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-

CV-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018). Under this line of thinking,

due process requires courts to assess personal jurisdiction as to each absent class member.

Accordingly, multistate and nationwide class actions can comply with due process requirements

only in states where there is general jurisdiction over the defendant. *See DeBernardis*, 2018 WL

461228, at *2; *Chavez*, 2018 WL 2238191, at *10.

I disagree with the latter line of cases and conclude that *Bristol–Myers* does not require a

personal jurisdiction inquiry for absent class members. Most importantly, the Supreme Court

noted in its decision that "settled principles regarding specific jurisdiction control[led]." *Bristol–*

*Myers*, 137 S. Ct. at 1781. The decision overturned no Ninth Circuit law. *See Sloan*, 287 F. Supp.

3d at 854 ("Defendant has not identified a single Ninth Circuit case overturned by *Bristol–*

*Myers*."). Prior to *Bristol–Myers*, there would have been no basis for ConAgra to mount a due

11

process challenge against the nonresident absent class members as it does here. *See Al Haj*, 2018 WL 3707561 at \*1. I agree with the court in *Al Haj* that the Court could not have intended, in a sideways manner, to so drastically alter class action plaintiffs' ability to choose their forum. *See id.* at \*2. In addition, functional differences set class actions apart; the plaintiffs here must meet the Rule 23 requirements of numerosity, commonality of law or fact, typicality of claims or defenses, and adequacy of representation in order to achieve certification. *See* Fed. R. Civ. P. 23; *In re Chinese-Manufactured Drywall*, 2017 WL 5971622, at \*14 (noting that "a class action has different due process safeguards" than a mass action). Personal jurisdiction is rooted in fairness to the defendant, and Rule 23 provides significant safeguards to that end.

### 3. Whether There is Personal Jurisdiction over the Nonresident Claims

I conclude that it is appropriate to assert personal jurisdiction over the nonresident named plaintiffs' claims under the doctrine of pendent personal jurisdiction. In the Ninth Circuit, there is a three-part test for specific jurisdiction: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks and citations omitted). ConAgra does not dispute that it does business in California but rather argues that the nonresident plaintiffs' claims do not arise out of its activities in this forum. MTD 6.

The Ninth Circuit has adopted the doctrine of pendent personal jurisdiction, under which a district court is permitted to exercise jurisdiction over a defendant "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). The doctrine, which many circuit courts have approved, serves the interests of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties." *Id.* at 1181. In *Action Embroidery*, the Ninth Circuit concluded that it would be appropriate to assert personal

12

jurisdiction over state law claims—even though there would be no jurisdiction over them standing alone—because they arose out of a common nucleus of operative facts as federal claims over which there was jurisdiction. *Id.* The court held that district courts have discretion to decide whether or not to exercise pendent jurisdiction. *Id.*

Faced with a nationwide putative class action in *Sloan*, Judge Chen relied on *Action Embroidery* to assert pendent personal jurisdiction over out-of-state named plaintiffs' claims, finding that they arose from the same nucleus of operative facts as claims by in-state plaintiffs. *Sloan*, 287 F. Supp. 3d at 861. He acknowledged at least one distinction, namely, in *Action Embroidery* the *same* parties asserted distinct claims, whereas in the case before him, *new* parties asserted distinct claims.[5] *Id.* But he noted that the Ninth Circuit's decision had focused on the similarities between the claims, rather than the identity of the parties asserting them. *Id.* at 860. While pendent jurisdiction might not "extend[] categorically to claims brought by different plaintiffs," it was appropriate in that case because it was a putative nationwide class action and there would be only a *de minimis* burden on the defendant, who would otherwise face piecemeal litigation. *Id.* at 861–62.

I conclude that it is appropriate to assert pendent jurisdiction over the claims by the nonresident named plaintiffs. Doing so will serve the interests of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties" by preventing the need for multiple such actions in other states and potentially subjecting ConAgra to inconsistent obligations. *See Action Embroidery*, 368 F.3d at 1181. Further, ConAgra is already before this court to defend against Allen's claims, and the additional burden is *de minimis*. *See* Oppo. 15 (noting that Allen, not the nonresident plaintiffs, brought ConAgra into this court).

For all of these reasons, ConAgra's motion to dismiss for lack of personal jurisdiction is

---

[5] Judge Chen also acknowledged that the Supreme Court's warnings in *Bristol–Myers*: "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017); *see Sloan*, 287 F. Supp. 3d at 861. But as I noted above, there the Court addressed a mass action. Until the Court does so explicitly, I cannot conclude that it intends to so starkly change the landscape of class actions.

DENIED.

## II. PREEMPTION

ConAgra moves to dismiss the plaintiffs' claims on the grounds that they are expressly and impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA") and the Nutrition Labeling and Education Act of 1990 ("NLEA"). 21 U.S.C. § 301, *et seq.*, 21 U.S.C. § 343-1. The FDCA vests the FDA with authority regarding food labeling, 21 U.S.C. § 393, and the NLEA (which amended the FDCA) sets forth "uniform national standards for the nutritional claims the required nutrient information displayed on food labels." U.S.C.C.A.N. 3336, 3342; Pub. L. No. 101-535, 104 Stat. 2353 (1990), amending 21 U.S.C. § 343. ConAgra further argues that I should dismiss the plaintiffs' claims under the primary jurisdiction doctrine. With the exception of its arguments regarding the 2018 amendments to the nonbinding FDA guidelines,[6] ConAgra asserts the same arguments that Judge Tigar found unpersuasive in 2013.

### A. Express Preemption—Whether Parkay Spray's Labeling Complies with Federal Law

ConAgra argues that the plaintiffs' claims are preempted because it labels Parkay Spray in compliance with the requirements of the FDCA, the NLEA, and the FDA regulations. MTD 12–13. Accordingly, plaintiffs' claims necessarily impose additional or different requirements and must be dismissed as preempted.

In his 2013 Order, Judge Tigar concluded that Allen's claims were not preempted because they did not "seek to impose requirements that differ from those imposed by the FDCA, NLEA, and FDA regulations." MTD Order 13. The complaint adequately alleged that Parkay Spray was subject to the labeling requirements of the butter, margarine, oil, and shortening category because it was a liquid butter substitute. *Id.* 8–10. The court disagreed with ConAgra that Parkay Spray belonged in the spray type and fat and oils category. *See id.* 8, 11–12. First, although the product

---

[6] ConAgra requests judicial notice of the FDA's 2018 guidance entitled, *Reference Amounts Customarily Consumed: List of Products for Each Product Category: Guidance for the Industry* ("Reference Amount Guidance") (Feb. 2018). Request for Judicial Notice [Dkt. Nos. 222-1]. A "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website." *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017). ConAgra's request for judicial notice is GRANTED.

dispensed as a spray and contained no milk or cream, "[i]mitation butter . . . belong[ed] in the same reference amount category as butter." *Id.* 10. Second, the court rejected ConAgra's assertion that the spray category was more specific and should trump the more general butter category. *Id.* Not only was there no evidence that the spray category was more specific, but that rule would only apply in the face of conflicting regulations. *Id.*

As was true in the prior motion to dismiss, the crux of the preemption dispute is over the appropriate reference amount for Parkay Spray—whether the product fits into the "spray type" fat and oil category, with a serving size of 0.25 grams, or whether it fits into the "butter, margarine, oil, shortening" category, with a serving size of one tablespoon. MTD Order 7–8. If the former is true, Parkay Spray is appropriately labeled as zero fat and zero calorie under federal law, and plaintiffs' claims are preempted because they seek to impose different requirements under state law. If the latter is true, then plaintiffs' claims can proceed.

Under the FDA's labeling requirements, food product labels must provide "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food." 21 C.F.R. § 101.12. The regulations provide a table with mandatory reference amounts. *Id.* § 101.12(b). "The reference amount is based on the major intended use of the food (e.g. milk as a beverage and not as an addition to cereal)." *Id.* § 101.12(a)(7). "The reference amount for an imitation or substitute food or altered food, such as a 'low calorie' version, shall be the same as for the food for which it is offered as a substitute." *Id.* § 101.12(d).

I agree with Judge Tigar's conclusion that the plaintiffs have adequately alleged that Parkay Spray is imitation butter and belongs in the same reference amount category as butter. *See id.* 10. They assert that "ConAgra markets its Parkay products as a 'guilt-free' alternative to butter and an 'excellent dietary choice.'" SAC ¶ 26. A campaign going back to 1973 read, "The label says 'Parkay,' the flavor says butter." *Id.* The Parkay Spray label includes an image of an ear of corn. *Id.* ¶ 41. ConAgra counters that "one of its dual, on-label uses is as a cooking spray" and "[t]hat it can also be used as a topping does not change that fact." MTD 16. ConAgra can rely on these arguments as this case proceeds, but they have not successfully shown that plaintiffs' claims

15

are preempted.

In an attempt to persuade me not to follow the prior ruling on the preemption question, ConAgra argues that the FDA's 2018 guidance differs from the 1994 guidance in material ways that would have led Judge Tigar to a different decision. MTD at 16; *see* Reference Amount Guidance. ConAgra asserts that the guidelines show that the "spray types" category is broader than previously thought. The "Spray Types" examples previously read and now read: "~~Nonstick~~ **All types of** cooking sprays (e.g., ~~Pam~~ **cooking spray olive oil**)." The "Butter, margarine, oil, shortening" examples previously read and now read: "All types of butter and margarine **spreads** (regular, diet, **lite/light,** liquid, and whipped); ~~spreads;~~ oils; and shortenings." ConAgra argues that the guidance "clarifies that the examples of products listed in the table are not meant to be exhaustive" which "likely would have had a significant impact on Judge Tigar's previous decision." MTD 15.

This argument is unpersuasive. Judge Tigar found—and I agree—that the regulations are unambiguous. *See* MTD Order 12. As a result, I have no need to rely on the agency's interpretation, and it does not control as it might in the face of an ambiguous regulation. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (finding the Secretary of Labor's interpretation of the agency's ambiguous regulations "controlling unless 'plainly erroneous or inconsistent with the regulation'") (internal quotation marks omitted). Even if the guidelines were to play more of a role in my reading of the regulations, the changes are not as dramatic as ConAgra suggests. The butter, margarine, oil, shortening category still includes "liquid" as a possible form of the butter and margarine spread, and plaintiffs plausibly argue Parkay Spray belongs there.[7]

Finally, ConAgra argues that I should adopt the reasoning in *Pardini*, where another court in this district found that I Can't Believe It's Not Butter! Spray is properly labeled as a cooking and topping spray. MTD 16; *see Pardini v. Unilever United States, Inc.*, No. 13-1675 SC, 2014 WL 265663, at *6 (N.D. Cal. Jan. 22, 2014). In that case, the Honorable Samuel Conti found that the plaintiffs' claims were preempted because it belonged in the spray-type fat and oil category.

---

[7] Contrary to ConAgra's argument, it is not "limited to 'butter and margarine spreads'" to the exclusion of Parkay Spray because the parentheses include "liquid." *See* MTD 16.

*Pardini*, 2014 WL 265663, at *5. The plaintiffs argued that consumers used the product as a butter topping, but the court concluded, "[T]he fact that some consumers might choose to use more of a product means that the product is mislabeled." *Id.* Instead, the plaintiffs were "substituting their own desires for the FDA's considered regulations." *Id.* at *6.

The *Pardini* decision does not persuade me that Parkay Spray necessarily belongs in the spray category. The plaintiffs here do not simply argue that some consumers choose to use Parkay Spray as a topping but rather that ConAgra *markets* it to be used in that way by communicating to consumers that it is a butter substitute. Plaintiffs plausibly argue that as an imitation product, Parkay Spray should be labeled in accordance with the requirements for the food it imitates. Plaintiffs' claims are not expressly preempted.

## B. Implied Preemption—Whether the Claims Impermissibly Arise Under the FDCA

The plaintiffs' claims arise California's Sherman Food, Drug and Cosmetic Law, which incorporates the FDCA and NLEA by reference. CAL. HEALTH & SAF. CODE § 109875. ConAgra argues that although they ostensibly sue under state law, the plaintiffs' claims in fact impermissibly arise under the FDCA, which does not have a private right of action. MTD 20–23.

Many courts have concluded that Congress did not intend to occupy the field of food and beverage labeling; rather, "the FDCA as amended by the NLEA contemplates state regulation and enforcement along with federal regulation." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009); *see Jackson v. Balanced Health Prod., Inc.*, No. C 08-05584 CW, 2009 WL 1625944, at *4 (N.D. Cal. June 10, 2009) (finding no preemption of claims "based on false and misleading advertising and mislabeling under the Sherman Law); *see also Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 958 (N.D. Cal. 2017) (Orrick, J.) (holding that the only claims that were preempted were those that had been expressly permitted by the FDA). "[T]here is a distinction between (1) state law claims that merely recite FDCA violations, and (2) state law claims alleging that non-compliance with the FDCA regulations deceived and harmed consumers, i.e., claims that would exist in the absence of the FDCA." *Pardini*, 961 F. Supp. 3d at 1059.

Judge Tigar rejected this same argument by ConAgra in 2013 and found that while plaintiffs successfully alleged that that the Parkay Spray labeling violates the FDA regulations (in

order to avoid preemption), they had no need to rely on those allegations to bring the state law causes of action. MTD Order 14. His conclusion holds true here with the exception of the plaintiffs' asterisk claim. That claim is based on the absence of an asterisk disclosing the presence of fat on the Parkay Spray bottle, as required by 21 C.F.R. §101.62. *See* FAC ¶¶ 40, 42. ConAgra argues that this claim arises under the FDCA because state law does not obligate it to include an asterisked warning. MTD 21–22. Plaintiffs failed to defend this claim in their briefing or when asked at oral argument; it is therefore DISMISSED WITH PREJUDICE. ConAgra's motion with regard to the remaining claims is DENIED.

**C. Whether the Claims Should be Dismissed under the Primary Jurisdiction Doctrine**

ConAgra again argues that the plaintiffs' claims should be dismissed because they "come squarely within the FDA's primary jurisdiction." MTD 23. The primary jurisdiction doctrine is prudential and allows a court to stay proceedings or dismiss a complaint without prejudice so that the relevant agency can resolve an issue within its "special competence." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008); *see* MTD Order 14. The doctrine applies in a "limited set of circumstances." *Clark*, 523 F.3d at 1114. "[I]t is not meant to immunize litigations from liability based on state law claims whenever interpretation of federal regulations is required." MTD Order 16.

Confronted with the same arguments, Judge Tigar determined that staying or dismissing this case "would do little to enhance the uniform administration of the NLEA, or to enhance the court's decision-making or efficient, and it would needlessly frustrate 'the historic primacy of state regulations of matters of health and safety.'" *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Judge Tigar instead concluded that this case can be resolved through "straightforward interpretation" of FDA regulations. *Id.* (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

I agree with Judge Tigar that interpreting and applying the FDA's regulations to Parkay Spray is the appropriate way to resolve this case. ConAgra offers no additional arguments or recent developments that would mediate in favor of disturbing the prior ruling. Accordingly, the motion to dismiss on the basis of the primary jurisdiction doctrine is DENIED.

### III. WHETHER PLAINTIFFS STATE A CLAIM

#### A. Rule 9(b)

ConAgra renews its arguments that the plaintiffs failed to plead fraud with particularity required to satisfy Rule 9(b). Judge Tigar rejected these same arguments. MTD Order 16–18. As plaintiffs point out, if anything their allegations have become more detailed in the second amended complaint. Oppo. 24. ConAgra presents no new case or fact that casts doubt on the prior ruling in this case, and I see no reason to deviate from it.

#### B. Unjust Enrichment/Quasi-Contract and Breach of Warranty

ConAgra moves to dismiss plaintiffs' reasserted unjust enrichment claims, which Judge Tigar dismissed with prejudice. MTD Order 20. Plaintiffs argue that the Ninth Circuit's decision in *Astiana* requires a different result. Oppo. 26–28. In that case, the Ninth Circuit reversed a district court's dismissal of a quasi-contract claim. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). While acknowledging that there is no standalone cause of action for unjust enrichment in California, the court concluded that a plaintiff can seek return of a benefit unjustly conferred on the defendant through a quasi-contract claim. *Id.* The pleadings were sufficient because the plaintiffs alleged that the defendant "had enticed plaintiffs to purchase their products through false and misleading labeling, and that [the defendant] was unjustly enriched as a result." *Id.* (internal quotation marks and formatting omitted).

The second amended complaint presents a nearly identical theory. Plaintiffs assert that they unjustly conferred a benefit on ConAgra by purchasing Parkay Spray based on the false representations that it was free of calories and fat, and they seek restitution of that benefit. SAC ¶¶ 73–79. Under *Astiana*, plaintiffs state a claim; ConAgra's motion on these grounds is DENIED.

#### C. Pre-Suit Notice under Georgia and Indiana Law

ConAgra argues that plaintiffs Marr, Frechette, and Harder failed to provide pre-suit notice under Georgia and Indiana law. MTD 27. Plaintiffs argue that ConAgra received notice when Allen sent a pre-suit demand letter as required by the California Legal Remedies Act. Oppo. 28–29. They further assert that neither Indiana nor Georgia law required the type of notice ConAgra

asserts.

Plaintiffs are correct that Indiana law does not require pre-suit notice for incurable deceptive acts, in other words, when the defendant acted with intent to mislead. *Reger v. Ariz. RV Ctrs., LLC*, No. 3:16-CV-778, 2017 U.S. Dist. LEXIS 132906, at \*11 (N.D. Ind. Aug. 21, 2017). Plaintiffs have pleaded fraud with particularity, and so pre-suit notice was not required under Indiana law. *See id.* And as plaintiffs point out, at least one court in Georgia has concluded that individual plaintiffs "may rely on the pre-suit demand sent by [another plaintiff] . . . 'on behalf of all others similarly situated'" to satisfy pre-suit notice requirements. *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018). ConAgra's motion to dismiss on these grounds is DENIED.

**D. Whether Plaintiffs Properly Plead their Common Law Claims**

ConAgra moves to dismiss counts one through four for failure to allege which state's law applies. MTD 27–28. Plaintiffs state that they do not intend to seek certification of a nationwide class or multistate subclass for counts two through four; Allen alone brings those claims under California common law. Oppo. 29–30. Accordingly, plaintiffs "d[o] not oppose the motion to dismiss any inadvertently pled non-California common law claims by the New Plaintiffs." *Id.* 30. To the extent counts two through four plead non-California common law claims brought by plaintiffs other than Allen, they are DISMISSED WITH PREJUDICE. With respect to count one for unjust enrichment, the second amended complaint asserts that "there are few real differences" between the elements of the claims in different states. SAC ¶ 75. As I conclude below, in this case this question must wait until the class certification stage to be resolved.

**E. Whether Plaintiffs Have Standing to Represent a Nationwide Class**

ConAgra argues that the eight named plaintiffs in this case, who purchased Parkay Spray in ten different states, lack standing to pursue claims on behalf of purchasers from the remaining 40 states. MTD 28–29. Plaintiffs argue that this question is more appropriate for resolution at the class certification stage. To the extent courts address standing at the pleading stage, they do so to avoid the cost of nationwide discovery. Oppo. 30. Because the parties here have already engaged in nationwide discovery, there is no benefit to be had in addressing this question now. *Id.*

20

In a prior case, I noted that no hard and fast rule dictates whether to decide questions of standing before or after class certification. *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017). There, noting that several other judges in the Ninth Circuit had done the same, I decided to address the question at the pleading stage and "require[d] that plaintiffs present named class representatives who possess individual standing to assert each state law's claims against [the defendant]." *Id.* I am unable to adopt the same approach here because the parties did not devote sufficient briefing to this issue to allow me to resolve it at this stage. ConAgra's motion to dismiss on these grounds is DENIED.

**F. Whether Plaintiffs Have Standing to Seek Injunctive Relief**

Finally, ConAgra argues that the plaintiffs still lack standing to seek injunctive relief because the newly decided *Davidson* does not apply to their claims. MTD 29–30. In *Davidson*, the Ninth Circuit held that "a previously deceived plaintiff may have standing to seek injunctive relief." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). In that case, the plaintiff had purchased toilet wipes that were advertised as flushable only to learn that they were not, and in fact caused damage to plumbing and sewer systems. *Id.* at 962. The Ninth Circuit addressed the unresolved question of whether a consumer bringing false advertising claims has standing to seek injunctive relief based on the alleged injury that she cannot rely on the advertising in the future. *Id.* at 967. The plaintiff alleged that she still wished to purchase flushable wipes and would purchase them from the defendant if they were available. *Id.* at 970. Finally, she regularly visited stores that sold the defendant's products. *Id.* If the defendant were to continue to sell its product with the misleading packaging, she would have "no way of determining whether the representation 'flushable' [was] in fact true." *Id.* at 971 (internal quotation marks omitted). The court found that these allegations were sufficient to show "an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Accordingly, the plaintiffs had standing to seek injunctive relief. *Id.* at 972.

In the wake of *Davidson*, another court found that a plaintiff lacked standing to pursue injunctive relief because she admitted to having knowledge that would "enable her to make an

appropriate choice with respect to the defendant's products." *Fernandez v. Atkins Nutritionals, Inc.*, No. 317CV01628GPCWVG, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018). The plaintiff asserted that the defendant labeled its Atkins Diet snack products in a misleading way because the "net carb" amounts in fact omitted certain types of carbohydrates. *Id.* at *1. The plaintiff admitted that because she knew the manner in which the defendant calculated its net carbs, the labels would not mislead her in the future. *Id.* at *15. In addition, she did not allege that she still wished to purchase the defendant's products. *Id.*

Plaintiffs assert that they wish to purchase low-calorie, low-fat buttery toppings, they would purchase such a product from ConAgra, and they regularly visit stores where ConAgra products are sold. SAC ¶ 60. Moving forward, they assert that they have no way to "determine if the [zero fat, zero calorie] representation is true" and are therefore "at risk of being misled again." *Id.* Plaintiffs' allegations closely mirror those in *Davidson*, and they stand apart from the plaintiffs in *Fernandez*, who no longer wished to purchase the defendant's products. Plaintiffs' allegations are sufficient at the pleading stage to establish a threat of repeated injury that is concrete, particularized, and redressable.

## CONCLUSION

For the foregoing reasons, plaintiffs' asterisk claim and all common law claims asserted under the laws of states other than California are DISMISSED WITH PREJUDICE. The remainder of ConAgra's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: December 10, 2018

William H. Orrick
United States District Judge

22