# Exhibit 58

Case 3:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 2 of 15
Case 5:17-cv-00564-NC   Document 192-8   Filed 06/06/18   Page 3 of 14

*CONFIDENTIAL - ATTORNEYS' EYES ONLY*                                    1

```
 1            UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2
    JACKIE FITZHENRY-RUSSELL, §
 3  ROBIN DALE, and GEGHAM     §
    MARGARYAN, as individuals,§
 4  on behalf of themselves,   §
    the general public and     §
 5  those similarly situated,  §
                               § Case Nos. 5:17-cv-00564-NC
 6                             § (lead); 5:17-02341-NC
                               § (consolidated);
 7                             § 5:17-cv-04435-NC
                               § (consolidated)
 8       Plaintiffs,           §
                               §
 9  vs.                        §
                               §
10  DR. PEPPER SNAPPLE GROUP,  §
    INC., DR. PEPPER/SEVEN UP, §
11  INC. and DOES 1-50,        §
                               §
12       Defendants.           §

13

14

15

16  ************************************************************

17                     ORAL DEPOSITION OF

18                       KEITH R. UGONE

19                       MAY 24, 2018

20         CONFIDENTIAL - ATTORNEYS' EYES ONLY

21  ************************************************************

22

23

24

25
```

Case 3:13-cv-01276-WHO   Document 259-10   Filed 05/22/19   Page 3 of 15
Case 5:17-cv-00564-NC   Document 192-8   Filed 06/06/18   Page 3 of 14

*CONFIDENTIAL - ATTORNEYS' EYES ONLY*                      2

1    ORAL DEPOSITION OF KEITH R. UGONE, produced as a
2    witness at the instance of the Plaintiffs and duly
3    sworn, was taken in the above-styled and numbered cause
4    on the 24th day of May, 2018, from 9:07 a.m. to
5    5:06 p.m., before Jamie Prince Hess, Certified Shorthand
6    Reporter in and for the State of Texas, reported by
7    computerized stenotype machine at Baker Botts LLP, 2001
8    Ross Avenue, Suite 900, Dallas, Texas 75201, pursuant
9    to the Federal Rules of Civil Procedure and the
10   provisions stated on the record or attached hereto.

Case 3:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 4 of 15
Case 5:17-cv-00504-NC   Document 192-8   Filed 06/06/18   Page 3 of 14

*CONFIDENTIAL - ATTORNEYS' EYES ONLY*                                 3

                         A P P E A R A N C E S

FOR THE PLAINTIFFS:

         Mr. Adam J. Gutride
         GUTRIDE SAFIER LLP
         100 Pine Street, Suite 1250
         San Francisco, California   94114
         415.639.9090
         adam@gutridesafier.com

FOR THE DEFENDANTS:

         Ms. Monica H. Smith
         Ms. Jessica Underwood
         BAKER BOTTS LLP
         2001 Ross Avenue, Suite 900
         Dallas, Texas   75201
         214.953.6929
         monica.smith@bakerbotts.com
         jessica.underwood@bakerbotts.com

Case 3:13-cv-01270-WHO Document 259-10 Filed 05/22/19 Page 5 of 15
Case 5:17-cv-00564-NC Document 192-8 Filed 06/06/18 Page 4 of 14

Keith R. Ugone - May 24, 2018　　　　　　5
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

```
 1                P R O C E E D I N G S
 2                   KEITH R. UGONE,
 3   having been first duly sworn, testified as follows:
 4                    EXAMINATION
 5   BY MR. GUTRIDE:
 6       Q.   Good morning, Dr. Ugone.
 7       A.   Good morning.
 8       Q.   It's nice to see you again.
 9       A.   Same here.
10            MR. GUTRIDE:  Can you mark this
11   Exhibit 400, please.
12            (Exhibit No. 400 marked.)
13       Q.   Dr. Ugone, you have reviewed Dr. Mike Dennis'
14   report in this case?
15       A.   Yes.
16       Q.   And you understand he conducted a conjoint
17   analysis?
18       A.   Yes.
19       Q.   What's a conjoint analysis?
20       A.   It's a survey technique where you give
21   individuals choice sets to choose from and you give them
22   a series of choice sets and it has attributes and prices
23   and ultimately from that analysis you try to tease out a
24   value the consumer may put on a certain type of
25   attribute associated with the product.  That would be a
```

Case 3:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 6 of 15
Case 5:17-cv-00564-NC   Document 192-8   Filed 06/06/18   Page 3 of 14

Keith R. Ugone - May 24, 2018                                    24
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

1  so it's a question of what you then do with the results
2  of the conjoint analysis to get you to a price premium,
3  among other things.
4        Q.   What do you mean by "willingness to pay"?
5        A.   The way I think about it is, you know, in
6  Texas we can have 30 degrees -- 30 days of 100-degree
7  weather and you're walking down the street and it's
8  really hot.  It's 100 degrees again and you want a
9  bottle of water and you're willing to pay $5 for that
10 bottle of water, but because of various competition in
11 the marketplace and alternatives, you only have to pay a
12 dollar for the bottle of water.
13            So the way I think of the willingness to pay
14 is that sort of willingness to pay versus what the
15 market would require you to pay, and those can be very
16 different.  So allow me to go a little bit further here.
17            Generally it's true -- this is going to get
18 complicated, but except for the very last customer in
19 the marketplace, willingness to pay generally is always
20 above the market price or what you have to pay.  If you
21 think about it, if willingness to pay isn't greater than
22 the market price, then you'd never buy the product, or
23 if willingness to pay was lower than the marketplace,
24 you wouldn't buy the product.  So as long as -- without
25 getting too fancy about it, as long as the utility you

Case 3:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 7 of 15
Case 5:17-cv-00564-NC   Document 192-8   Filed 06/06/18   Page 8 of 14

Keith R. Ugone - May 24, 2018                          25
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

1  derive out of obtaining and consuming the good is
2  greater than the price you have to pay, then you --
3  subject to a budget constraint and other complicated
4  calculations, but you buy the product.
5       Q.   Okay.  So if we're looking historically at
6  purchases that have been made, an economist would opine
7  that all the purchasers except perhaps the very last one
8  had a willingness to pay that was higher than the market
9  price, correct?
10      A.   I think economists would generally say that,
11 yes.  In the aggregate, that's called consumer surplus.
12      Q.   Okay.  And when you used willingness to pay in
13 your declaration and earlier today in your testimony,
14 you were using the definition that you just gave; is
15 that correct?
16      A.   Yes.
17      Q.   Earlier you said that conjoint analysis
18 measures willingness to pay.
19      A.   Yes.
20      Q.   So did you mean that a conjoint analysis is
21 measuring what you just described, the person who's
22 walking down the street and is sweating and needs a
23 bottle of water, how much they're willing to pay?
24      A.   Yeah.  We can talk about different attributes
25 and so forth; but, yes, I think I would say generally

Case 3:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 8 of 15
Case 5:17-cv-00504-NC   Document 192-8   Filed 06/06/18   Page 9 of 14

Keith R. Ugone - May 24, 2018                                    29
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

1       A.      Phraseology, correct.
2       Q.      When you say "price premium," what do you
3    mean?
4       A.      So price premium -- sometimes I even use
5    different words because price premium may have a
6    connotation associated with it, but I think whether you
7    call it a price premium or a price difference -- in
8    other words, if a measure of damages is -- let's just
9    think of price paid versus value received, and if you
10   define value received, what the price of the product
11   would be without a particular attribute.  So in a very
12   stringent sort of test you have a product with an
13   attribute, the product without the attribute, and in a
14   market-based analysis you'd be looking at what is the
15   difference in prices of those two products, which is
16   very different from what is the difference in consumers'
17   willingness to pay for those two products, because as we
18   went through our example, for the purchases that are
19   made, willingness to pay, except for that marginal
20   consumer, will always be above what the price is or you
21   wouldn't buy the product, but the difference is what's
22   the price of the product with the attribute, what's
23   price of the product without the attribute, and a price
24   premium, which can also just be called a price
25   difference, without putting any connotation on it, the

Case 3:13-cv-01270-WHO Document 259-10 Filed 05/22/19 Page 9 of 15
Case 5:17-cv-00564-NC Document 192-8 Filed 06/06/18 Page 30 of 14

Keith R. Ugone - May 24, 2018                                    30
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

1   price difference is that difference between those two
2   prices with and without the attribute.
3        Q.   I'm going to show you Exhibits 214 and 215.
4   Have you seen these before?
5        A.   I believe I have, yes.
6        Q.   These are screen prints from the market
7   simulator that Dr. Dennis ran on the data that he had
8   obtained from the conjoint survey, correct?
9        A.   Correct.
10       Q.   And did you also run a market simulation on
11  the data that Dr. Dennis had attained?
12       A.   I think we had his simulator, but it's not
13  anything I'm giving any opinions on, so I'm not
14  really -- I think we might have tried to duplicate his
15  results and things like that, but it's not -- like I
16  said, I'm looking at everything from the damages and
17  economic perspective, not the survey-type approach.  So,
18  yes, I think we ran just a duplicate of his results, but
19  it's nothing that I'm giving an opinion on.
20       Q.   Just so I understand, you personally don't
21  remember sitting down at the computer and looking at the
22  simulator to see, you know, if you change something what
23  happens or anything like that?
24       A.   I mean, I can't speak to -- I did not
25  personally, no.

Case 2:13-cv-01279-WHO Document 259-10 Filed 05/22/19 Page 10 of 15
Case 5:17-cv-00564-NC Document 192-8 Filed 06/06/18 Page 9 of 14

Keith R. Ugone - May 24, 2018                                   61
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

1  he obtained when looking at all of those different
2  options.  You're going to accept that for now, correct?
3       A.   I will accept that as an assumption you're
4  asking me to make.
5       Q.   Right.  And, in fact, that lowest percentage
6  difference occurred at this price bullet point that we
7  have in front of us on Exhibit 214, which is $3.  Will
8  you accept that as well for now?
9            MS. SMITH:  Objection.  Form.
10      Q.   Will you accept that I am -- I just want you
11 to accept that as a predicate for the question I'm about
12 to ask you.
13      A.   Yeah.  Whether there's a predicate or a
14 hypothetical or whatever, asking me to make that
15 assumption.
16      Q.   Okay.  Thank you.
17           Now, assuming that at this price point, at $3,
18 you end up with a 14-cent price difference which is what
19 leads to the 4.67 percent that Dr. Dennis computed, are
20 you testifying that the 14 cents is the willingness to
21 pay at this price point, at $3, for the made from real
22 ginger attribute?
23      A.   That would be my interpretation of what
24 Dr. Dennis has presented, yes.  Actually, give me one
25 second.  I want to look here at one thing.

Case 2:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 11 of 15
Case 5:17-cv-00564-NC   Document 192-8   Filed 06/06/18   Page 10 of 14

Keith R. Ugone - May 24, 2018                                    62
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

1       Okay.  I was just looking at the full
2  information that was on the sheet; but, yes, we can go
3  forward.
4       Q.   When you say that, yes, that is your
5  understanding, are you saying it's your understanding
6  that it's the willingness to pay of whom, of the average
7  person, the marginal person, or some other thing?
8       A.   Yeah, I think the literature would say it's
9  the marginal person.
10      Q.   And what's the marginal person mean?
11      A.   The very last consumer.
12      Q.   Meaning the one that we were talking about
13 earlier who is at the -- the one whose willingness to
14 pay is closest to the market price?
15      A.   Yeah, although this marginal customer, I
16 think, allows the share of preferences to be equal,
17 because there is no supply curve here, but I think it's
18 generally viewed as -- and I'm not going to debate
19 this -- viewed as more of the marginal customer.
20      Q.   Okay.  Thank you.
21           Given that the 14 cents in the context of the
22 $3 price point is the willingness to pay of the marginal
23 consumer, why is it your testimony that 4.67 percent is
24 a measurement of willingness to pay?
25      A.   Because the 14 cents is the willingness to

Keith R. Ugone - May 24, 2018      240
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

```
 1      Q.    What was the result?
 2      A.    The court agreed with me.
 3      Q.    So I imagine they were pleased with your
 4   service?
 5      A.    They may have been.  Actually, I never asked
 6   the direct question.
 7      Q.    Have you ever worked with Dr. Befurt before?
 8      A.    No.
 9            MR. GUTRIDE:  Let's take a break.
10            (Recess taken from 4:59 to 5:06 p.m.)
11            MR. GUTRIDE:  I have no further
12   questions.
13            MS. SMITH:  I have no questions.
14            (Deposition concluded at 5:06 p.m.;
15            signature waived.)
16
17
18
19
20
21
22
23
24
25
```

CONTINENTAL COURT REPORTERS, INC.
(713) 522-5080

Case 3:13-cv-01279-WHO Document 259-10 Filed 05/22/19 Page 13 of 15
Case 5:17-cv-00564-NC Document 192-8 Filed 06/06/18 Page 12 of 14

*CONFIDENTIAL - ATTORNEYS' EYES ONLY* 241

```
 1               UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2
    JACKIE FITZHENRY-RUSSELL,  §
 3  ROBIN DALE, and GEGHAM      §
    MARGARYAN, as individuals,  §
 4  on behalf of themselves,    §
    the general public and      §
 5  those similarly situated,   §
                                §  Case Nos. 5:17-cv-00564-NC
 6                              §  (lead); 5:17-02341-NC
                                §  (consolidated);
 7                              §  5:17-cv-04435-NC
                                §  (consolidated)
 8      Plaintiffs,             §
                                §
 9  vs.                         §
                                §
10  DR. PEPPER SNAPPLE GROUP,   §
    INC., DR. PEPPER/SEVEN UP,  §
11  INC. and DOES 1-50,         §
                                §
12      Defendants.             §

13
                    REPORTER'S CERTIFICATION
14                    ORAL DEPOSITION OF
                         KEITH R. UGONE
15                       MAY 24, 2018
                CONFIDENTIAL - ATTORNEYS' EYES ONLY
16
```

17            I, Jamie Prince Hess, Certified Shorthand

18  Reporter in and for the State of Texas, hereby certify

19  to the following:

20            That the witness, KEITH R. UGONE, was

21  duly sworn by the officer and that the transcript of the

22  oral deposition is a true record of the testimony given

23  by the witness;

24            I further certify that pursuant to FRCP

25  Rule 30(f)(1) that the signature of the deponent:

Case 2:13-cv-01270-WHO   Document 259-10   Filed 05/22/19   Page 14 of 15
Case 5:17-cv-00564-NC   Document 192-8   Filed 06/06/18   Page 15 of 14 of 15

*CONFIDENTIAL - ATTORNEYS' EYES ONLY*                          242

```
 1            _____ was requested by the deponent or a
 2   party before the completion of the deposition and is to
 3   be returned within 30 days from date of receipt of the
 4   transcript.  If returned, the attached Changes and
 5   Signature page contains any changes and the reasons
 6   therefor;
 7            __X__ was not requested by the deponent
 8   or a party before the completion of the deposition.
 9            That the amount of time used by each
10   party at the time of the deposition is as follows:
11        Mr. Adam J. Gutride    - (06:16)
          Ms. Monica H. Smith    - (00:00)
12        Ms. Jessica Underwood  - (00:00)
13
14            I further certify that I am neither
15   counsel for, related to, nor employed by any of the
16   parties in the action in which this proceeding was
17   taken, and further that I am not financially or
18   otherwise interested in the outcome of this action.
19
20
21
22
23
24
25
```

Case 2:13-cv-01270-WHO Document 259-10 Filed 05/22/19 Page 15 of 15
Case 5:17-cv-00504-NC Document 192-8 Filed 06/06/18 Page 14 of 14

*CONFIDENTIAL - ATTORNEYS' EYES ONLY* 243

```
 1              Certified to by me on this _____ day
 2    of _____, 2018.
 3
 4
 5
 6                       _____
                         JAMIE PRINCE HESS, TEXAS CSR #6761
 7                       Expiration Date:  12/31/18
                         CONTINENTAL COURT REPORTERS, INC.
 8                       Firm Registration No. 61
                         5300 Memorial Drive, Suite 250
 9                       Houston, Texas   77007-8250
                         (713) 522-5080
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```