UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN ALLEN, et al., | Case No. 3:13-cv-01279-WHO |
| Plaintiffs, | |
| v. | **CLASS CERTIFICATION ORDER** |
| CONAGRA FOODS, INC., | Re: Dkt. Nos. 242, 244, 245, 252, 260 |
| Defendant. | |

Plaintiffs in this case bring various claims against defendant Conagra Brands, Inc., on the grounds that the Parkay Spray label misrepresents its true fat and calorie contents. They now seek to certify a nationwide class along with various subclasses of consumers who purchased Parkay Spray in states across the country. Their showing succeeds in part and fails in greater part. I will grant their request as to a significantly narrowed set of subclasses.

## BACKGROUND

The parties are familiar with the lengthy history of this case, which I summarized in part in my Order on Conagra's motion to dismiss. *See* 2018 Motion to Dismiss Order ("2018 MTD Order") [Dkt. No. 231]. I will include here only what is necessary for purposes of resolving the present motion.

Plaintiffs Erin Allen, Ofelia Frechette, Shelley Harder, Deana Marr, Tammie Shawley, Brian Smith, and Betty Vazquez bring this proposed class action against Conagra (formerly known as ConAgra Foods, Inc.) alleging unjust enrichment, violations of various states' consumer protection laws, and violations of California law.[1] They argue that Conagra incorrectly and

---

[1] Named plaintiffs represent the following states: California (Allen), Indiana (Frechette and Harder), Georgia (Marr), Ohio (Shawley), Michigan (Smith), Illinois (Vazquez), and Wisconsin

misleadingly labels Parkay Spray as "Fat Free • Zero Calories" and "0g Fat • 0 Calories . . . per serving"[2] and charges a premium price based on those misrepresentations. Plaintiffs seek certification of various classes to pursue both damages and injunctive relief.

On January 8, 2015, the Honorable Vince Chhabria denied without prejudice plaintiff Allen's motion for class certification on four grounds. Order Denying Class Certification ("2015 Cert. Order") [Dkt. No. 150]. First, Allen had failed to present a plan for identifying class members in order to satisfy the ascertainability requirement recognized by some courts at that time.[3] *Id.* at 1–2. Second, she was not an adequate class representative because there was no evidence that she had purchased Parkay Spray with both labels. *Id.* at 2. Third, damages expert Colin Weir did not explain with enough detail how he would apply the damages methodology to the facts of the case. *Id.* Finally, Allen had not shown that common questions would predominate over the variations in consumer protection laws recognized by the Ninth Circuit in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590–91 (9th Cir. 2012). *Id.*

After that, the case was stayed and then reassigned to me, new individuals joined Allen as named plaintiffs, and Conagra filed a renewed motion to dismiss, which I granted in part and denied in part. *See generally* 2018 MTD Order. Plaintiffs again seek certification, arguing they can overcome the deficiencies Judge Chhabria previously found. Second Amended Motion for Class Certification ("Mot.") [Dkt. No. 245-3]. In their reply brief, plaintiffs responded to Conagra's arguments about differences among state consumer protection laws in the proposed subclasses by eliminating the first proposed subclass and altering some others.[4] Reply [Dkt. No.

---

(Vazquez). The parties stipulated to dismiss plaintiff Tyoka Brumfield. Dkt. No. 266.

[2] Conagra changed the label part way through the class period. Prior to October 2009, the label read, "Fat Free • Zero Calories." In October 2009, Conagra changed the label to read, "0g Fat • 0 Calories . . . per serving."

[3] The Ninth Circuit later rejected such a requirement in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125–26, 1128 (9th Cir.), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017).

[4] At the hearing, Conagra objected to these changes and requested the opportunity to provide supplemental briefing, which I denied. *See* Minute Entry [Dkt. No. 265]. The chart filed in

260-4] 14 n.14; *see* Modified Subclasses, Reply App'x 3 ("Modified Subclasses") [Dkt. No. 256-1]. With these modifications, they seek certification of the following classes:

**Nationwide**: All natural persons who purchased Parkay Spray in the United States, at any time from January 1, 2008 to the present and subject to the applicable statutes of limitations (the "Class Period"). The Class will pursue common law unjust enrichment claims.[5]

**Subclass #2**: All class members who purchased the product in the following states: Alabama, Alaska, Michigan, Minnesota, Mississippi, and Ohio, subject to the applicable statutes of limitations. Subclass #2 will pursue claims arising under the following consumer protection statutes: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Mich. Comp. Laws Ann. § 445.903(c), (e), (g); Minn. Stat. § 325D.44(5), (7), (10); Miss. Code § 75-24-5(2)(e), (g), (i); and Ohio Rev. Code § 4165.02(A)(7), (9), (11).

**Subclass #3**: All class members who purchased the product in the following states: District of Columbia, Florida, Missouri, Montana, New Jersey, New York, Rhode Island, Vermont, and Washington, subject to the applicable statutes of limitations. Subclass #3 will pursue claims arising under the following consumer protection statutes: D.C. Code § 28-3904; Fla. Stat. Ann. § 501.204; La. Rev. Stat. Ann. § 51:1405(A); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; N.H. Rev. Stat. § 358-A; N.J. Stat. Ann. § 56:8-2; N.Y. Gen. Bus. Law § 349(a); R.I. Gen. Laws § 6-13.1-1(6)(xiii), 6-13.1-2; Vt. Stat. Ann. tit. 9, § 2453(a); and Wash. Rev. Code § 19.86.020.

**Subclass #4**: All class members who purchased the product in the following states: California, Georgia, Maryland, Massachusetts, North Carolina, Virginia, and West Virginia, subject to the applicable statutes of limitations. Subclass #4 will pursue claims arising under the following consumer protection statutes: Cal. Bus. & Prof. Code § 17200[6]; Ga. Code. Ann. § 10-1-

_____

opposition sufficiently lays out Conagra's position. *See* George Decl. Ex. 14 ("Conagra App'x") [Dkt. No. 253-15].

[5] Despite what they initially suggested at the hearing, plaintiffs did not request in their motion that I certify unjust enrichment subclasses as an alternative to the proposed nationwide class.

[6] Plaintiffs included California's Unfair Competition Law in both subclass #4 and the California

3

393(a), (b); Md. Code Com. Law § 13-301(1); Mass. Gen. L. ch. 93A, § 2(a); N.C. Gen. Stat. § 75-1.1(a)*; Va. Code § 59.1-200(A)(14); and W. Va. Code §§ 46A-6-102(7), 46A-6-104.

**Subclass #5**:  All class members who purchased the product in the following states: California, Georgia, Maryland, Virginia, and West Virginia, subject to the applicable statutes of limitations.  Subclass #5 will pursue claims arising under the under the following consumer protection statutes:  Cal. Civil Code § 1770(a)(5), (7), (9); Ga. Code. Ann. § 10-1-393(b)(5), (7), (9); Md. Code Com. Law § 13-301(1); Va. Code § 59.1-200(A)(5), (6), (8); and W. Va. Code § 46A-6-102(7)(E), (G), (I).

**Subclass #6**:  All class members who purchased the product in the following states: Arkansas, Indiana, and Wyoming, subject to the applicable statutes of limitations.  Subclass #6 will pursue claims arising under the following consumer protection statutes:  Ark. Code § 4-88-107(a); § 4-88-108(a)(1), (3), (10); Ind. Code § 24-5-0.5-3(a); Ind. Code § 24-5-0.5-3(b)(1), (2), (11); Wyo. Stat. Ann. § 40-12-105(a)(xv); and Wyo. Stat. Ann. § 40-12-105(a)(i), (iii), (x).

**California Subclass**:  All class members who purchased the product in California at any time from March 21, 2009 to the present.  The California Subclass will pursue claims arising under the False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*), and as well as common law claims of fraud, breach of express warranty, and misrepresentation.

In the event that I deny any multistate subclass, plaintiffs proposed additional subclasses for those states in which a named plaintiff has purchased the product (i.e., Florida, Georgia, Illinois, Indiana, Michigan, Ohio, and Wisconsin).[7]  Each State Subclass shall include all class members who purchased the product in that respective state, subject to the applicable statutes of limitations.

---

subclass.  I will first address the UCL claims in subclass #4 and consider them in the California subclass only if that class does not move forward.

[7] After eliminating the first subclass (which contained Wisconsin and Illinois) in their reply, plaintiffs reiterated that they sought certification of classes in those individual states.  Reply 14 n.14.

**LEGAL STANDARD**

"Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The party seeking certification has the burden to show, by a preponderance of the evidence, that certain prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–50 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a). Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

Next the party seeking certification must establish that one of the three grounds for certification applies. *See* FED. R. CIV. P. 23(b). Plaintiffs seek certification under Rule (b)(3), which requires them to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). They also seek certification under Rule 23(b)(2) for injunctive relief.

In the process of class-certification analysis, there "may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66(2013) (internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

**DISCUSSION**

As set forth below, Conagra raises numerous challenges to plaintiffs' showing. Plaintiffs have not met their Rule 23 burden with respect to the nationwide unjust enrichment class, but they

have met their burden for certification of certain subclasses and individual state classes for purposes of pursuing consumer protection claims.

## I.    STANDING

"The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). There are three requirements for standing: (1) "the plaintiff must have suffered an injury in fact;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks, citations, and modifications omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Conagra argues that the class is defined so broadly that there are putative members who lack Article III standing. Oppo. 21–22. Because "the majority of consumers never used more than the listed 1-5 spray serving size," they got the benefit of the bargain—"a cooking spray or topping with zero calories and fat ***per serving***"—and suffered no injury. *Id.* at 22 (emphasis in original). Conagra's challenge mischaracterizes the injury plaintiffs assert. A "quintessential injury-in-fact" exists when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997)). Plaintiffs make precisely these allegations. The injury they assert is not based on the amount of Parkay Spray they consumed in any particular sitting; instead, it is based having paid a premium price for a product labeled with features it did not have. *See* Reply 4. These allegations are sufficient to show an economic injury for purposes of standing.

## II.    RULE 23(A)

Conagra challenges plaintiffs' Rule 23(a) showing on the grounds that they cannot meet the numerosity and typicality requirements and that the plaintiffs are not adequate representatives

of the various classes.[8]

## A. Numerosity

Rule 23(a)(1) requires that the "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Courts generally find that numerosity is satisfied if the class includes forty or more members. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

Plaintiffs assert that their class is so numerous that joinder is impracticable because Conagra sold millions of units of Parkay Spray during the class period. Mot. 9. ConAgra counters that plaintiffs have failed to present any evidence of the number of potential class members who in fact have Article III standing based on their use of a serving size of greater than five sprays. Oppo. 22. Because Conagra's argument is based on a mischaracterization of the injury plaintiffs assert, it fails for the same reasons articulated above. *See supra* Section I – Standing.

## B. Commonality

Rule 23 requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that the class members have suffered "the same injury," meaning their claims "depend upon a common contention" that is of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted). Plaintiffs must demonstrate not merely the existence of a common question, but rather "the capacity of classwide proceedings to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks and emphasis omitted). For purposes of Rule 23(a)(2), "even a single common

---

[8] ConAgra does not dispute that the class is sufficiently numerous to satisfy Rule 23(a)(1), that there are common questions of law or fact that satisfy Rule 23(a)(2), or that the attorneys can adequately represent the class under Rule 23(a)(4).

question will do." *Id.* at 359 (internal quotation marks and modifications omitted).

Plaintiffs assert the following common questions: (1) whether the "Fat Free • Zero Calories" and "0g Fat • 0 Calories . . . per serving" representations violate federal and state labeling laws; (2) whether Conagra received a benefit that it would be inequitable for it to retain without compensating plaintiffs; and (3) whether the representations were likely to deceive consumers. Conagra does not oppose plaintiffs' contention that there are at least these questions in common.

### C.      Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). Class certification is not appropriate if unique defenses threaten to preoccupy the class representatives and thus cause absent members to suffer. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). But, "the defense of non-reliance is not a basis for denial of class certification." *Id.* at 509.

Plaintiffs assert that their claims are typical of other class members because they purchased Parkay Spray with both labels,[9] believed it did not contain any fat or calories, paid a price premium based on that belief, and now seek restitution of that price premium. Mot. 12. Conagra counters that the named plaintiffs have in fact had "a variety of unique experiences with Parkay Spray." Oppo. 22.

None of Conagra's challenges to typicality overcome plaintiffs' showing. First it asserts that the plaintiffs are subject to non-reliance defenses. Oppo. 23 (asserting that plaintiff Shawley, for example, is subject to a one-off defense because she purchased Parkay Spray after another

---

[9] Judge Chhabria previously concluded that the plaintiffs lacked evidence that Allen had purchased Parkay Spray with the revised label; plaintiffs now present a declaration from Allen stating that she purchased the product with both labels. Declaration of Erin Allen ("Allen Decl.") [Dkt. No. 197] ¶ 3 ("I purchased Parkay Spray buttery topping during the entrie [sic] class period, including the period prior to October 14, 2009, when the Parkay Spray label included the 'FAT FREE • ZERO CALORIES' language.").

United States District Court
Northern District of California

person recommended it rather than after her own review of the label); Reply 5. The Ninth Circuit

has foreclosed Conagra's non-reliance argument as a basis for denying class certification. *See*

*Ellis*, 657 F.3d at 984; *see also Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200, 2016 U.S.

Dist. LEXIS 184861, at *14-15 (C.D. Cal. Mar. 23, 2016) (noting that proposed class

representatives are not atypical just because the representations may not have been the only cause,

"or even the predominant or decisive factor," influencing their decision to buy a product) (internal

quotation marks omitted). Second, Conagra argues that the class representatives used Parkay

Spray in an atypical way by removing the spray top in order to dispense multiple tablespoons in a

single serving rather than complying with the "typical" use of one to five sprays, as determined by

its consumer survey. Oppo. 22–23; *see* Declaration of Sarah Butler ("Butler Decl.") [Dkt. No.

253-24] ¶¶ 46–48. But the typicality inquiry goes to "the nature of the claim or defense of the

class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*,

976 F.2d at 508; *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In

determining whether typicality is met, the focus should be on the defendants' conduct and

plaintiff's legal theory, not the injury caused to the plaintiff.") (internal quotation marks and

citation omitted).[10] Here, plaintiffs' legal theory centers on mislabeling and premium pricing,

which are typical of the class members' claims. Reply 7. Plaintiffs point to their individual

testimony that they viewed and relied on the Parkay Spray labeling. Reply 5; Deposition of Erin

Allen ("Allen Depo."), Patek Decl. Ex. 48 [Dkt. No. 259-1] 54:25-55:4, 95:10-19; Deposition of

Deana Marr ("Marr Depo."), Patek Decl. Ex. 51 [Dkt. No. 259-4] 42:13-25, 50:22-51:3;

Deposition of Brian Smith ("Smith Depo."), Patek Decl. Ex. 53 [Dkt. No. 259-6] 16:12-17:13,

33:13-20, 39:21-24; Deposition of Tammie Shawley ("Shawley Depo."), Patek Decl. Ex. 52 [Dkt.

No. 259-5] 58:1-12, 75:21-76:9; Deposition of Shelley Harder ("Harder Depo."), Patek Decl. Ex.

50 [Dkt. No. 259-3] 25:1-23, 29:1-13; Deposition of Ofelia Frechette ("Frechette Depo."), Patek

Decl. Ex. 49 [Dkt. No. 259-2] 45:1-25, 54:19-25, 55:24-56:15.

---

[10] The court later modified the class certification order pursuant to the parties' settlement
agreement. *See Simpson v. Fireman's Fund Ins. Co.*, No. C05-00225 CW, 2007 WL 46785 (N.D.
Cal. Jan. 5, 2007).

### D.    Adequacy

Finally, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985 (internal quotation marks omitted).

Conagra argues that the individual state subclasses are not certifiable because the named representatives for each state cannot adequately represent a class in that state.[11]  First, named plaintiffs lack standing to pursue injunctive relief because they have no desire to purchase Parkay Spray in the future.  Oppo. 20 n.16, 23.  But plaintiffs raise deposition testimony that indicates they "continue to seek reduced fat and calorie products while grocery shopping" and would buy Parkay Spray if they could trust its labeling.  Reply 6; *see* Allen Depo. 96:11-13; Harder Depo. 120:9-122:9; Smith Depo 25:17-26:13; *see also* Marr Depo. 128:24-129:21 (noting that she might buy Parkay Spray if it were correctly labeled with a low amount of fat and calories even if the amount was not zero); Shawley Depo. 125:20-126:3 (noting that if Parkay Spray were correctly labeled, she might buy it but would use it sparingly); Frechette Depo. 84:15-24 (noting that low fat, calorie, and cholesterol products are important because of a family history of heart disease).  Conagra next argues that plaintiffs Allen, Shawley, Marr, and Frechette would be inadequate class representatives because they failed to read or rely on the "per serving" language on the Parkay Spray label.  Oppo. 19–20.  This argument fails for the reasons laid out in the discussion of typicality.  Conagra does not challenge Gutride Safier's competence to represent the class, and I find that they are competent.

Having found that named plaintiffs have met their burden on Rule 23(a)'s requirements, I must also evaluate whether they meet the requirements for certification under Rule 23(b)(3) for

---

[11] Plaintiffs pursue individual state classes for California, Wisconsin, and Illinois, along with the other states with named plaintiffs in the event that I deny any multistate subclasses.  *See* Mot. 19 n.10.

damages and Rule 23(b)(2) for injunctive relief.[12]

## III.  DAMAGES PURSUANT TO RULE 23(B)(3)

To proceed under Rule 23(b)(3) for damages, plaintiffs must show that it is superior to proceed as a class action and "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citation omitted). Predominance is established if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Mazza*, 666 F.3d at 589.  Commonality and predominance are related issues, and there is often substantial overlap between the two tests, but the test for predominance is "far more demanding." *Amchein Prods.*, 521 U.S. at 623–24.

Conagra argues that plaintiffs cannot show that common issues predominate for purposes of their unjust enrichment claims, their consumer protection claims, or their damages calculations. Oppo. 7–12; 13–18.  ConAgra also challenges the manageability and superiority of this case proceeding as a class action.

### A.  Nationwide Unjust Enrichment Class

Conagra asserts that plaintiffs fail the predominance requirement on their unjust enrichment claim because they have not met their burden to show that it would be constitutional to apply California law to a nationwide class.  Oppo. 7.  Because each state's law would have to apply, individualized issues predominate over common ones. *Id.*

Under *Mazza*, "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." 666 F.3d at 589.  Under California's

---

[12] Because I will grant in part plaintiffs' motion to certify classes, I will not address their arguments under Rule 23(b)(1) and (c)(4) for common questions of liability.

choice of law rules, it is plaintiffs who "bear[ ] the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Id.* The burden then shifts to defendants "to demonstrate 'that foreign law, rather than California law, should apply to class claims." *Id.* at 590.

California law may only apply to nationwide class claims where "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* This determination entails a three-step governmental interest test: first, I must determine "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different"; second, if there is a difference, I must "examine[ ] each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists"; and third, if there is a true conflict, I must "carefully evaluate[ ] and compare[ ] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately appl[y] the law of the state whose interest would be more unpaired if its law were not applied." *Id.*

Plaintiffs cannot meet their initial burden under California's choice of law rules. California does not have constitutionally sufficient contact or aggregation of contacts to the claims of each class member. Plaintiffs do not contend that ConAgra is headquartered in California, that Conagra is incorporated under California's laws, or that the challenged statements originated in California. *See Mazza*, 666 F.3d at 590 (noting that the defendant's corporate headquarters were in California, as was the advertising agency that produced the allegedly fraudulent misrepresentations). According to the plaintiffs' expert, about 1 percent of Parkay Spray sales since March 2009 have occurred in California.[13] *See* Declaration of Colin Weir ("Weir Decl."), Table 1 [Dkt. No. 242-6]. Plaintiffs' reply brief does not address Conagra's arguments on this issue. Because plaintiffs do not make the threshold showing, the burden does not shift to Conagra

---

[13] From March 21, 2009 to October 14, 2009, $58,275.86 in dollar sales occurred in California out of $8,219,081.86 nationwide, and from October 15, 2009 to the time of the data used in the Weir declaration, $774,483.91 in dollar sales occurred in California out of $93,490,054.82 nationwide.

and there is no need to assess whether other states' interests outweigh California's.

Given that it would be unconstitutional to apply California unjust enrichment law to the claims of a nationwide class, the laws from all 50 states would have to apply. Accordingly, plaintiffs cannot meet their burden to show that common questions of fact or law predominate over individualized questions as required by Rule 23(b)(3). *See Stitt v. Citibank*, No. 12-CV-03892-YGR, 2015 WL 9177662, at *4 (N.D. Cal. Dec. 17, 2015) ("No court in this Circuit has certified a nationwide unjust enrichment class since *Mazza*."). I will deny plaintiffs' motion for certification of a nationwide unjust enrichment class. Plaintiffs have not sought certification of any other classes to pursue unjust enrichment claims.

### B. Multistate Consumer Protection Subclasses

Conagra argues plaintiffs have failed to meet their burden for certification of the proposed consumer protection subclasses because: (1) common questions into materiality and reliance do not predominate; (2) plaintiffs have not shown that damages are capable of calculation on a classwide basis; (3) there are material differences between the laws of the states in the various subclasses; and (4) it is neither manageable nor superior to proceed on a classwide basis.

#### 1. Materiality and Reliance

Conagra argues that individualized questions into materiality and reliance will predominate over common questions. Oppo. 23–30. Specifically, plaintiffs cannot show that the alleged misrepresentations would be material to a reasonable consumer, and therefore they will not be entitled to a classwide presumption of reliance under the state laws that permit such a presumption.[14]

Under California law, "[q]uestions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs."

---

[14] Specifically, Conagra argues that "(i) Plaintiffs' own data shows the challenged claims were not material; (ii) Plaintiffs were not exposed to a single, uniform misrepresentation; (iii) the challenged claims are not susceptible to a uniform interpretation; (iv) whether the claims were material in light of the additional disclosed information is a matter of individual proof; (v) Plaintiffs' testimony and the cognitive interviews by Plaintiffs' experts undercut any presumption of reliance; and (vi) Conagra's affirmative survey evidence effectively rebuts any presumption of reliance or finding of materiality." Oppo. 24.

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016); *see Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "A representation is material . . . if a reasonable consumer would attach importance to it *or* if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (internal quotation marks omitted). A class of plaintiffs can make the required materiality showing without individualized proof by establishing (with, for example, market research) that the statements would be material to a reasonable member of the purchaser class. *Kumar*, 2016 WL 3844334, at *8. A showing of materiality is sufficient to raise an inference of classwide reliance. *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015); *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (noting that the reasonable belief of an ordinary consumer was amenable to common proof and the defendant's marketing research provided evidence of materiality).

For the state laws that follow a reasonable person standard for assessing materiality, plaintiffs present sufficient evidence to show that they could be entitled to a presumption of reliance. They put forth their own survey evidence, which shows that "consumers were willing to pay a 34-40% premium based on their understanding that the food topping was 'fat free' and had '0g Fat' and 'Zero Calories." Mot. 19; Declaration of Michael Dennis ("Dennis Decl.") [Dkt. No. 187] ¶ 71. Plaintiffs also raise testimony from Conagra witness Patrick Fitzgerald, who acknowledged that health-conscious consumers are looking for products with "reduced calories, less cholesterol, zero cholesterol," and less fat.[15] Declaration of Colin B. Weir ("Weir Decl.") [Dkt. No. 242-6] ¶¶ 12–14; *see also id.* ¶ 15 (citing testimony from Catherine Bartholomew, who acknowledged some consumers' desire for products that are "better for you"). Plaintiffs' exhibits

---

[15] Although I grant most of Conagra's sealing requests, I intentionally do not redact the references in this paragraph. That Conagra was aware of health-conscious consumers' desire for products with less fat and fewer calories is not confidential business information, and it goes to the merits of this case.

show that Conagra was aware that consumers were interested in healthier products. *See* Declaration of Anthony Patek ("Patek Decl.") Ex. 28 [Dkt. No. 185-2]; Declaration of Lee M. Gordon ("Gordon Decl.") Ex. 7 [Dkt. No. 149-9] (document entitled "How to Position Table Spreads for Future Growth"). Conagra argues that plaintiffs misinterpret its documents[16] and that plaintiffs' own data undermines their claims because it shows that brand, price, and product type are more impactful variables than the disputed representations are. Oppo. 24. But materiality does not require plaintiffs to show that the representations were the "sole or even the decisive cause" of their purchase. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 668 (C.D. Cal. 2014) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)) (internal formatting omitted); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) ("[T]he legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination.").

Conagra also argues that plaintiffs are not entitled to a classwide presumption of reliance because the challenged statements were not uniform; instead, in 2009 Conagra approved a new label that added the language "per serving."[17] As Judge Chhabria previously concluded, a jury could find that the first label was misleading while the second label was not. Class Cert. Order 2. But this does not defeat plaintiffs' showing on materiality and reliance; rather, it requires that each class be divided into two time periods—one before and another after the label change—as plaintiffs suggest in their reply.[18] *See* Reply 22.

---

[16] Conagra challenges plaintiffs' reliance on one particular document, which it argues related to a product that was never put into production.

[17] I will deny Conagra's motion to seal this information because it was included in Judge Chhabria's 2015 order denying the motion for class certification and there is no meaningful difference between the phrasing ConAgra seeks to redact and the surrounding language. *See* Oppo. 25; Class Cert. Order 2.

[18] ConAgra argues that while a label change is in process, there is a period during which the product is available with both labels. In the event that the plaintiffs are successful only as to one of the challenged statements, the claims process can account for the period of overlap.

Conagra next argues that individualized inquiries will be necessary because each person will likely have a different interpretation of the challenged statements. In addition, those who viewed the label as a whole would have realized that the statements were limited to the serving size articulated on the bottle, while understanding that, given the ingredients, the bottle as a whole contained some fat and calories. *See* Oppo. 25–27. Where individuals are likely to have different understandings for a word with no fixed meaning, this lack of cohesion can prevent plaintiffs from satisfying the predominance requirement. *See Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *17 (N.D. Cal. June 13, 2014) (noting that "there is no fixed meaning for the word 'natural'"). But where the representations have a clearer meaning and the question of an ordinary consumer's reasonable belief is "amenable to common proof," the class may be certified. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (noting the defendant "expressly represent[ed]" that the product would "lubricate and improve the flexibility of joints"). Conagra's arguments are not persuasive. By contrast with the word "natural," zero means zero just as per serving means per serving; the interpretation of the challenged statements is susceptible to common proof. At this stage, the plaintiffs have presented sufficient to allow a fact finder to conclude that a reasonable consumer would have considered the challenged statements material.

Finally, Conagra argues that named plaintiffs' own testimony would make a classwide presumption of reliance impossible because they did not in fact rely on the challenged statements. Oppo. 28–29. It alleges some did not read the "per serving" language, and plaintiff Shawley purchased Parkay Spray after another person recommended it, not because of the label. *Id.* Conagra can raise these and other arguments later in the litigation, but plaintiffs have made a sufficient showing at the class certification stage. Plaintiffs have put forth evidence to allow a fact finder to conclude they are entitled to a classwide presumption of reliance in the states that permit one.

Key to my conclusions in this Order is the absence of any arguments by plaintiffs that common issues would predominate even if a state's law requires proof of individual reliance. Instead, they argue that the states in their proposed subclasses "either do not require reliance or

16

use an objective test for establishing it on a classwide basis." Mot. 20. In response to Conagra's challenges that such individual showings would be required, plaintiffs responded only by quoting, "'the Ninth Circuit does not treat the need for individual inquiries into reliance and damages as necessarily precluding certification as long as common issues focusing on the defendant's conduct predominate.'" Reply Chart 2, 5, 7, 8 (citing *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 292 (N.D. Cal. 2017). That quote—completely without applying the principle to the facts of this case or the requirements of each state's laws—is not sufficient to meet plaintiffs' burden to show that common issues would predominate even in the face of individual determinations regarding reliance.[19] Accordingly, for plaintiffs' subclasses, where they do not successfully show either that (1) reliance is not required under a state's law or (2) the state's law allows them to prove reliance on a classwide basis, plaintiffs have not met their Rule 23 burden. My determination is limited to the arguments made in the plaintiffs' papers and should not be taken as a conclusion that the need for individual proof of reliance would defeat predominance in every case.

### 2. Differences in States' Laws

Conagra argues that there are material differences between the state laws invoked by the plaintiffs in their various subclasses, and these differences predominate. *See* Oppo. 17–18; *see generally* Conagra App'x. In response to some of Conagra's critiques, plaintiffs in their reply agreed to eliminate the first subclass and remove certain states that Conagra challenged.[20]

### a. Subclass #2

Plaintiffs seek to certify a class of individuals who purchased Parkay Spray in the following states: Alabama, Alaska, Michigan, Minnesota, Mississippi, and Ohio, subject to the applicable statutes of limitations. Subclass #2 will pursue claims arising under the following

---

[19] In that case, the entire class was "well over a thousand members" bringing claims in six different states, by contrast with this case, where many more class members bought millions of bottles of Parkay Spray in many more states. *See Gold*, 323 F.R.D. at 287.

[20] As I noted above, plaintiffs apparently do not intend for their subclasses to include any states that require proof of individual reliance. *See supra* Section III.B.1. – Materiality and Reliance; Mot. 20 (asserting that the states in which they seek certification "either do not require reliance or use an objective test for establishing it on a classwide basis").

consumer protection statutes:  Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Mich. Comp. Laws Ann. § 445.903(c), (e), (g); Minn. Stat. § 325D.44(5), (7), (10); Miss. Code § 75-24-5(2)(e), (g), (i); and Ohio Rev. Code § 4165.02(A)(7), (9), (11).  Plaintiffs support this grouping as follows:  "All states in this class have laws that prohibit specific enumerated acts (misrepresenting characteristics of the product; misrepresenting the quality of the product; advertising goods with the intent not to sell as advertised).  For each state in the class, the misrepresentation must have the capacity to deceive consumers.  No state requires reliance; all require proximate causation.  No state requires knowledge; intent is only required for one of the enumerated acts."  *See* Modified Subclasses.  My discussion of each state and Conagra's challenges[21] follows.

### i.    Alabama

Plaintiffs seek to pursue claims under Alabama's Deceptive Trade Practices Act, Ala. Code § 8-19-5(27).  But that law provides, "A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."  Ala. Code § 8-19-10(f).  Instead, only the Attorney General or district attorney may bring class actions.  *Id.* § 8-19-10(g).  Courts have found differences such as this one material.  *See Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *10 (N.D. Cal. Aug. 15, 2016) (noting that a prohibition on class actions was "plainly material").  Plaintiffs do not address Conagra's arguments that it would be inappropriate to certify a class to proceed under Alabama law in this Court when Alabama courts would not allow the same.  This subclass cannot include individuals who purchased Parkay Spray in Alabama.

### ii.    Mississippi

Plaintiffs seek to pursue claims under Mississippi's Consumer Protection Act, Miss. Code § 75-24-5(2)(e), (g), (i).  But that law provides:  "Nothing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person."  *Id.* § 75-24-15(4).  Again, plaintiffs do not

---

[21] I do not address Conagra's challenge based on the need for multiple sets of jury instructions for states appearing in both the first and second subclasses; this challenge is moot because plaintiffs eliminated the first subclass.

18

address Conagra's arguments that it would be inappropriate to certify a class to proceed under Mississippi law in this Court when Mississippi courts would not allow the same. This subclass cannot include individuals who purchased Parkay Spray in Mississippi.

### iii. Ohio

Plaintiffs seek to pursue claims under Ohio's Deceptive Trade Practices Act (ODTPA), Ohio Rev. Code § 4165.02(A)(7), (9), (11). Although there is disagreement in Ohio over whether consumers have standing to sue under this law, most courts have determined they do not. *See Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 685 (S.D. Ohio 2018) (citing several cases in support of the majority view and two in support of the minority view). The Ohio Supreme Court has not weighed in on the question. *See Holbrook v. Louisiana-Pac. Corp.*, 533 F. App'x 493, 497 (6th Cir. 2013) (affirming the district court's holding that consumers lack standing where the plaintiff had not shown that the Ohio Supreme Court would decide the question differently than the state courts of appeal had). One court recently laid out for reasons why it would side with the majority and find no consumer standing. *See Borden*, 304 F. Supp. 3d at 685. First, courts have found that the ODTPA should be interpreted consistently with the Lanham Act, under which individual consumers lack standing to sue. *Id.* at 685–86, 687. Second, the court cited the Sixth Circuit's decision in *Holbrook*.[22] *Id.* at 687. Third, the court concluded that the Ohio Supreme Court would likely agree with the Ohio court of appeal decision *Dawson v. Blockbuster, Inc.*, 2006-Ohio-1240, ¶¶ 23–25. *Borden*, 304 F. Supp. 3d at 687. Fourth, the court determined that if consumers could sue under the ODTPA, the Ohio Consumer Sales Practices Act would be superfluous. *Id.*

If I were interpreting the ODTPA without this backdrop, I would likely conclude that the language indicates that "individual" includes consumers. *See Bower v. Int'l Bus. Machines, Inc.*, 495 F. Supp. 2d 837, 843 (S.D. Ohio 2007) (concluding that the plain meaning shows that the

---

[22] I disagree with the court's characterization that the Sixth Circuit "expressly approved this analysis and reasoning." *See Borden*, 304 F. Supp. 3d at 687. Instead, in *Holbrook* the court affirmed the district court upon a finding that the plaintiff had "failed to make the requisite strong showing that the Ohio Supreme Court would decide this issue differently." *See Holbrook*, 533 Fed. App'x at 498.

legislature did not intend to limit the type of individuals who could be considered a "person" under the act); *Schumacher v. State Auto. Mut. Ins. Co.*, 47 F. Supp. 3d 618, 632 (S.D. Ohio 2014) (concluding that the comparison with the Lanham Act should not overcome the "*actual language* of the ODTPA"). But the plaintiffs have not met their burden to show Ohio can be part of this subclass because they have not shown that the Ohio Supreme Court would likely disagree with the Ohio courts of appeal. Plaintiffs cannot proceed under Ohio law.

### iv.    Michigan

Plaintiffs seek to pursue claims under the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws Ann. § 445.903(c), (e), (g). Plaintiffs contend that none of the states in this subclass require reliance, yet they cite to a case in which the court determined that a class could proceed by showing that "a reasonable person would have relied on the representations." *See* Reply Chart 4; *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 429 Mich. 410, 418 (1987). In response to the other cases Conagra cites, plaintiffs contend only that they were "wrongly decided." Reply Chart 4; *see In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 854 (S.D. Ohio 2012) ("Plaintiffs bringing MCPA claims must establish that they relied on the defendant's deceptive conduct to their detriment."); *Vandermale v. Harvey Auto., Inc.*, No. 253100, 2005 WL 1459610, at *1 (Mich. Ct. App. June 21, 2005) ("Reliance on the seller's representations is an implicit element of the MCPA."). Plaintiffs have not met their burden to show Michigan can be part of this subclass because they have not shown that the statute does not require reliance.

In the alternative, plaintiffs request certification of a Michigan subclass. I will grant this request. Plaintiffs can show reliance and intent to deceive on a representative basis. *See Dix*, 429 Mich. at 418 (noting that a class "need not individually prove reliance" and that "a defendant's intent to deceive through a pattern of misrepresentations can be shown on a representative basis"); *see also In re Porsche*, 880 F. Supp. 2d at 855 (noting that the holding in *Dix* "does not relieve plaintiffs bringing MCPA claims of their obligation to plead individual reliance").

### v.    Minnesota

Plaintiffs seek to pursue claims under Minnesota's Deceptive Trade Practices Act (DTPA), Minn. Stat. § 325D.44(5), (7). Under the DTPA, a person may not, among other things, (1)

20

represent goods as having characteristics they do not have or (2) represent that goods are of a standard that they are not. "It is well-settled that monetary damages are not available under [the DTPA]; 'the sole statutory remedy for deceptive trade practices is injunctive relief.'"[23] *Cannon Techs., Inc. v. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753, 768 (D. Minn. 2010) (internal citation omitted); *see also Summit Recovery, LLC v. Credit Card Reseller, LLC*, No. CIV.08-5273(DSD/JSM), 2010 WL 1427322, at *5 (D. Minn. Apr. 9, 2010) ("Injunctive relief is the sole remedy for violation of the MDTPA."). While the subclass can include plaintiffs who purchased Parkay Spray in Minnesota, they may only pursue injunctive relief.

### vi.     Alaska

Plaintiffs seek to pursue claims under Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA), Alaska Stat. § 45.50.471(a). "To establish a prima facie case of unfair or deceptive acts or practices under the UTPA, a plaintiff must prove two elements: '(1) that the defendant engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred.'" *S. Peninsula Hosp. v. Xerox State Healthcare LLC*, 223 F. Supp. 3d 929, 940 (D. Alaska 2016). Neither actual injury nor intent to deceive is required. *Id.* at 940–41. The plaintiffs need only show that "the acts and practices were capable of being interpreted in a misleading way." *Id.* at 941 (internal quotation marks omitted). The subclass can include plaintiffs who purchased Parkay Spray in Alaska.

For these reasons, plaintiffs have met their burden to show that it is appropriate to certify a subclass to pursue claims under Alaska and Minnesota law, the latter for injunctive relief only. But with the states eliminated above, plaintiffs lack a class representative who purchased Parkay Spray in either of the states that remain. Without an adequate representative, this subclass cannot proceed.

---

[23] Plaintiffs indicate that they wish to bring claims for damages under the Private Attorney General Act, but that Act does not seem to authorize individuals to assist in enforcing the DTPA. *See* Minn. Stat. Ann. § 8.31 (listing sections 325D.09 to 325.D.16 and then skipping to sections 325D.49 to 325D.66).

### b.    Subclass #3

Plaintiffs seek to certify a class of individuals who purchased Parkay Spray in the following states:  District of Columbia, Florida, Missouri, Montana, New Jersey, New York, Rhode Island, Vermont, and Washington, subject to the applicable statutes of limitations. Subclass #3 will pursue claims arising under the following consumer protection statutes:  D.C. Code § 28-3904; Fla. Stat. Ann. § 501.204; Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; N.H. Rev. Stat. § 358-A; N.J. Stat. Ann. § 56:8-2; N.Y. Gen. Bus. Law § 349(a); R.I. Gen. Laws § 6-13.1-1(6)(xiii), 6-13.1-2; Vt. Stat. Ann. tit. 9, § 2453(a); and Wash. Rev. Code § 19.86.020. Plaintiffs support this grouping as follows:  "All states in this class broadly prohibit deceptive conduct. For each state in the class, the misrepresentation must be likely to deceive reasonable consumers.  No state requires reliance, knowledge or intent; all require proximate causation."

Conagra's challenges to this subclass go to predominance; it argues that some of the states require proof of actual reliance by an individual consumer.  As noted above, plaintiffs do not meaningfully counter Conagra's argument that where actual reliance is required, that individualized inquiry would predominate over issues common to the class.  *See supra* Section III.B.1. – Materiality and Reliance; *see also In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615, at *6 (C.D. Cal. June 7, 2017), *reconsideration denied,* No. ML132438PSGPLAX, 2017 WL 4772567 (C.D. Cal. Aug. 11, 2017) ("In the causes of action at issue in this case, reliance and causation are susceptible to common proof only if the state law at issue follows a 'reasonable person' standard for assessing the materiality of the misstatement.").

### i.    District of Columbia

Plaintiffs seek to pursue claims under the District of Columbia Consumer Protection Practices Act (DCCPPA), D.C. Code § 28-3904.  "[C]ourts have interpreted the DCCPPA very broadly."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1126 (N.D. Cal. 2008).  There is, however, a "lack of agreement" among courts over whether of reliance is necessary.  *See Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 18 (D.D.C. 2000) (citing cases).  In a case Conagra cites, the court found it unnecessary to resolve the reliance

22

question but did determine that the plaintiff would have to show "that defendants' allegedly decptive trade practices caused her injuries, whether by virtue of her reliance on those practices or by virtue of some other reason."[24] *Id.* at 19. The court noted that causation could be established "independently of reliance," although "the concepts of reliance and causation will often be intertwined." *Id.* Because plaintiffs could meet their burden by showing causation without a showing of individual reliance, the subclass can include plaintiffs who purchased Parkay Spray in the District of Columbia.

### ii. Florida

Plaintiffs seek to pursue claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. Ann. § 501.204. "A claim under the FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 290 (N.D. Cal. 2017). The Act does not require individual proof of reliance. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) ("Because a plaintiff asserting a FDUTPA claim 'need not show actual reliance on the representation or omission at issue,' the mental state of each class member is irrelevant.") (internal citation omitted); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1103 (C.D. Cal. 2015) ("[T]o satisfy the FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice is sufficiently material to deceive an objective reasonable consumer."). The subclass can include plaintiffs who purchased Parkay Spray in Florida.

### iii. Missouri

Plaintiffs seek to pursue claims under Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.020(1). Plaintiffs must prove four elements: (1) the "use or employment of a deception, a fraud, a false pretense, a false promise, a misrepresentation, an unfair practice, or a concealment, suppression or omission of a material fact"; (2) "in connection with the sale or advertisement of any merchandise in trade or commerce"; (3) that "result[s] in ascertainable loss

---

[24] The court did not need to resolve the question of whether reliance was required because the plaintiff's testimony "establishe[d] that she did not rely on defendants' alleged nondisclosure" when she acted. *Smith*, 108 F. Supp. 2d at 18.

of money or real or personal property"; (4) "to a person who purchases merchandise primarily for personal, family or household purposes." *In re Geiler*, 398 B.R. 661, 672 (Bankr. E.D. Mo. 2008). Plaintiffs must show a pecuniary loss, which a price premium theory is sufficient to do. *See Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 758 (W.D. Mo. 2015). The subclass can include plaintiffs who purchased Parkay Spray in Missouri.

### iv.     Montana

Plaintiffs seek to pursue claims under the Montana Consumer Protection Act, Mont. Code § 30-14-103. According to the Act, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." *Id.* "[A]n unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 2009 MT 35, ¶ 31, 349 Mont. 197, 205 (2009). Conagra points out that the Act does not permit class actions: "A consumer who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual but not a class action . . . ." *See* Mont. Code Ann. § 30-14-133(1). Plaintiffs do not address Conagra's arguments that it would be inappropriate to certify a class to proceed under Montana law in this Court when Montana courts would not allow the same. Plaintiffs have not met their burden with regard to Montana.

### v.     New Jersey

Plaintiffs seek to pursue claims under the New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-2. "To state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss[25]; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Id.* (internal quotation marks, alterations, and citation omitted). *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 222 (3d Cir. 2009).

---

[25] "Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss." *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 391 (2007).

A presumption of causation can arise "[w]here the representations are in written and uniform materials presented to each prospective plaintiff." *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 249 (D.N.J. 2008). For purposes of predominance, the Supreme Court of New Jersey has permitted the trier of fact to "infer the causal relationship between the unlawful practice—the multiple deceptions—and the ascertainable losses, the purchases of the worthless product." *Lee v. Carter-Reed Co.*, 203 N.J. 496, 527–28, 4 A.3d 561, 580 (2010) (noting that the cost of each purchase of the product was an out-of-pocket loss). But plaintiffs' theory of classwide ascertainable loss is that the challenged statements permitted Conagra to charge a premium price for Parkay Spray, and the Supreme Court of New Jersey has rejected this theory in the context of CFA claims. *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 391–92 (2007). Accordingly, plaintiffs' theory does not entitle them to a presumption of causation under New Jersey law. Plaintiffs do not meet their burden to show that common issues would predominate over individualized inquiries into causation.

### vi.    New York

Plaintiffs seek to pursue claims under New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349(a). "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 611 (2000). Section 349 does not require individual proof of reliance. *Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 588 (2010) ("[P]laintiffs' cause of action for false advertising under General Business Law § 350, *unlike their General Business Law § 349 claim*, requires proof of reliance.") (emphasis added). In *Morrissey*, the court found that "extensive individualized inquiries" would be required to determine whether the plaintiffs' unique conversations with sales representatives cured the alleged deception in the standard contract documents. *Id.* at 585–86. By contrast here, all the representations—both the allegedly deceptive ones and the allegedly curative ones—were identical. The subclass can include plaintiffs who purchased Parkay Spray in New York.

### vii.     Rhode Island

Plaintiffs seek to pursue under the Rhode Island Deceptive Trade Practices Act (RIDTPA), R.I. Gen. Laws § 6-13.1-1(6)(xiii), 6-13.1-2.  Plaintiffs must establish "that he or she is a consumer, and that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce." *Kelley v. Cowesett Hills Assocs.*, 768 A.2d 425, 431 (R.I. 2001).  A practice is "unfair" if one of the following factors is strongly met or two to three are less strongly met:  (1) if it violates law or public policy; (2) if it is immoral, unethical, oppressive, or unscrupulous; and (3) if it causes substantial injury to consumers.  *Long v. Dell, Inc.*, 93 A.3d 988, 1000 (R.I. 2014).  Plaintiffs present evidence under all three factors, including that the alleged misrepresentations caused injuries to the class members.  Plaintiffs can proceed under Rhode Island law.

### viii.     Vermont

Plaintiffs seek to pursue claims under Vermont's Consumer Protection Act (VCPA), Vt. Stat. Ann. tit. 9, § 2453(a).  Under the Act, "a consumer who contracts for goods or services in reliance on false or fraudulent misrepresentations may recover 'his or her damages, or the consideration or the value of the consideration given by the consumer.'" *McKinstry v. Fecteau Residential Homes, Inc.*, 200 Vt. 392, 400 (2015).  Plaintiffs indicate in their reply chart that they wish to proceed under the ascertainable loss theory rather than the reliance theory.  *See* Reply Chart 7; Vt. Stat. Ann. tit. 9, § 2461(b).  The premium price theory of damages prevents the need for individual proof of damages.[26]  The subclass can include plaintiffs who purchased Parkay Spray in Vermont.

### ix.     Washington

Plaintiffs seek to pursue under Washington's Consumer Protection Act (WCPA), Wash. Rev. Code § 19.86.020.  "To prevail on a private CPA claim, a private plaintiff must show (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or

---

[26] Conagra repeats its arguments that individualized proof will be necessary to determine whether some class members received the benefit of the bargain.

deceptive act and the injury suffered." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 73 (2007). "The Washington Supreme Court has made clear that reliance is not a necessary element of a plaintiff's WCPA case." *Bushbeck v. Chicago Title Ins. Co.*, No. C08-0755JLR, 2011 WL 13100725, at *15 (W.D. Wash. Aug. 15, 2011). Instead, it is just one way to establish proximate cause. *Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493-RSM, 2013 WL 6276450, at *8 (W.D. Wash. Dec. 4, 2013). Courts in Washington have found that need for individual proof of causation defeats predominance in some cases. *See Bushbeck*, 2011 WL 13100725, at *14–15 (noting that individualized proof would be required because the defendant's practices and statements were not standardized). In addition, in the Western District of Washington, "[i]f individual reliance cannot be shown without predominating common issues in a class action, this Court has accepted Plaintiffs' 'price inflation' theory where consumers paid more for a good or service than they would have without the defendant's alleged deception." *Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493-RSM, 2013 WL 6276450, at *8 (W.D. Wash. Dec. 4, 2013).

Accordingly, it is clear that reliance is not necessarily required to show causation, and a district court in Washington has accepted a price inflation theory for purposes of proving this element on a classwide basis. The subclass can include plaintiffs who purchased Parkay Spray in Washington.

For these reasons, plaintiffs have met their burden to show that it is appropriate to certify a subclass to pursue claims under laws in the District of Columbia, Florida, Missouri, Montana, New York, Rhode Island, Vermont, and Washington. But with the states eliminated above, plaintiffs lack a class representative who purchased Parkay Spray in any of the states that remain. Without an adequate representative, this subclass cannot proceed.

### c. Subclass #4

Plaintiffs seek to certify a class of individuals who purchased Parkay Spray in the following states: California, Georgia, Maryland, Massachusetts, North Carolina, Virginia, West

Virginia, and Hawaii,[27] subject to the applicable statutes of limitations. Subclass #4 will pursue claims arising under the following consumer protection statutes: Cal. Bus. & Prof. Code § 17200; Ga. Code. Ann. § 10-1- 393(a), (b); Md. Code Com. Law § 13-301(1); Mass. Gen. L. ch. 93A, § 2(a); N.C. Gen. Stat. § 75-1.1(a); Va. Code § 59.1-200(A)(14); W. Va. Code §§ 46A-6-102(7), 46A-6-104; and Haw. Rev. § 480-1. Plaintiffs support this grouping as follows: "All states in this class broadly prohibit deceptive conduct. For each state in the class, the misrepresentation must be likely to deceive reasonable consumers. All states have an objective standard for proving classwide reliance. Knowledge or intent is not required in any state in this class."[28] Revised Subclasses 2–3.

Having considered Conagra's challenges, I will certify this subclass with the modifications below.

### i. California

Plaintiffs seek to pursue claims under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200. As described above, under California law, "[q]uestions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016); *see supra* Section III.B.1. – Materiality and Reliance. The subclass can include plaintiffs who purchased Parkay Spray in California.

### ii. Georgia

Plaintiffs seek to pursue claims under Georgia's Fair Business Practices Act (FBA), Ga. Code. Ann. § 10-1- 393(a), (b). The Act bars class actions. *See* Ga. Code. Ann. § 10-1-399(a) ("Any person who suffers injury or damages . . . may bring an action individually, but not in a representative capacity, against the person or persons engaged in such violation . . . ."). Plaintiffs do not address Conagra's arguments that it would be inappropriate to certify a class to proceed

---

[27] Plaintiffs omitted Hawaii from their list of Modified Subclasses but included it in their reply chart.

[28] Plaintiffs add, "North Carolina was previously included as part of Subclass #3 but aligns with the elements in this class, and can be included here if the Court prefers."

under Georgia law in this Court when Georgia courts would not allow the same.

### iii.    Maryland

Plaintiffs seek to proceed under the Maryland Consumer Protection Act (MCPA), Md. Code Ann., Com. Law § 13-301.  "In Maryland, whether a statement is 'misleading' is judged from the point of view of a reasonable, but unsophisticated consumer." *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 558 (D. Md. 2012) (citing *Luskin's, Inc. v. Consumer Protection Div.,* 353 Md. 335, 356–57 (1999)).  Assessing the availability of classwide proof under the MCPA, a court in the central district of California certified a class after concluding that "the MPCA imposes an objective test whereby a plaintiff's reliance on a defendant's omission can be presumed by the materiality of the omitted fact." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 484 (C.D. Cal. 2012); *see also Consumer Prot. Div. v. Morgan*, 874 A.2d 919, 941 (Md. Ct. App. 2005) (noting that individual consumer testimony was not necessary to establish consumer reliance and prove a violation of the statute).  Given this authority, which is more recent than the cases cited by Conagra,[29] plaintiffs have met their burden to certify a class in Maryland.

### iv.    Massachusetts

Plaintiffs seek to proceed under the Massachusetts Consumer Protection Act (CPA), Mass. Gen. L. ch. 93A, § 2(a).  The Act declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.*  "Causation of damages is required for a chapter 93A claim." *Liu v. Amerco*, 677 F.3d 489, 495 (1st Cir. 2012).  The need for proof of causation does not preclude class certification when there is "common evidence of causation." *Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 68 (D. Mass. 2001).  Where "the total mix of information made available to each purchaser was distinctive, if not unique," individualized determinations of causation are necessary and will predominate over common issues. *See id.* at 69.  In the case at bar, plaintiffs were exposed to the same statements, in terms of both of the alleged misrepresentations and the information that Conagra argues would

---

[29] Conagra cites *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 234 (Md. Ct. App. 2000) and *Hoffman v. Stamper*, 867 A.2d 276, 293 (Md. Ct. App. 2005).

1    have cleared up any confusion.  This evidence is common across the class.

2         It is appropriate to certify a class of Massachusetts purchasers, but given that the Act

3    requires proof of causation rather than reliance as plaintiffs assert, this state belongs in subclass #3

4    rather than subclass #4.  Given that subclass #3 lacks a class representative, plaintiffs have not met

5    their burden to proceed as a class under Massachusetts law.

6                               **v.     North Carolina**

7         Plaintiffs seek to proceed under North Carolina's Unfair and Deceptive Trade Practices

8    Act (NCUDTPA), N.C. Gen. Stat. § 75-1.1(a).  Under this Act, a plaintiff must establish actual

9    and reasonable reliance on the defendant's alleged misrepresentation in order to show proximate

10   cause.  *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 88 (2013); *see also Kelly v. Georgia-*

11   *Pac. LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009); *Barbour v. Fid. Life Ass'n*, 361 F. Supp. 3d

12   565, 575 (E.D.N.C. 2019).  Conagra argues that the inquiry into each class member's actual

13   reliance will defeat predominance.  Plaintiffs responded to Conagra's challenge by moving North

14   Carolina to subclass #4 and noting that they "agree that reliance is required for the named

15   plaintiff."  Reply Chart 14.  Plaintiffs cite no authority for the proposition that the named

16   plaintiff's actual reliance is sufficient for the entire class.  *See id.*  As noted above, neither do

17   plaintiffs argue that individualized inquiries into reliance would not defeat predominance.  While I

18   do not conclude that the requirements of North Carolina law would defeat predominance in every

19   case, plaintiffs in this one have not met their burden.  *See Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App.

20   1, 13, 550 S.E.2d 179, 189 (2001) (concluding that the trial court erred by determining that a class

21   necessarily did not exist because some individualized showings were necessary), *aff'd,* 356 N.C.

22   292 (2002) (equally divided court).

23                               **vi.     Virginia**

24        Plaintiffs seek to proceed under the Virginia Consumer Protection Act (CPA), Va. Code §

25   59.1-200(A)(14).  But "class actions are not generally allowed in Virginia."  *Almeter v. Virginia*

26   *Dep't of Taxation*, 53 Va. Cir. 429 (2000); *Casey v. Merck & Co.*, 678 F.3d 134, 137 (2d Cir.

27   2012) ("[C]lass actions are not recognized under Virginia law."); *see also* Va. Code Ann. § 59.1-

28   204 (entitled "Individual action for damages or penalty"); *Am. Online, Inc. v. Superior Court*, 90

                                            30

Cal. App. 4th 1, 17 (2001), *as modified* (July 10, 2001) (noting the "absence of any provision in the VCPA that allows suits under the Act to proceed as class actions" and that "class action relief is not generally available in Virginia in actions at law"). Plaintiffs do not address Conagra's arguments that it would be inappropriate to certify a class to proceed under Virginia law in this Court when Virginia courts would not allow the same. *See* Reply Chart 7, 15. Plaintiffs have not met their burden.

### vii.    West Virginia

Plaintiffs seek to proceed under the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-102(7). Under this Act, plaintiffs must show: "(1) unlawful conduct by a seller; (2) an ascertainable loss on the part of the consumer; and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss." *White v. Wyeth*, 227 W. Va. 131, 140 (2010). "Where the deceptive conduct or practice alleged involves affirmative misrepresentations, reliance on such misrepresentations must be proven in order to satisfy the requisite causal connection." *Id.* The parties agree reliance is required but that "no case in West Virginia appears to have considered the issue of classwide reliance." Reply Chart 7.

Plaintiffs justify this grouping by asserting that all of the states have an objective standard for proving classwide reliance, yet they acknowledge that the question is unresolved in West Virginia. Plaintiffs do not cite to authority suggesting that West Virginia would be likely to permit classwide proof, and neither do they meaningfully argue that common issues would still predominate if individual inquiries *are* necessary. Given these failures, plaintiffs have not met their burden to show that West Virginia belongs in this subclass.

### viii.    Hawaii

Plaintiffs seek to proceed under the Hawaii Unfair and Deceptive Trade Practices Act, Haw. Rev. § 480-1.[30] "A deceptive act or practice is (1) a representation, omission, or practice

---

[30] It was initially unclear which Hawaii statute plaintiffs sought to bring claims under, and Conagra challenged their ability to proceed under both Haw. Rev. Stat. Ann. § 481A-1 and Haw. Rev. Stat. § 480-1. Plaintiffs clarified in their reply that they seek to proceed under section 480-1, the Unfair and Deceptive Trade Practices Act. Reply Chart 10.

that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir. 2010) (internal quotation marks and formatting omitted). A representation is material of it is "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262 (2006) (internal quotation marks and citation). Given the objective nature of this inquiry, plaintiffs have met their burden to show Hawaii can be part of the class.

For these reasons, plaintiffs have met their burden to show that it is appropriate to certify a subclass to pursue claims under laws in California and Hawaii.

### d.    Subclass #5

Plaintiffs seek to certify a class of individuals who purchased Parkay Spray in the following states: California, Georgia, Maryland, Virginia, and West Virginia, subject to the applicable statutes of limitations. Subclass #5 will pursue claims arising under the under the following consumer protection statutes: Cal. Civil Code § 1770(a)(5), (7), (9); Ga. Code. Ann. § 10-1-393(b)(5), (7), (9); Md. Code Com. Law § 13-301(1); Va. Code § 59.1-200(A)(5), (6), (8); and W. Va. Code § 46A-6-102(7)(E), (G), (I). Plaintiffs justify this grouping as follows: "All states in this case have laws that prohibit specific enumerated acts (misrepresenting characteristics of the product; misrepresenting the quality of the product; advertising goods with the intent not to sell as advertised). For each state in the class, the misrepresentation must be likely to deceive reasonable consumers. All states have an objective standard for proving classwide reliance. Knowledge is not required in any state in this class; intent is only required for one of the enumerated acts."

Plaintiffs cannot proceed under Georgia, Maryland, Virginia, or West Virginia for the reasons articulated above. Accordingly, only California would remain part of this subclass. Plaintiffs can pursue these claims as part of the individual California subclass described below.

### e.    Subclass #6

Plaintiffs seek to certify a class of individuals who purchased Parkay Spray in the following states: Arkansas, Indiana, and Wyoming, subject to the applicable statutes of

limitations. Subclass #6 will pursue claims arising under the following consumer protection

statutes: Ark. Code § 4-88- 107(a); § 4-88-108(a)(1), (3), (10); Ind. Code § 24-5-0.5-3(a); Ind.

Code § 24-5-0.5-3(b)(1), (2), (11); Wyo. Stat. Ann. § 40-12-105(a)(xv); and Wyo. Stat. Ann. § 40-

12-105(a)(i), (iii), (x). Plaintiffs support this grouping as follows: "All states in this class have

laws that prohibit specific enumerated acts (misrepresenting characteristics of the product;

misrepresenting the quality of the product; advertising goods with the intent not to sell as

advertised). For each state in the class, the misrepresentation must be likely to deceive reasonable

consumers. All states have an objective standard for proving classwide reliance. Knowledge is

required for all states in the class; intent is only required for one of the enumerated acts."

### i. Arkansas

Plaintiffs seek to proceed under the Arkansas Deceptive Trade Practices Act, Ark. Code §

4-88- 107(a). The Act provides a cause of action for individuals who "suffer[] actual damage or

injury" as a result of "[t]he act, use, or employment by any person of any deception, fraud, or false

pretense" in connection with the sale or advertisement of goods.[31] *Jarrett v. Panasonic Corp. of

N. Am.*, 8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013). "[A]n ADTPA claim requires each class

member to prove reliance on the allegedly fraudulent conduct and that such fraudulent conduct

caused damage." *See id.* at 1089 (E.D. Ark. 2013) (concluding that individual questions including

this one predominated). Because this statute does not allow for classwide proof of reliance as

plaintiffs contend, and in the absence of any argument that predominance is still met, plaintiffs

have not met their burden.

### ii. Indiana

Plaintiffs seek to proceed under the Indiana Deceptive Consumer Sales Act, Ind. Code §

24-5-0.5-3(a); Ind. Code § 24-5-0.5-3(b)(1), (2), (11). A supplier commits a "deceptive act" under

the statute by making certain representations, including that the subject matter of the transaction

has "uses[] or benefits it does not have" or that it is "of a particular standard, quality, grade, style,

---

[31] In addition to an affirmative misrepresentation, the plaintiff can proceed on the theory that the
defendant concealed a material fact with the intent that others rely. *Jarrett v. Panasonic Corp. of
N. Am.*, 8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013).

or model if it is not," if the supplier knows or should reasonably know the representations are not true. *See id.* Individualized inquiries defeat predominance where, given the absence of scripted statements, "each customer's case would be dependent upon establishing the relative expectations based on the particular communications between the agent and customer. *See Chicago Title Ins. Co. v. Gresh*, 888 N.E.2d 779, 783 (Ind. Ct. App. 2008). By contrast here, no such individual inquiries will be necessary because all consumers were exposed to the same statements on the Parkay Spray label. Consumers from Indiana can remain part of the subclass.

### iii.    Wyoming

Plaintiffs seek to proceed under the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a)(xv), (a)(i), (iii), (x). Plaintiffs acknowledge that the statute explicitly requires reliance but indicate that they know of no cases addressing the question of classwide reliance. Yet they justify this subclass grouping by stating that "[a]ll states have an objective standard for proving classwide reliance." It is plaintiffs' burden to show either that Wyoming courts, if confronted with the question, would allow classwide proof of reliance, or that the need for individualized inquiries into reliance in this case would not defeat predominance. They have not met that burden.

### 3.    Individual State Consumer Protection Subclasses

Plaintiffs seek certification of a California subclass along with subclasses in any of the states with named plaintiffs that I have not certified above.

### a.    California

Plaintiffs seek to certify claims of a California class for violations of (1) California's Consumers Legal Remedies Act, Cal. Civil Code § 1770 *et seq.*,[32] (2) California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq.*, and (3) common law claims of fraud, breach of express warranty, and misrepresentation.

The CLRA provides relief to "any consumer who suffers any damage as a result of the use

---

[32] This statute appears in subclass #5, but given that only California would remain part of that subclass, plaintiffs can pursue their CLRA claims in the California subclass. I do not include plaintiffs' UCL claims here because those remain part of subclass #4.

or employment" of any unlawful "method, act, or practice." Cal. Civ. Code § 1780(a). "[T]he FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005), *aff'd,* 252 F. App'x 777 (9th Cir. 2007) (internal quotation marks, formatting, and citation omitted). "California's UCL, FAL and CLRA rely on the same objective test, that is, whether members of the public are likely to be deceived." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (internal quotation marks and citation omitted). "For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.*

Plaintiffs' California class can proceed.

### b. Wisconsin

Plaintiffs seek to proceed under the Wisconsin Deceptive Trade Practices Act (WDTPA), Wis. Stat. Ann. § 100.18. The plaintiffs must show: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) that the representation was untrue, deceptive or misleading, and (3) that the representation caused the plaintiff a pecuniary loss." *Novell v. Migliaccio*, 749 N.W.2d 544, 552 (Wis. 2008) (internal quotation marks and citation omitted). Reasonable reliance is not required, but "the reasonableness of a plaintiff's reliance may be relevant in considering whether the representations materially induced the plaintiff's pecuniary loss." *Id.* (internal quotation marks and citation omitted).

Conagra cites one case in which the court declined to certify a class because the plaintiff "[did] not identify the standard by which he intend[ed] to show that the labels were objectively deceptive or misleading," which led the court to conclude that individualized inquiries would be necessary. *Wyatt v. Philip Morris USA, Inc.*, No. 09-C-0597, 2013 WL 4046334, at *4 (E.D. Wis. Aug. 8, 2013). By contrast here, plaintiffs will rely on common evidence to prove the labels were objectively deceptive or misleading. Conagra can argue to the jury that any reliance was unreasonable given the list of ingredients and the "per serving" language on the revised label, but the presence of that information does not preclude certification of a Wisconsin class. The court in

*Wyatt* further concluded that individualized inquiries would be necessary to show that each plaintiff suffered a loss. *Id.* The plaintiff in that case had neither clearly expressed an intent to pursue a price premium theory nor shown any expert or other testimony to show such a theory was plausible in the case. *Id.* at *5. Such individualized inquiries into loss will not be necessary here because plaintiffs rely on expert testimony to support their price premium theory.

Plaintiffs have met their burden to certify a class of plaintiffs in Wisconsin.

### c. Illinois

Plaintiffs seek to proceed under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. § 505/2. Plaintiffs must prove the following: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844, 851 (N.D. Ill. 2010) (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002)). The materiality standard is an objective one that inquires "whether it is a matter upon which a reasonable person could be expected to rely in determining whether to proceed with the transaction." *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) (internal quotation marks and citation omitted). "The conduct of the individual plaintiff is not pertinent." *Id.* Plaintiffs have met their burden to certify a class of consumers who purchased Parkay Spray in Illinois.

Indiana remains part of subclass #6, so there is no need for individual Indiana class. For the reasons described above, plaintiffs have not met their burden for Georgia or Ohio. Accordingly, I will certify individual state subclasses in California, Wisconsin, Illinois, and Michigan.

### 4. Damages

Conagra argues that plaintiffs' damages model fails under *Comcast*. Oppo. 31–39. As part of the predominance inquiry, plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Plaintiffs must present a damages model consistent with their theory of liability—that is, a

36

United States District Court
Northern District of California

damages model "purporting to serve as evidence of damages in this class action must only those damages attributable to that theory." *Id.* at 35. "Calculations need not be exact," *id.*, nor is it necessary "to show that [the] method will work with certainty at this time," *Khasin*, 2016 WL 1213767, at *3. "Restitution under the UCL and FAL 'must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015). Where plaintiffs allege that the defendant's misrepresentations deceived them into making a purchase, the theory of economic harm is that "the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id.* at 989. The appropriate amount of restitution is "based on what a purchaser would have paid at the time of purchase had the purchaser received all the information." *Id.*

Plaintiffs present a damages model based on their theory that the challenged statements enabled Conagra to charge a premium price for Parkay Spray. Reply 24. The model relies on conjoint analysis performed by survey expert Michael Dennis with the input of economics expert Colin Weir. Dennis Decl. ¶ 23. Dennis designed and executed a conjoint survey to measure "measure the marketplace price premium, if any, solely attributable to the challenged claims." *Id.* ¶¶ 24, 26. In designing the survey, he took into account "the intersection between demand-side factors (willingness to pay) and supply-side factors (willingness to sell)." *Id.* ¶ 42. He further incorporated the attributes consumers find important when deciding what spray buttery topping products to purchase, along with the typical characteristics of Parkay Spray consumers. *Id.* ¶¶ 52–53, 55. He input the preference data into a market simulator that used Hierarchical Bayesian regression to calculate the price premium. *Id.* ¶ 64. The results are as follows:

| Challenged Claims | Time Period | No. Respondents | Price Premium / Product Price | Price Premium Percent |
|---|---|---|---|---|
| "Fat Free" / "Zero Calories" | 2007 – October 2009 | 933 | $0.85 / $2.50 | 34.0% |
| "0g Fat Per Serving" / "Zero Calories Per Serving" | October 2009 – Present | 933 | $1.00 / $2.50 | 40.0% |

Dennis Decl. ¶ 70. According to Dennis, these premiums apply to California consumers as well as non-California consumers. *Id.* ¶ 72.

Weir consulted with Dennis and relied on Dennis's survey results to determine damages. His work included consideration of supply side factors, including the historic number of units sold and the fact that Conagra and retailers "vary their prices in response to business needs and changing market conditions." Weir Decl. ¶¶ 47, 55, 57. With Dennis's survey results and Parkay Spray sales data, Weir performed the following calculation: %Price Premium Factor: Claim X $Units Sold = Damages. *Id.* ¶¶ 64–65, 68. The damages calculations were as follows:

| Time Period | Price Premium | Dollar Sales | Damages |
|---|---|---|---|
| | | Nationwide | |
| March 21, 2009 – October 14, 2009 | 34.0% | $8,219,081.86 | $2,794,487.83 |
| October 15, 2009 - Present | 40.0% | $93,490,054.92 | $37,396,021.93 |
| | | California | |
| March 21, 2009 – October 14, 2009 | 34.0% | $58,275.86 | $19,813.79 |
| October 15, 2009 - Present | 40.0% | $774,483.91 | $309,793.56 |

Weir Decl. ¶ 70. Plaintiffs assert that this model of damages can be applied to the class as a whole. Mot. 22. Plaintiffs also seek a full refund on the grounds that they would not have purchased Parkay Spray had they known that the statements were false. Mot. 23–24.

Conagra first challenges plaintiffs' ability to pursue a full refund. "Under California law, a full refund may be available as a means for restitution only when plaintiffs prove the product had *no* value to them." *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063, at *10 (N.D. Cal. May 11, 2017) (denying full refund theory where "plaintiffs undeniably obtained some value from the garments they purchased, separate and apart from the allegedly deceptive advertising practices"). I, along with several courts in this district, have dealt with claims involving the full refund model. *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 899 (N.D. Cal. 2016) ("Unlike juice, which consumers purchase for hydration, or cigarettes, which smokers purchase for flavor and to assuage nicotine cravings, Joint Juice is for

38

all intents and purposes a liquid pill."); *Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *10 (N.D. Cal. Nov. 15, 2017) ("Like Joint Juice, defendants' One A Day products are literally pills, and plaintiffs testified that they purchased the products only for their touted health benefits."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) ("Even if the beverages plaintiffs purchased were not all natural, they still had some market value that accrued to plaintiffs."); *Khasin*, 2016 WL 1213767, at *3 ("Attributing a value of $0 to the Green Tea Products assumes that consumers gain no benefit in the form of enjoyment, nutrition, caffeine intake, or hydration from consuming the teas. This is too implausible to accept."); *Jones v. ConAgra Foods, Inc.*, No. 12-01633 CRB, 2014 WL 2702726, at *23 (N.D. Cal. June 13, 2014) (rejecting damages model premised on claim that Swiss Miss products are "legally worthless").

Plaintiffs cannot proceed under a full refund model. The presence of calories and fat does not render Parkay Spray worthless; instead, the product provides the benefit of a buttery taste. Dennis's survey was not based on a theory that consumers would not purchase Parkay Spray without the challenged statements, but rather that the "market clearing price would be substantially less, as much as 40 percent less" if the statements were removed. Deposition of Michael Dennis ("Dennis Depo.") [Dkt. Nos. 253-19, 259-13] 191:2–10. The allegations at issue here are a far cry from allegations that a pill or its liquid equivalent provides no health benefits at all.

Plaintiffs' partial refund theory can proceed in spite of Conagra's challenges. Conagra first asserts that the damages model fails to separate out those who consumed Parkay Spray within the recommended serving size—and accordingly were not injured because they got a product with zero fat and zero calories (per serving). Oppo. 31. As articulated above, this argument is based on a misunderstanding of plaintiffs' theory: they contend that, no matter the serving size used, all class members were injured because of the premium price they paid for Parkay Spray. *See supra* Section I – Standing. Next Conagra argues that Dennis's analysis does not adequately consider supply-side factors, meaning that it measures consumers' willingness to pay rather than the price premium attributable to the claims. Oppo. 32–33. As one court in this district recently summarized:

> [I]n cases where price premia are the relevant measure of damages,
> courts have repeatedly rejected conjoint analyses that only measure
> demand-side willingness-to-pay. However, courts have also found
> that conjoint analyses can adequately account for supply-side
> factors—and can therefore be utilized to estimate price premia
> without running afoul of *Comcast*—when (1) the prices used in the
> surveys underlying the analyses reflect the actual market prices that
> prevailed during the class period; and (2) the quantities used (or
> assumed) in the statistical calculations reflect the actual quantities of
> products           sold           during           the           class           period.

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018).

As Dennis indicated in his first and second declarations, he incorporated both of these inputs into his analysis. *See* Declaration of Michael Dennis ("Dennis Decl.") [Dkt. No. 187] ¶ 42; Reply Declaration of Michael Dennis ("Dennis Reply Decl.") [Dkt No. 260-8] ¶ 50. Not only did Dennis and Weir rely on actual quantities of Parkay Spray sold during the class period, but "the price points in [the] survey were based on actual, historical, market-clearing prices that would have reflected the then-existing supply side considerations." Dennis Reply Decl. ¶ 50; *see* Weir Decl. [Dkt. No. 198-6] ¶¶ 64–65. In order to calculate the price premium for the marginal consumer, Dennis included a "no buy" option for those taking the survey. Dennis Reply Decl. ¶ 50. Relying on the same cited cases and a similar challenge by Conagra to a similar analysis by Dennis and Weir, another court in this district found these measures were sufficient to show that the plaintiffs had calculated the price premium for the challenged claim rather than a theoretical willingness to pay. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 605–06 (N.D. Cal. 2018), *leave to appeal denied,* No. 18-80081, 2018 WL 4922825 (9th Cir. Sept. 18, 2018), and *reconsideration denied sub nom. Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-CV-00564-NC, 2018 WL 5793479 (N.D. Cal. Nov. 2, 2018); *see* Dennis Reply Decl. ¶¶ 41–42 (noting that he followed the same procedures here and in that case).

Next Conagra argues that Dennis's survey did not accurately depict the claim language because it lacked the context of the nutritional information on the rest of the label. Oppo. 37–38. Survey participants received instructions that they could look at the serving size information by hovering over the claim itself. Dennis Depo. 64:1–19. Dennis reasonably constructed the survey in this way "to mimic the market reality that, if you want to see the serving size information as [a]

consumer, you need to make an effort as well." *Id.* at 64:5–8. Finally, Conagra argues that the survey does not match plaintiffs' theory of liability as required by *Comcast*. But plaintiffs' theory is that the disputed claims create a price premium, and the Dennis and Weir analysis measures those asserted premiums. *See Fitzhenry-Russell*, 326 F.R.D. at 615 (noting that "what plaintiffs' price premium measures is how much the 'Made From Real Ginger' claim is worth"). Conagra is free to raise all these challenges to the merits of plaintiffs' theories, including those that Keith Ugone and Sarah Butler make, but they do not undermine plaintiffs' showing for purposes of class certification. Through the Dennis and Weir survey and calculations, plaintiffs have shown that damages are calculable on a classwide basis.

### 5. Manageability and Superiority

Plaintiffs assert that it is both manageable and superior to allow this case to proceed as a class action because individual recovery would be low, judicial resources would be wasted, and Conagra might be subject to inconsistent results. Mot. 24; *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Conagra only recycles its challenges to reliance and predominance and its arguments about state law variations, many of which have contributed to narrowing the scope of the plaintiffs' case. Oppo. 39–40. Given the small individual claim amounts and the common evidence likely to be presented, I find that these factors weigh in favor of proceeding as a class action.

## IV. INJUNCTIVE RELIEF PURSUANT TO RULE 23(B)(2)

Plaintiffs seek certification under Rule 23(b)(2) to pursue injunctive relief in the states that provide for such a remedy. Mot. 25. Conagra challenges plaintiffs' request on the grounds that they are not entitled to injunctive relief given that they also seek monetary relief. Oppo. 40. But according to the Ninth Circuit, Rule 23(b)(2) and Rule 23(b)(3) "are not mutually exclusive." *Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000); *Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *16 (N.D. Cal. Nov. 15, 2017) (certifying a class under both provisions); *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 319 (N.D. Cal. 2018)

(same).

## V. MOTIONS TO SEAL

Both parties filed motions to seal information that Conagra had designated as confidential.[33]  Conagra seeks narrowly tailored redactions on the grounds that the information would reveal its confidential marketing and business strategy along with pricing and sales data.  *See* Civ. L.R. 79-1(d)(1)(B).  Finding compelling justifications at this stage of the case, the motions to seal are GRANTED as set forth in Conagra's charts.  As noted above, the excerpts in this Order will not be sealed.  Insofar as other information sealed here turns out to be necessary for understanding the merits of the case, it will not be sealed for purposes of dispositive motions or at trial.

## CONCLUSION

For the foregoing reasons, the plaintiffs' for class certification is GRANTED for the following classes and class representatives:

- Subclass #1 (formerly #4):  California (Cal. Bus. & Prof. Code § 17200) and Hawaii (Haw. Rev. § 480-1), class representative Allen

- Subclass #2 (formerly #6):  Indiana (Ind. Code § 24-5-0.5-3(a); Ind. Code § 24-5-0.5-3(b)(1), (2), (11)) and Wyoming (Wyo. Stat. Ann. § 40-12-105(a)(xv); Wyo. Stat. Ann. § 40-12-105(a)(i), (iii), (x)), class representatives Frechette and Harder

- Individual Subclasses in the following states:

  - California (Cal. Civil Code § 1770 *et seq.*, Cal. Bus. & Prof. Code § 17500 *et seq.*, fraud, breach of express warranty, and misrepresentation), class representative Allen

  - Michigan (Mich. Comp. Laws Ann. § 445.903(c), (e), (g)), class representative Smith

  - Wisconsin (Wis. Stat. § 100.18), class representative Vazquez

---

[33] Conagra filed declarations to support plaintiffs' request as required by the Civil Local Rules.  *See* Civ. L.R. 79-5(e)(1).

1    o   Illinois (815 Ill. Comp. Stat. Ann. § 505/2) class representative Vazquez

2    For each class, there will be two periods, one from before the label change and one from

3    after the label change.  Gutride Safier LLP and the Eureka Law firm are appointed as lead class

4    counsel.

5    The parties are ORDERED to meet and confer and, within fifteen (15) days of this Order,

6    file a proposed notice to the classes.

7    **IT IS SO ORDERED.**

8    Dated: July 22, 2019



William H. Orrick
United States District Judge