1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ERIN ALLEN, et al.,                    Case No.  3:13-cv-01279-WHO

8                 Plaintiffs,               **ORDER GRANTING CONAGRA'S
                                            MOTION FOR SUMMARY
9         v.                                JUDGMENT**

10   CONAGRA FOODS, INC.,                   Re: Dkt. Nos. 295, 296, 297, 298, 299, 301,

11                Defendant.                303, 312, 313, 320

12

13          The plaintiff classes seek to hold defendant Conagra Brands, Inc., f/k/a ConAgra Foods

14   Inc. liable under state law for the allegedly false and misleading label of Parkay Spray, which they

15   say uses artificially small serving sizes in order to disguise the true fat and calorie content.  Now

16   before me are motions for summary judgment and motions to exclude expert testimony.  I will

17   grant Conagra's motion for summary judgment because there are no material disputes of fact

18   preventing a judgment that the plaintiffs' claims are preempted.  On this record, it is not possible

19   to conclude that Parkay Spray belongs in the butter, margarine, oil, and shortening reference

20   amount category under the federal regulations rather than the spray-type fat and oil category.  As a

21   result, there is only one conclusion:  the plaintiffs seek to impose state law requirements that are

22   not identical to the federal requirements.  Their claims are preempted as a matter of law.

23                                        **BACKGROUND**

24          This case has a long and complicated history.  For purposes of this order, it is sufficient to

25   outline briefly the parties' respective positions on the issue of preemption.  Conagra has argued

26   vehemently since this case's inception that Parkay Spray is a spray-type fat and oil under the

27   federal regulations, while the plaintiffs have maintained that it is a butter substitute that belongs in

28   the butter, margarine, oil, and shortening category.  In December 2018, I granted in part and

United States District Court
Northern District of California

1  denied in part Conagra's motion to dismiss Allen's second amended class complaint.  *See* Order

2  on Conagra's Motion to Dismiss the Second Amended Complaint [Dkt. No. 231].  I determined

3  that the plaintiffs avoided preemption at that stage because they had properly alleged that Parkay

4  Spray was a substitute butter.  I noted that Conagra could continue to raise the issue of preemption

5  as the case continued.

6         I certified several classes on July 22, 2019 but denied the plaintiffs' motion to certify a

7  nationwide class.  Dkt. No. 267.  That decision impacted the jurisdictional analysis in my Order on

8  Conagra's Motion to Dismiss, and on October 15, 2019, I reconsidered that Order, dismissed the

9  claims brought by the non-California named plaintiffs, and decertified the classes they

10  represented.  Dkt. No. 280.  That left only Allen, pursuing the following claims on behalf of the

11  following classes:  **(1)** an individual state class of California consumers asserting claims for: (i)

12  fraud by concealment; (ii) breach of express warranty; (iii) intentional misrepresentation; (iv)

13  violation of California's False Advertising Law; and (v) violation of the Consumers Legal

14  Remedies Act; **(2)** a subclass of California and Hawaii consumers asserting claims for: (i)

15  violation of California's Unfair Competition Law and (ii) violation of Hawaii's Unfair and

16  Deceptive Acts or Trade Practices Act[1]; **(3)** a quasi-contract/unjust enrichment claim brought by

17  Allen in her individual capacity.

18         On June 17, 2020, Conagra moved for summary judgment on numerous grounds, including

19  preemption.[2]  Motion for Summary Judgment ("MSJ") [Dkt. No. 295].  I heard argument on July

20  22, 2020.  Dkt. No. 325.

21                                     **LEGAL STANDARD**

22         Summary judgment on a claim or defense is appropriate "if the movant shows that there is

23  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

24  law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

25  the absence of a genuine issue of material fact with respect to an essential element of the

United States District Court
Northern District of California

---

27  [1] The plaintiffs pursue only injunctive relief on behalf of Hawaiian consumers.

28  [2] Conagra also filed a motion to decertify and a motion to strike plaintiffs' expert report, and the plaintiffs filed a motion for partial summary judgment.  Dkt. Nos. 296, 297, 299.

1   nonmoving party's claim, or to a defense on which the non-moving party will bear the burden of

2   persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

3   made this showing, the burden then shifts to the party opposing summary judgment to identify

4   "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary

5   judgment must present affirmative evidence from which a jury could return a verdict in that

6   party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

7          On summary judgment, the court draws all reasonable factual inferences in favor of the

8   non-movant. *Id.* at 255. In deciding the motion, "[c]redibility determinations, the weighing of the

9   evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

10  judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact

11  and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594

12  F.2d 730, 738 (9th Cir. 1979).

                                      **DISCUSSION**

13  **I.     SUMMARY JUDGMENT**

14         The plaintiffs' claims fail because there is no triable issue of material fact on the question

15  of preemption. The record contains insufficient support for the plaintiffs' contention that Parkay

16  Spray is a butter or margarine substitute such that it belongs in the butter, margarine, oil, and

17  shortening category under the federal regulations. In fact, the plaintiffs' own expert report

18  outlines the numerous numerous characteristics that distinguish Parkay Spray from butter and

19  margarine. Accordingly, the plaintiffs seek to impose food labeling requirements that are not

20  identical to federal law.

21      **A.     The Statutory Scheme**

22         Federal law expressly preempts efforts to "directly or indirectly" impose state law

23  requirements that are "not identical to"—in other words, requirements that are differing from or

24  additional to—the federal nutrition labeling requirements provided for by the Nutrition Labeling

25  and Education Act ("NLEA"), which includes requirements related to serving sizes and nutrient

26  content claims. 21 U.S.C. § 343-1(a); 21 C.F.R. § 100.1(c)(4). The regulations include

27  mandatory reference amounts, which the FDA calculated "to reflect the amount of food

United States District Court
Northern District of California

customarily consumed per eating occasion." *Id.* § 101.12(a)(1), 101.12(b).  "The reference amount is based on the major intended use of the food (e.g., milk as a beverage and not as an addition to cereal)." *Id.* § 101.12(a)(7).  In addition, "The reference amount for an imitation or substitute food or altered food, such as a 'low calorie' version, shall be the same as for the food for which it is offered as a substitute." *Id.* § 101.12(d).

Two of these reference amount categories are at issue in this case.  Conagra argues that Parkay Spray belongs in the "Fats and Oils:  Spray types" category with a reference amount of 0.25 grams, while the plaintiffs argue that it belongs in the "Fats and Oils: Butter, margarine, oil, shortening" category with a reference amount of one tablespoon.  *See id.* at § 101.12(b).  "A 'substitute 'food is one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.'"  21 C.F.R. § 101.13(d).  "As an example, the FDA states that the food 'no salt added' canned corn resembles and for which it substitutes is canned corn, not frozen corn."  *Rahman v. Mott's Ltd. Liab. Ps'hip*, No. 13-cv-3482-SI, 2014 U.S. Dist. LEXIS 11767, at *17-18 n.4 (N.D. Cal. Jan. 29, 2014) (citing 58 Fed. Reg. 3202, 2325 (Jan. 6, 1993)).

### B.   There is No Triable Issue with Respect to Preemption

Conagra renews its preemption arguments at the summary judgment stage, pointing (among other things) to the absence of evidence supporting the conclusion that Parkay Spray is a butter substitute.  The plaintiffs counter that Parkay Spray must belong in the butter/margarine category because (i) Conagra intends Parkay Spray to be used as a buttery topping, (ii) Conagra markets Parkay Spray as an alternative to butter for foods like corn and bread, and (iii) consumers in fact use Parkay Spray as a topping.  As I detail below, on the record before me it is not possible to conclude that Parkay Spray belongs in the butter, margarine, oil, shortening category.

According to the plaintiffs' own expert Annette W. Hottenstein, numerous characteristics distinguish Parkay Spray from butter and margarine.  Declaration and Expert Report of Annette W. Hottenstein ("Hottenstein Decl.") [Dkt. No. 300-2].  On a scale of 0 (liquid oil) to 10 (solid fat – butter), Hottenstein rated Parkay Spray with a "3," margarine with an "8," and butter with a

4

1   "10." *Id.* Table 1.  Parkay Spray has a significantly lower fat content than butter and margarine.

2   *Id.* Table 2.  While Parkay Spray is dispensed through a pump, that would "probably not" be

3   possible for butter or margarine unless either "was very warm."  Deposition of Annette

4   Hottenstein ("Hottenstein Depo.") [Dkt. No. 300-2] 242:2–6.  Finally, Hottenstein gave Parkay

5   Spray a "9" with respect to intensity of hue, while butter and margarine both received a "2," and

6   she described the hue as an "[i]ntense deep yellow color" by contrast with butter and margarine's

7   "pale yellow color."  Hottenstein Decl. Table 1.

8          Further, according to Hottenstein Parkay Spray is unsuitable for use in food preparation,

9   which was the "major intended use" the FDA contemplated for butter, margarine, oil, and

10   shortening when it set their reference amount.  When describing its adoption of the one-tablespoon

11   reference amount, the FDA described the butter, margarine, oil, and shortening grouping as

12   follows:

> Although butter and margarine are also used as spread, all four types of fats and oils are used interchangeably in food preparation. Therefore, a uniform serving size for all four types of fats and oils would be reasonable and would allow nutritional comparisons of different types of fats and oils.

16   56 Fed. Reg. 60394, 60407 (Nov. 27, 1991).  According to the plaintiffs' expert report, Parkay

17   Spray's high-water content makes it a "relatively poor choice" for greasing baking pans.

18   Hottenstein Decl. ¶ 33.  Parkay Spray is "unsuitable for baking" because using it would add too

19   much water to a recipe and not enough fat.  *Id.* ¶ 34.  Further, Parkay Spray is "a poor choice for

20   sautéing" foods because of its high water content and its milk solid ingredients.  *Id.* ¶ 29; *see*

21   Hottenstein Depo. 240:11–20 (answering "In theory, yes" when asked whether butter was more

22   versatile than Parkay Spray, including in its ability to be a base for sauces).  Finally, plaintiffs'

23   expert ascribed a saltiness of "9" to Parkay Spray by contrast with a "3" for margarine and a "0"

24   for butter.  Hottenstein Decl. Table 1.

25          Further, Hottenstein's other comparisons between Parkay Spray and buttery spreads are

26   unpersuasive.  The plaintiffs provide no justification for their substitutes-once-removed theory; in

27   other words, there is no authority to support their suggestion that, notwithstanding all of the

28   differences described above, Parkay Spray should be categorized in the butter and margarine

United States District Court
Northern District of California

5

RACC because it is a substitute for a substitute for butter and margarine. On this record, there is no doubt that butter and Parkay Spray cannot be "used interchangeably." *See* 21 C.F.R. § 101.13(d).

Contrary to the plaintiffs' argument, Conagra need not prove that Parkay Spray is a cooking spray like Pam in order to win on preemption. The category at issue is not a "cooking spray" category; it is a "Fats and Oils: Spray type" category. The plaintiffs' repeated attempts to equate the two miss the mark. Even assuming that cooking sprays are the exemplar product from the spray-type category, Conagra need not prove that Parkay Spray is equivalent to a cooking spray for preemption to bar the plaintiffs' claims. Instead, the question before me now is whether the plaintiffs' claims seek to enforce state law requirements that are not *identical* to the federal requirements.

The plaintiffs' arguments about the unfairness of this result are not well taken. Neither Conagra's witness testimony nor its marketing strategies create a triable issue with regard to preemption, nor do consumer complaints. These arguments are untethered to the federal guidance on categorizing products for labeling purposes and the preemption analysis. Whether or not the plaintiffs would ultimately be able to prove that the Parkay Spray label misleads or deceives consumers in violation of California and Hawaii consumer protection laws, the federal regulations set the standard for food labeling.[3]

On this record, it is not possible to conclude that Parkay Spray is a "substitute" that can be "used interchangeably" with butter or margarine such that it belongs in the butter, margarine, oil, and shortening category and is mislabeled under federal law. Accordingly, the plaintiffs' claims seek to enforce state law requirements that are "not identical to" federal food labeling requirements. They are preempted.

Because Conagra is entitled to summary judgment, I need not address the remaining

_____

[3] Further, evidence suggests that the FDA has been made aware of the precise consumer concerns that the plaintiffs raise and declined to amend the spray type category. In 2016, the FDA addressed comments complaining that "tiny serving sizes" allow cooking sprays "to make certain claims such as 'zero calorie' or 'fat free,' even though they are essentially pure oil." \81 Fed. Reg. 34000, 34035 (May 27, 2016).

United States District Court
Northern District of California

1   substantive motions.  The plaintiffs' motion for partial summary judgment, Conagra's motion to

2   decertify, and Conagra's motion to exclude testimony of Hottenstein are DENIED.  Dkt. Nos. 296,

3   297, 299.

## II.   SEALING

4   The Ninth Circuit applies a "compelling reasons" standard for sealing documents where

5   the "motion at issue is more than tangentially related to the underlying cause of action." *Auto*

6   *Safety v. Chrysler Group*, 809 F. 3d 1092, 1099 (9th Cir. 2016).  This district's local rules require

7   that sealing requests be "narrowly tailored to seek sealing only of sealable material."  Civ. L. R.

8   79-5(b).  Conagra requests sealing of various categories of information submitted with the pending

9   motions, including:  (i) proprietary pricing and sales data, as well as some confidential financial

10  data (ii) marketing studies and business strategies, (iii) information about Conagra's confidential

11  internal policies and procedures, (iv) personal consumer inquiries and private identifying

12  information.

13  I will deny the motions to seal without prejudice to Conagra filing a new motion that

14  accords with the following guidance.  First, Conagra should make a greater effort to narrowly

15  tailor its redactions; requests to seal entire pages of deposition testimony and expert reports are

16  overbroad.  *See, e.g.*, Dkt. No. 301-12.  Second, I will not seal the contents of consumer inquiries

17  and complaints to Conagra, although personally identifying information is sealable.  *See* Dkt. No.

18  322-1; *see also* Dkt. Nos. 299, 319, 320-4 (including references to consumer feedback that are not

19  appropriate for sealing).[4]  Third, there are clearly not compelling reasons to seal some of the

20  information included in Conagra's requests.  By way of example, Dkt. No. 320-5 is a two-page

21  excerpt of a deposition transcript wherein Conagra's Person Most Knowledgeable Chris

22  Chatzidakis describes the contents of the Parkay Spray label.  Fourth, I will not seal any business

23  documents that are more than ten years old, no matter how confidential and proprietary they were

24  at the time of their creation.  Fifth, Conagra must narrowly tailor its requests related to the way in

25  which its witnesses view Parkay Spray and consumers of Parkay Spray.  While detailed research

---

[4] The plaintiffs' request for leave to file a reply in response to Conagra's specific sealing requests is granted; Dkt. No. 322-1 is deemed filed.

United States District Court
Northern District of California

1   data on its consumers is sealable, general testimony describing how the company markets the

2   product in light of its knowledge of consumers is not.  *See* Dkt. No. 322-1.  Any requests falling in

3   this category must be limited and supported by detailed and compelling justifications.

4        Any renewed motion shall be filed within 30 days.  In it, Conagra should explicitly list

5   docket entries that it no longer seeks to maintain under seal.  For example, the plaintiffs filed 50

6   exhibits under seal at Dkt. No. 301, and Conagra justifies sealing only with request to Exhibits 5,

7   12, 14, 16, 36, 41, and 42.  *See* Dkt. No. 313.  Further, Conagra should explicitly list any docket

8   entries that should be unsealed in their entirety as a result of the guidance I have provided in this

9   Order.  There is no need to resubmit the briefs, declarations, or exhibits themselves until I have

10  reviewed Conagra's narrowed requests.

11       With its renewed motion, Conagra should submit a proposed order in compliance with

12  Civil Local Rule 79-5(d)(1)(B).  The table in the proposed order should include columns with (i)

13  the docket entry, page number, and lines associated with each request, (ii) a short, general

14  description of the contents, and (iii) the asserted justification for sealing with a citation to the

15  appropriate declaration.  The proposed order should also include a list of docket entries to be

16  unsealed, as described in the preceding paragraph.  Finally, the proposed order should provide a

17  list of docket entries that require resubmission in light of the narrowed redactions requested.

18                                   **CONCLUSION**

19       For the reasons set forth above, Conagra's motion for summary judgment is GRANTED.

20  Dkt. No. 295.  Judgment shall be entered accordingly.  Conagra's motion to decertify, Conagra's

21  motion to exclude, and the plaintiffs' motion for partial summary judgment are DENIED.  Dkt.

22  Nos. 296, 297, 299.

23       All pending motions to seal are DENIED WITHOUT PREJUDICE.  Any renewed motion

24  to seal shall be filed within 30 days and shall strictly comply with the guidance set forth above.

25  Finally, the plaintiffs' request regarding Dkt. No. 299-1, which they inadvertently filed without

26  redactions, is GRANTED.  Dkt. No. 303.  Dkt. No. 299-1 will be permanently restricted and is not

27

28

United States District Court
Northern District of California

8

considered part of the docket.

   **IT IS SO ORDERED.**

Dated: August 12, 2020



William H. Orrick
United States District Judge